**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SEEGRID CORPORATION,[1]<br><br>　　　　Debtor. | Chapter 11<br><br>Case No. 14-_12391_ (　　) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) SCHEDULING A COMBINED HEARING ON DEBTOR'S DISCLOSURE STATEMENT AND PLAN CONFIRMATION, (B) ESTABLISHING AN OBJECTION DEADLINE AND PROCEDURES FOR OBJECTING TO THE DISCLOSURE STATEMENT, PLAN AND ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) APPROVING SOLICITATION PROCEDURES, (D) APPROVING THE FORM AND NOTICE OF THE COMBINED HEARING, (E) WAIVING THE REQUIREMENT FOR A MEETING OF CREDITORS AND (F) GRANTING RELATED RELIEF**

Seegrid Corporation ("Seegrid" or the "Debtor"), the debtor and debtor-in-possession herein, by and through its undersigned proposed counsel, seeks entry of an order (the "Order") substantially in the form attached hereto as Exhibit A: (a) scheduling a combined hearing (the "Combined Hearing") on the (i) adequacy of the Disclosure Statement for Prepackaged Plan of Reorganization of Seegrid Corporation Pursuant to Chapter 11 of the United States Bankruptcy Code, dated October 3, 2014 (the "Disclosure Statement") and (ii) confirmation of the Prepackaged Plan of Reorganization of Seegrid Corporation Pursuant to Chapter 11 of the United States Bankruptcy Code, dated October 3, 2014 (the "Plan");[2] (b) establishing a deadline and procedures for filing objections to the Disclosure Statement and the Plan, including the proposed assumption pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code") of certain of the Debtor's executory contracts and unexpired leases

---

[1]　　The last four digits of the Debtor's tax payer identification number are: 1133.  The Debtor's address is 216 Park West Drive, Pittsburgh, PA 15275.

[2]　　Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan and the Disclosure Statement, as applicable, filed contemporaneously herewith.

(respectively, the "Executory Contract" and "Unexpired Leases") and the payment of cure amounts associated therewith (the "Cure Amounts"), if any; (c) approving the solicitation procedures (the "Solicitation Procedures") used in connection with the Debtor's prepetition solicitation of the Plan described below and further discussed in the Disclosure Statement; (d) approving the form and manner of notice of the Combined Hearing; (e) waiving the requirement that the United States Trustee for the District of Delaware (the "U.S. Trustee") convene a meeting of creditors (the "Creditors' Meeting") if the Plan is confirmed within eighty (80) days of the Petition Date; and (f) granting related relief. In support of this Motion, the Debtor relies on the Declaration of David Heilman in Support of Debtor's Voluntary Chapter 11 Petition and First Day Motions (the "Heilman Declaration"), and states as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested herein are sections 105, 341, 1125, 1126, and 1128, rules 2002, 3017, 3018, 3020 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

3.     On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtor continues to manage and operate its business and property as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committees of creditors have been appointed in this case.

5.      A description of the Debtor's business and the reasons for filing the chapter 11 case is set forth in the Heilman Declaration, filed contemporaneously herewith, and incorporated by reference as if fully set forth herein.

## PREPETITION RESTRUCTURING EFFORTS

6.      In the years leading up to 2012, the Debtor's early research and development and operating shortfalls were funded by equity investments and, later, by unsecured loans from existing shareholders.  Until late 2012, equity investments and unsecured notes were sufficient enticements to keep financing flowing into the Debtor as needed.

7.      By 2014, only Giant Eagle was willing to lend to the Debtor (with the exception of HERC's funding of $100,000 as compared to over $6.2 million in funding by Giant Eagle in 2014).  Giant Eagle professed to be growing weary by that point, and the funding provided by Giant Eagle in 2014 became milestone-based and/or tied to specific sales progress based on the budget presented in November 2013.

8.      By late June of 2014, Giant Eagle was not willing to make further loans based on what Giant Eagle perceived to be an inflated valuation of the Debtor.  Accordingly, when Giant Eagle  proposed a new financing structure by way of a term sheet dated July 2, 2014 for $10 million in long term financing, Giant Eagle's proposal valued the Debtor at $12.5 million on a pre-funding basis (the "July 2, 2014 Term Sheet").  Unlike prior debt financing transactions, the July 2, 2014 Term Sheet contemplated the creation of an operating subsidiary with new equity funding to flow into the subsidiary.

9.      Due to the dilutive nature of the July 2, 2014 Term Sheet, Giant Eagle conditioned the proposal upon the unanimous approval of the Debtor's Board of Directors and majority approval of the disinterested stockholders.

10.     Anthony Horbal, a member of Debtor's Board of Directors at the time of the vote on July 11, 2014, voted against the July 2, 2014 Term Sheet as amended and reissued on July 10th. The Horbal Group also refused to extend the September 30, 2014 maturity date of the debt held by the Horbal Group.

11.     On August 20, 2014, Giant Eagle proposed funding up to an additional $8 million under a convertible note and warrant transaction on the same terms and at the same valuation as the January 2014 note purchase transaction, with the sole exception that the maturity date for all existing and new notes be extended from September 30, 2014 to September 30, 2019. Given the urgency of the Debtor's financial condition, the August 20, 2014 proposal required a preliminary (nonbinding) approval from both the Debtor and the Horbal Group on or before August 26, 2014.

12.     Seegrid immediately communicated the terms of the August 20, 2014 proposal to the Horbal Group, and offered to provide any information required in order to allow the Horbal Group to consider the request for the Horbal Group's preliminary approval of the proposal. Seegrid explained to the Horbal Group that the August 20, 2014 proposal was the only alternative to bankruptcy available to Seegrid, and that the funding proposal was on the same terms as previously approved by the Seegrid Board and by the Horal Group, except for the 5 year extension of the notes. The Horbal Group requested extensive information to allow it to review the proposal, which Seegrid promptly provided. To date, however, the Horbal Group has not responded to the August 20, 2014 proposal.

4

13.    As a result of Seegrid's inability to obtain from the Horbal Group approval for the August 20, 2014 proposal or consent to the extension of the September 30, 2014 maturity date for Seegrid's over $45 million of debt, Seegrid's only alternative would have been an immediate shut-down of operations and liquidation.    To avoid this alternative, Giant Eagle presented the proposed DIP Financing and restructuring proposal as set forth in the Plan.

C.    **Summary of the Plan**

14.    The Plan will achieve the Debtor's restructuring goals by (a) reducing the Debtor's total principal amount of general unsecured debt and (b) position the Debtor for ongoing growth.

15.    Specifically, the Plan contemplates that:

- On or before the Effective Date, the Debtor shall form a wholly-owned Delaware "C" corporation subsidiary ("Seegrid Sub").  On the Effective Date, the Debtor shall convey to Seegrid Sub:  (i) all of its operating assets, including without limitation, its intellectual property and the name "Seegrid"; (ii) its post Commencement Date operating liabilities; and (iii) its employees.  In exchange for its contribution to Seegrid Sub, the Debtor shall receive 11.25 million shares of Seegrid Sub common stock.

- On the Effective Date, all indebtedness of the Debtor to Giant Eagle for borrowed money arising after June 11, 2014, including Giant Eagle's First and Third Priority Secured Bridge Noteholder Claims and any indebtedness under the DIP Credit Agreement shall be converted dollar for dollar into Seegrid Sub Series A Preferred Shares.  Such Seegrid Sub Series A Preferred Shares shall have the right and preferences reflected on Exhibit A to the Plan.  To the extent that the debt converted hereunder is less than $10 million, and subject to the terms of the Plan Support Agreement, within one year after the Effective Date, Giant Eagle shall have the rights to purchase such additional Seegrid Sub Series A Preferred Shares to enable it to have a total of $10 million in Seegrid Sub Series A Preferred Shares.  To the extent that Seegrid Sub meets its projections during the Chapter 11 Case, Giant Eagle shall purchase such additional Seegrid Sub Series A Preferred Shares as causes Giant Eagle to reach $10 million of such Shares.

5

- Seegrid Sub shall reserve for issuance to management, employees and directors of Seegrid Sub 3,750,000 shares of Seegrid Sub common stock to be issued in accordance with a plan adopted by the Board of Directors of Seegrid Sub.

- Additional Seegrid Sub Series A Shares beyond the $10 million of Seegrid Sub Series A Shares available to Giant Eagle will be offered to the Debtor's other direct and indirect stockholders (the "Investors") and convertible debt holders in an amount that allows the Investors to maintain their direct and indirect pro rata share of the Seegrid Sub on a fully diluted, as converted basis, or such larger amount as the board of the Debtor may determine.

- Giant Eagle, any other holder of a First Priority Secured Noteholder Claim that elects to convert its debt into Seegrid Sub Series A Preferred Shares, and each Investor who purchases Seegrid Sub Series A Preferred Shares shall receive a warrant to purchase additional Seegrid Sub Series A Preferred Shares at $1.00 per share in an amount equal to the amount invested in or converted into Seegrid Sub Series A Preferred Shares. Such warrant shall be exercisable up to and including the second anniversary of the Effective Date of the Plan.

**D.     Solicitation Procedures**

16.     To effectuate the terms of the proposed consensual restructuring, on October 3, 2014, the Debtor caused the Balloting Agent to distribute packages (the "Solicitation Packages") containing (a) the Disclosure Statement and the Plan, (b) the Ballot (each, a "Ballot" and collectively, the "Ballots") for each holder of a Class 1 claim and Class 2 claim, the only impaired classes of creditors entitled to vote to accept or reject the Plan (collectively, the "Voting Classes"), and (c) directions for voting on the Plan. The Balloting Agent transmitted the Solicitation Packages to the Voting Classes by overnight mail. Holders of Class 3 and Class 4 claims (the "Non-Voting Classes") were not provided a Solicitation Package because such Holders are unimpaired under, and conclusively presumed to accept, the Plan under Bankruptcy Code section 1126(f).

17.     The Debtor established October 17, 2014 at 5:00 p.m. (prevailing Eastern Time) as the deadline for the Voting Classes to vote to accept or reject the Plan (the "Voting Deadline"). Each Voting Class was explicitly informed in the applicable Ballot that such Holder needed to submit its Ballot such that it is actually received by the Balloting Agent on or before the Voting Deadline to be counted.  Pursuant to the instructions contained in the Ballot, claimants in the Voting Classes were required to return the completed ballots by either electronic mail, first class mail, or overnight mail.

18.     As soon a reasonably practicable, the Balloting Agent will file a voting report (the "Voting Report"), which will certify the results and methodologies for tabulation of Ballots accepting or rejecting the Plan with respect to the Voting Classes.

## RELIEF REQUESTED

19.     By this Motion, the Debtor seeks entry of the Order: (a) scheduling the Combined Hearing; (b) establishing the deadline for filing objections to the Disclosure Statement and the Plan, including the proposed assumption of Executory Contracts and Unexpired Leases and the proposed Cure Amounts associated therewith (the "Objection Deadline"), and approving related procedures; (c) approving the Solicitation Procedures; (d) approving the form and manner of notice of the Combined Hearing; (e) waiving the requirement for the Creditors' Meeting if the Plan is confirmed within 80 days of the Petition Date; and (f) granting related relief.

20.     Below is a table highlighting the dates relevant to the Solicitation Procedures and setting forth the Debtor's proposed dates for the mailing of the Combined Hearing Notice (as defined herein), the Objection Deadline and the Combined Hearing:

| Proposed Schedule | |
| --- | --- |
| Voting Record Date | September 24, 2014 |
| Distribution of Solicitation Package | October 3, 2014 |
| Voting Deadline | October 17, 2014 at 5:00 p.m. (prevailing Eastern Time) |
| Petition Date | October 21, 2014 |
| Distribution of Combined Hearing Notice | October 23-24, 2014 |
| Objection Deadline | November 21, 2014 at 4:00 p.m. |
| Reply Deadline | December 2, 2014 |
| Combined Hearing | on or about December 5, 2014 |

## BASIS FOR RELIEF REQUESTED

21. Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice...to consider the disclosure statement and any objections or modifications thereto." Fed. R. Bankr. P. 3017(a). Bankruptcy Code section 1128(a) provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." 11 U.S.C. § 1128(a). Furthermore, Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court...may fix a date for the hearing on confirmation." Fed. R. Bankr. P. 3017(c).

22. Bankruptcy Code Section 105 expressly authorizes courts to combine a hearing on a disclosure statement with a hearing on confirmation of a plan of reorganization, stating: "[T]he hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan." 11 U.S.C. 105(d)(2)(B)(vi). In cases involving pre-packaged plans, for example, courts routinely conduct combined hearings to approve the disclosure statement, solicitation procedures and plan shortly after a debtor files its chapter 11 petition. *See, e.g., In re Physiotherapy Holdings, Inc.,* No. 13-12965 (KG) (Bankr. D. Del. Nov.

8

14, 2013), Docket No. 49; *In re Jackson Hewitt Tax Servs. Inc.*, No. 11-11587 (MFW) (Bankr. D. Del. May 25, 2011), Docket No. 47; *In re Revel AC, Inc.*, No. 13-16253 (Bankr. D. Del. March 26, 2013), Docket No. 22; *In re Geokinetics, Inc.*, No. 13-10472 (Bankr. D. Del, Mar. 12, 2013), Docket No, 81; *In re AR Broadcasting Holdings, Inc.*, No. 11-13674 (Bankr. D. Del. Nov. 18, 2011), Docket No. 40; *In re CIT Group Eng'g, Inc.*, No. 09-16565 (Bankr. S.D.N.Y. Nov. 3, 2009), Docket No. 45.

23.     The Debtor requests that the Court schedule the Combined Hearing to consider approval of the Disclosure Statement and confirmation of the Plan on or about December 5, 2014 at a time convenient for the Court. The Debtor submits that cause exists to approve this date and hold the Combined Hearing. First, the Debtor has requested the Court to schedule the Combined Hearing thirty-five (35) after the date of the Combined Hearing Notice, which is more than the 28 days required under the applicable Bankruptcy Rules, and the Debtor will serve the Combined Hearing Notice consistent with Bankruptcy Rules 2002 and 3017(a) and Bankruptcy Code section 1128(a). Second, as described herein, the Debtor commenced solicitation on October 3, 2014, which solicitation was in accordance with Bankruptcy Code Sections 1125(g) and 1126(b). The Solicitation Package was distributed to each claimant in the Voting Classes. Third, a combined hearing will reduce the time the Debtor remains in bankruptcy, thereby cutting the costs of administering the funding this chapter 11 case.

**Objection Deadline and Related Procedures**

24.     Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest...to consider...any objections or modifications" to the Disclosure Statement. Fed. R. Bankr. P. 3017(a). Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given to

"the debtor, the trustee, all creditors [of] not less than 28 days...by mail of the time fixed (1) for filing objections and the hearing to consider approval of a disclosure statement...and (2) for filing objections and the hearing to consider confirmation of a [chapter 11] plan." Fed. R. Bankr. P. 2002(b). Under Bankruptcy Rules 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).

25.     The Debtor requests that the Court set (a) the Objection Deadline at 4:00 p.m. (prevailing Eastern Time) on November 21, 2014 and (b) the deadline for the Debtor and other parties in interest to reply to an objection at 4:00 p.m. (prevailing Eastern Time) on December 2, 2014 (the "Reply Deadline"). The Debtor's proposed schedule would provide entities at least 28 days' notice of the Objection Deadline to file objections to the Plan and the Disclosure Statement as required by Bankruptcy Code section 2002(b)(1).

26.     As provided in the Plan, within thirty (30) days after the Effective Date, the Debtor will file and serve a pleading with the Bankruptcy Court listing the amount of the proposed Cure for each such Executory Contract the Debtor intends to assume. The non-Debtor party or parties to each such Executory Contract shall have fifteen (15) days from service of the Cure Notice to object to the proposed Cure with respect to that Executory Contract. Within thirty (30) days after service of any objection to the proposed Cure for an Executory Contract, the Debtor shall:  (a) resolve such objection, which resolution shall not require approval of the Bankruptcy Court; (b) schedule a hearing before the Bankruptcy Court to determine the proper Cure for the Executory Contract; or (c) determine to reject the Executory Contract, and provide notice thereof to the applicable non-Debtor party or parties.

27.     In the event that the rejection of an Executory Contract by the Debtor pursuant to the Plan results in damages to the non-Debtor party or parties to such Executory

Contract, a claim for such damages shall be forever barred and shall not be enforceable against the Debtor, Reorganized Seegrid, or their respective properties or interests in property, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before (a) if such Executory Contract is rejected pursuant to Articles 7.1 and 7.2 of the Plan, the later of: (i) thirty (30) days after entry of the Confirmation Order; and (ii) thirty (30) days after the non-Debtor party receives notice of the rejection of such Executory Contract pursuant to Article 7.2 of the Plan; and (b) if such Executory Contract is rejected pursuant to a Final Order of the Bankruptcy Court granting a motion filed by the Debtor to reject that Executory Contract, thirty (30) days after entry of such order.

28. The Debtor requests that the Court require that objections to the Disclosure Statement or confirmation of the Plan, as well as any objections to the proposed assumption of Executory Contracts and Unexpired Leases and the associated proposed Cure, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan or the Disclosure Statement, as applicable, and with respect to objections to the proposed Cure, the requested Cure; and (e) be filed with the Court with proof of service thereof and served upon: attorneys for the Debtor, Morris, Nichols, Arsht and Tunnell LLP, 1201 North Market Street, Wilmington, Delaware 19899-1347, Facsimile (302) 658-3989, Attn: Robert J. Dehney & Curtis S. Miller; the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; and attorneys to the postpetition lender, Reed Smith LLP, 225 Fifth Avenue, Pittsburgh PA 15222, Attn: Paul M. Singer, Esq. & Luke A. Sizemore, Esq.

29.    The Debtor believes that the proposed timing and procedures for filing and service of objections comply with the applicable rules and will afford the Court, the Debtor and other parties in interest sufficient time to consider the relevant objections prior to the Combined Hearing.

**Approval of Solicitation Procedures and Forms of Ballots at the Combined Hearing**

30.    As described herein, the Debtor distributed the Solicitation Packages and solicited votes to accept or reject the Plan prior to the Petition Date in accordance with Bankruptcy Code sections 1125 and 1126. *See* 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to filing chapter 11 petitions); 11 U.S.C. § 1126(b)(2) (holders of claims or interests that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation provided adequate information). Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purposes of soliciting their votes to accept or reject a plan of reorganization. In addition, Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by Bankruptcy Rule 3017(d) to beneficial holders of stock, bonds, debentures, notes and other securities, determine the adequacy of such procedures and enter such orders as the court deems appropriate." Fed. R. Bankr. P. 3017(e). As set forth herein, the Solicitation Procedures are in compliance with the Bankruptcy Code and the Bankruptcy Rules, and the Debtor seeks approval of the Solicitation Procedures, the Ballots and the procedures used for collection, acceptance, and tabulations of votes to accept or reject the Plan.

31.    Indeed, similar procedures to the Solicitation Procedures have been approved in other prepackaged chapter 11 cases in this and other districts. *See, e.g., In re*

12

*Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013), Docket No. 49 (approving prepackaged solicitation procedures substantially similar to those utilized here); *In re Maxcom Telecomunicaciones, S.A.B. de C. V.*, No. 13-11839 (PJW) (Bankr. D. Del. Jul. 25, 2013), Docket No. 44 (same); *In re Revel AC, Inc.*, No. 13-16253 (JHW) (Bankr. D.N.J. Mar. 28, 2013); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (same); *In re Peak Broad., LLC*, No. 12-10183 (MFW) (Bankr. D. Del. Jan. 12, 2012), Docket No. 45 (same).

### (i)    *Voting Record Date*

32.    Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation." Fed. R. Bankr. P. 3018(b). The Ballots clearly identified September 24, 2014 as the date for determining for which claimants were entitled to vote to accept or reject the Plan (the "Voting Record Date"). Accordingly, the Debtor's designation of the Voting Record Date conforms to the appropriate Bankruptcy Rule.

### (ii)    *Plan Distribution and Voting Deadline*

33.    Bankruptcy Code Section 1125(g) provides that "[n]otwithstanding subsection (b), and acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law." 11 U.S.C. § 1125(g).

34.    Bankruptcy Rule 3018(b) provides that prepetition acceptances or rejections of a plan are valid if: (a) the plan was transmitted to substantially all the holders of

13

claims or interests in each solicited class; and (b) the time for voting was not unreasonably short. Fed. R. Bankr. P. 3018(b). As set forth herein, the Debtor commenced the solicitation of votes for approval of the Plan to all Voting Classes on October 3, 2014. As set forth in the Disclosure Statement and the Ballots, the Voting Deadline was 4:00 p.m. (prevailing Eastern Time) on October 17, 2014; *provided, however*, that the Debtor, in consultation with the Giant Eagle, could extend the period of time during which Ballots will be accepted for any reason, including for purposes of determining whether the requisite number of acceptances have been received, by giving notice of any such extension in a manner deemed reasonable to the Debtor in its discretion; *provided, further*, that claimants who cast a Ballot prior to the time of filing of the Debtor's chapter 11 petition shall not be entitled to change their vote or cast new Ballots after the chapter 11 case has commenced. This period of time is in accordance with applicable nonbankruptcy law as there is no provision in any applicable securities law that requires a set period of time for voting on a the Plan. *See* 5 Collier Guide to Chapter 11 ¶5.07[c] (stating that whether a period is sufficient for a decision to vote on a prepackaged plan "was not a question addressed by the securities laws") (citing *In re Southland Corp.*, No. 390-37119-HCA-11 (Bankr. N.D. Tex. Oct. 1990) (Response of the Securities and Exchange Commission to the Court's Request for a Statement of Position Regarding Compliance of Debtors' Prepetition Solicitation with Federal Securities Laws, dated December 26, 1990, at 18)). Thus, the Debtor submits that the claimants entitled to vote on the Plan had adequate time to consider the Plan and the Disclosure Statement and submit a ballot before the Voting Deadline. *See, e.g., In re Gatehouse Media, Inc.*, No. 13-12503 (MFW) (Bankr. D. Del. Sept. 30, 2013), Docket No. 39 (authorizing a six day solicitation period); *In re PTL Holdings LLC*, No. 11-12676 (BLS) (Bankr. D. Del. Aug. 25, 2011), Docket No. 35 (authorizing a one-day solicitation period and

14

allowing voters to return ballots by email or facsimile); *In re Jackson Hewitt Tax Service, Inc.,* No. 11-11587 (Bankr. D. Del. May 5, 2011), Docket No. 47 (approving a one-day solicitation period and allowing voters to return ballots by email, hand delivery or overnight mail).

35.     As discussed above, the restructuring transactions proposed in the Plan are the product of months of negotiations among the Debtor and Giant Eagle.   Prior to the commencement of solicitation, the Plan and the related Disclosure Statement were subject to review and comment by counsel and other advisors for Giant Eagle during the course of arm's length negotiations with the Debtor.   The Debtor, in turn, engaged in discussions with Giant Eagle regarding the terms of the restructuring transactions contemplated in the Plan prior to launching solicitation of the Plan.   Moreover, the voting period is reasonable in light of the risks inherent to the Debtor in announcing the prepetition solicitation of the Plan, including deterioration of trade terms, customers withholding payment, and other actions that would disrupt the Debtor's operations.

36.     For all these reasons, the Debtor believes that the solicitation period is sufficient and appropriate for claimants in the Voting Classes to make an informed decision to accept or reject the Plan.

        *(iii)    The Ballots*

37.     Bankruptcy Rule 3017(d) requires the Debtor to transmit a form of ballot, which substantially conforms to Official Form No. 14 only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d)(4).   Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity holder or an authorized agent and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).

15

38.     As discussed above, only claimants in the Voting Classes were transmitted Ballots. Each form of Ballot used in solicitation is based on Official Form No. 14 and has been modified as applicable to address the particular circumstances of this case to include certain information that the Debtor believes to be relevant and appropriate for claimants entitled to vote to accept or reject the Plan. The Ballots used in solicitation are annexed as Exhibit B attached hereto.

*(iv)    Vote Tabulation*

39.     The Debtor respectfully requests that the Court approve the voting and tabulation procedures described herein in accordance with Bankruptcy Code section 1126(c) and Bankruptcy Rule 3018(a). Bankruptcy Code section 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow [a] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

40.     The Debtor requests that the Court approve the vote tabulation methodology utilized by the Debtor. As discussed above, the Ballots and Solicitation Packages were transmitted to claimants in the Voting Classes by electronic mail and, where unavailable, overnight mail. Claimants in the Voting Classes were required to return their Ballots to the Balloting Agent by electronic mail, first claim mail or overnight mail. The Debtor will not count or consider for any purpose in determining whether the Plan has been accepted or rejected the

16

following Ballots, as applicable: (i) are received after the Voting Deadline unless the Debtor (in consultation with Giant Eagle) have granted an extension of the Voting Deadline with respect to such Ballot; (ii) are (in whole or in material part) illegible or unidentifiable; (iii) lack signatures; (iv) lack necessary information; (v) are damaged; (vi) are cast by a person or entity that does not hold a Claim in a Voting Class as of the Voting Record Date; (vii) does not indicate an acceptance or a rejection or that indicates both air acceptance and a rejection; (viii) are sent to the Bankruptcy Court, the Debtor, the Debtor's agents, advisors or representatives (other than the Balloting Agent); or (ix) partially accept and partially reject the Plan (each, a "Defective Ballot"). Additionally, if multiple Ballots are received from an individual claimant with respect to the same Claim prior to the claimants Voting Deadline, the last Ballot timely received will supersede and revoke any previously received Ballot.

41. The Debtor will file with the Bankruptcy Court, as soon as practicable after the Voting Deadline, the Voting Report prepared by the Balloting Agent, which shall, among other things, delineate every Defective Ballot. In the event a designation of lack of good faith is requested by a party in interest under Bankruptcy Code section 1126(e), the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected.

42. The foregoing Solicitation Procedures or those substantially similar have been approved in other prepackaged chapter 11 cases. *See, e.g., In re Physiotherapy Holdings, Inc.,* No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013), Docket No. 49 (approving prepackaged vote tabulation procedures substantially similar to those utilized here); *In re Maxcom Telecommunicaciones, S.A.B. de C.V.,* No. 13-11839 (PJW) (Bankr. D. Del.

17

Jul. 25,2013), Docket No. 44 (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del.

Mar. 19,2013), Docket No. 64 (same); *In re Peak Broad., LLC,* No. 12-10183 (PJW) (Bankr. D.

Del. Jan. 12, 2012), Docket No. 45 (same); *In re TMP Directional Mktg., LLC,* No. 11-13835

(MFW) (Bankr. D. Del. Dec. 7, 2011), Docket No. 52 (same); *In re Jackson Hewitt Tax Service,*

*Inc.*, No. 11-11587 (MFW) (Bankr. D. Del. Aug. 9, 2011), Docket No. 388 (same); *In re Source*

*Interlink Cos.*, No. 09-11424 (KG) (Bankr. D. Del. Apr. 29, 2009), Docket No. 59 (same).

      (v)    *The Debtor's Prepetition Solicitation was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Securities Law*

43.    Bankruptcy Code Section 1126(b) provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if − (I) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, role or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b).   Thus, prepetition solicitation must comply with generally applicable

federal or state securities laws and regulations (including the registration and disclosure

requirements thereof) or, if such laws and regulations do not apply, the solicited holders must

receive "adequate information" under Bankruptcy Code section 1125.   *See* 7 COLLIER ON

BANKRUPTCY ¶1126.03[2][d] (16th ed.).

44.    The Debtor respectfully submits that its prepetition solicitation is sheltered

under one or more of the exceptions from registration provided by the Securities Act of 1933

(the "Securities Act"), including section 4(a)(2) thereof, state "Blue Sky" laws or any similar

rules, regulations or statutes.   Section 4(a)(2) of the Securities Act creates an exemption from

18

nonbankruptcy securities laws for transactions not involving a "public offering." 15 U.S.C. § 77d(a)(2). The Debtor took steps to ensure that the parties entitled to vote on the Plan were "Accredited Investors" (as that term is defined by Rule 501 of Regulation D, 17 C.F.R. § 230.501(a), promulgated under the Securities Act), and the Debtor's prepetition solicitation did not constitute a public offering because the number of non-Accredited Investors did not exceed the number of permitted under section 4(a)(2) to still be exempted from registration requirements. Therefore, the requirements of Bankruptcy Code section 1126(b)(1) are inapplicable to the Debtor's prepetition solicitation. As discussed more fully below, the Debtor will seek a determination from the Court at the Combined Hearing that all solicited Holders received "adequate information" as defined by Bankruptcy Code section 1125(a) in accordance with Bankruptcy Code section 1126(b)(2).

45.     Other debtors in this and other circuits have utilized section (4)(2) of the Securities Act to exempt their prepetition solicitation from the registration and disclosure requirements otherwise applicable under nonbankruptcy law. *See, e.g., In re Revel AC, Inc.*, No. 13-16253(JHW) (Bankr. D.N.J. Mar. 28, 2013), Docket No. 69; *In re CHL Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del, Aug. 29, 2012), Docket No. 152; *In re Source Interlink Cos.*, No. 0911424 (KG) (Bankr. D. Del. May 26, 2009), Docket No. 59; *In re Portola Packaging, Inc.*, No. 08-12001 (CSS) (Bankr. D. Del. Oct. 15, 2008), Docket No. 191; *see also In re Insight Health Servs. Holdings Corp.*, No. 10-16564 (AJG) (Bankr. S.D.N.Y. Dec. 10, 2010), Docket No. 59.

**Approval of the Disclosure Statement at the Combined Hearing**

46.     The Debtor will request that, at the Combined Hearing, the Court find that the Disclosure Statement contains adequate information as defined in Bankruptcy Code

section 1125. *See* 11 U.S.C. § 1126(b)(2) (because there is no nonbankruptcy law governing the solicitation of claim and interest holders prior the debtors commencing the chapter 11 case, such solicitation must have been based on the debtors providing such holders "adequate information").

47.    The Debtor submits that the Disclosure Statement contains adequate information because it is extensive and comprehensive.    What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable the parties to vote in an informed way, and that standard is easily met here. *See* 11 U.S.C. § 1125(a)(1).  For example, the Disclosure Statement contains descriptions and summaries of, among other things:  (a) both the Plan and the Debtor's related reorganization efforts;  (b) certain events and relevant negotiations preceding the commencement of this chapter 11 case;  (c) the key terms of the restructuring transactions contained in the Plan; (d) the risk factors affecting consummation of the Plan; (e) a liquidation analysis setting forth the estimated return that creditors would receive in a hypothetical chapter 7 case; (f) financial information that would be relevant to creditors' determinations of whether to accept or reject the Plan; and (g) securities law and federal tax law consequences of the Plan.

48.    In addition, as noted above, the Disclosure Statement and the Plan were the subject of review and comment by, among others, the key stakeholders in the Debtor's restructuring.  Accordingly, the Debtor submits that the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125(a) and should be approved.

**Approval of Form and Manner of Notice of Combined Hearing**

49.    Bankruptcy Rules 2002(b) and (d) require no less than 28-days' notice to all holders of claims of the time fixed for filing objections to the hearing on confirmation of a

chapter 11 plan. Fed. R. Bankr. P. 2002(b), 2002(d).[3] To that end, the Debtor requests approval of the notice of the Combined Hearing substantially in the form of **Exhibit 1** annexed to **Exhibit A** attached hereto (the "Combined Hearing Notice"). In accordance with Bankruptcy Rules 2002 and 3017(d), the Notice will, among other things: (a) provide notice of the commencement of the chapter 11 case; (b) provide a brief summary of the Plan; (c) disclose the date and time of the Combined Hearing; (d) disclose the date and time of the Objection Deadline and procedures for objecting to the Disclosure Statement and the Plan; and (e) provide the record date for receiving distributions under the Plan.

50. The Combined Hearing Notice will be served by electronic mail and/or first-class mail upon all known claimants and all other parties entitled to notice in this chapter 11 case (regardless of whether such parties are entitled to vote to accept or reject the Plan) by October 24, 2014.

**Cause Exists for the U.S. Trustee Not to Convene a Creditors' Meeting if the Plan is Confirmed within 80 Days of the Petition Date**

51. Bankruptcy Code section 341(a) requires the United States trustee to convene and preside at a meeting of creditors. 11 U.S.C. § 341(a). Bankruptcy Code section 341(e), however, also provides the following exception to such requirement:

> [N]otwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as

---

[3] Bankruptcy Rule 3017(a) contains a similar requirement with respect to the hearing on approval of a disclosure statement. However, the Debtor does not seek separate approval of the Disclosure Statement under Bankruptcy Code section 1125(b). Such approval is not required at the present time because the Disclosure Statement was transmitted and solicited prepetition. Rather, the Debtor will seek approval of the Disclosure Statement, including a finding that the Disclosure Statement contains "adequate information" as that term is used by Bankruptcy Code section 1125, at the Combined Hearing pursuant to Bankruptcy Code section 1125(g).

to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e) (emphasis added).

52.     The Debtor filed the Plan contemporaneously with this motion on the Petition Date, and solicited votes to accept or reject the Plan between October 3 and 17, 2014, prior to the Petition Date, thereby satisfying section 341(e) of the Bankruptcy Code.

53.     The Debtor submits that cause exists to waive the section 341 meeting as set forth herein because the Disclosure Statement contains much of the type of information typically discussed during a meeting of creditors pursuant to section 341 of the Bankruptcy Code, including information on the corporate structure of the Debtor, an overview of the Debtor's business operations, the Debtor's capital structure, events leading up to the cases and a summary of the Plan and treatment of classes of claims and interests thereunder.

54.     In addition, the Debtor intends to proceed expeditiously to confirm the Plan and emerge from chapter 11 as quickly as possible.  A section 341 meeting may force the Debtor to delay the Combined Hearing, which would result in additional administrative expenses and professional fees to the detriment of the Debtor's estate.  Accordingly, pursuant to Bankruptcy Code section 341(e), the Debtor requests that the Court enter an order waiving the requirement that the U.S. Trustee convene the Creditors' Meeting if the Plan is confirmed within 80 days from the Petition Date.

55.     Courts in this and other districts have waived the requirement for a Creditors' Meeting for a period of time under similar circumstances and thus the relief requested herein is reasonable. *See, e.g., Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013) (waiving section 341 meeting provided that plan was confirmed within 64 days of petition date), Docket No. 49; *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*,

22

No. 13-11839 (PJW) (Bankr. D. Del. Jul. 25, 2013), Docket No. 44 (same, provided that plan was confirmed within 60 days of petition date); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013), Docket No. 64 (same, provided that plan was confirmed within 75 days of the petition date); *In re Homer City Funding, LLC*, No. 12-13024 (KG) (Bankr. D. Del. Nov. 7, 2012), Docket No. 27 (same, provided that plan was confirmed within 60 days of petition date); *In re CHL, Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del. Aug. 31, 2012), Docket No. 152 (same, provided that plan was confirmed within 64 days); *In re Jackson Hewitt Tax Service, Inc.*, No. 11-11587 (MFW) (Bankr. D. Del. May 25, 2011), Docket No. 47 (same, provided that the plan was confirmed within 60 days).

### WAIVER OF THE BANKRUPTCY RULES REGARDING NOTICE AND STAY OF AN ORDER

56.    To implement the foregoing procedures successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relied requested herein pursuant to Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, to the extent such applies to the relief sought herein.

### NOTICE

57.    Copies of this Motion were served on the following parties: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for Giant Eagle, Inc.; (iii) the Debtor's list of its twenty (20) largest unsecured creditors, pursuant to Bankruptcy Rule 1007(d); and (iv) any other parties entitled to notice pursuant to Del. Bankr. L.R. 9013-1(m). In light of the fact that no trustee, examiner, or creditors' committee has been appointed in this case, the Debtor submits that no further notice need be given. This Motion and any order entered hereon will be served in accordance with Del. Bankr. L.R. 9013-1(m)(iv).

23

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just, proper and equitable.

Dated:  October 21, 2014
          Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Daniel B. Butz*
Robert J. Dehney (Bar No. 3578)
Curtis S. Miller (Bar No. 4583)
Daniel B. Butz (Bar No. 4227)
1201 North Market Street
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email: rdehney@mnat.com
          cmiller@mnat.com
          dbutz@mnat.com
*Proposed Counsel for Debtor*
          *and Debtor in Possession*

24