## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SEEGRID CORPORATION,[1]<br><br>        Debtor. | Chapter 11<br><br>Case No. <u>12391</u> (    ) |

### DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS (V) MODIFYING THE AUTOMATIC STAY AND (VI) SCHEDULING A FINAL HEARING

Seegrid Corporation as debtor and debtor in possession (the "Debtor"), hereby moves (the "Motion") this Court for: (1) entry of an interim order, substantially in the form attached hereto as Exhibit A (the "Interim Order") (a) authorizing the Debtor to (i) obtain post-petition senior secured superpriority financing; (ii) grant super-priority liens and super-priority claims to the DIP Lender (as defined herein); and (iii) use the cash collateral of the Investors (as defined herein) and provide adequate protection to the Investors; (b) scheduling a hearing to consider the relief in this Motion on a final basis (the "Final Hearing") and (c) modifying the automatic stay to the extent necessary to effectuate the relief sought herein; and (2) entry of a final order granting the relief requested in this Motion on a final basis (the "Final Order," together with the Interim Order, the "DIP Orders").

In support of this Motion, the Debtor relies on the Declaration of David Heilman, President of the Debtor in Support of First Day Motions (the "Heilman Declaration"), sworn to

---

[1] The last four digits of the Debtor's tax payer identification number are: 1133. The Debtor's address is 216 Park West Drive, Pittsburgh, PA 15275.

on the date hereof.  In further support of this Motion, the Debtor respectfully represents as follows:

**BACKGROUND**

**A.       The Debtor's Business**

1.       A description of the Debtor's business and the reasons for filing this chapter 11 case is set forth in the Heilman Declaration, filed contemporaneously herewith, and incorporated by reference as if fully set forth herein.

**B.       The Debtor's Debt Structure**

**Capital Structure**

2.       Seegrid currently has five classes of shares authorized including Series A and Series A-1 convertible preferred, Series B convertible preferred, Series C and Series C-1 convertible preferred, Series D convertible preferred and common stock.  Seegrid's latest equity financing was completed in 2009 and raised $7.0 million in proceeds for the sale of Series C-1 preferred.  No shares of Series D preferred have been issued and are being reserved for issuance upon optional conversion of the loans described below.

**Prepetition Credit Facilities**

3.       As of the Petition Date, the Debtor was indebted to various investors, including Giant Eagle, Inc. ("DIP Lender"), in an amount in excess of $45.7 million of which, as of the Petition Date, approximately $17.8 million is secured by liens on substantially all of the Debtor's assets (the "Pre-Petition Secured Debt").

4.       The DIP Lender holds approximately $15.2 of the Debtor's Pre-Petition Secured Debt.  The next largest holder of the Pre-Petition Secured Debt is HERC Investment Services, LLC ("HERC"), which holds approximately $1.8 million of such Pre-Petition Secured Debt.

The balance of the Debtor's Pre-Petition Secured Debt is held by various individual investors (the "Individual Investors", and together with HERC, the "Other Investors", and collectively with the DIP Lender, the "Investors").

5.     There are three (3) tranches of the Pre-Petition Secured Debt.  The priorities of the Pre-Petition Secured Debt among the various Investors are governed by an Intercreditor Agreement dated as of June 11, 2014.

6.     A summary of the approximate amounts of principal and interest outstanding on the Pre-Petition Secured Debt is attached to the Interim Order as Exhibit A.

## C.     The Chapter 11 Filing and Objectives Therein

7.     On October 21, 2014 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

8.     In spite of its ongoing operational losses, the Debtor has significant valuable assets.  After considering other alternatives and in an effort to maximize the value of the Debtor's assets and maintain jobs for employees, the Debtor has determined that the appropriate course is to seek confirmation of a prepackaged plan of reorganization.

9.     With the exception of HERC, the Debtor was able to negotiate the use of the Investors' portion of the Pre-Petition Secured Debt which constitutes cash collateral and the entry of a debtor in possession financing credit agreement (the "DIP Facility") with the DIP Lender.  The Debtor believes that the use of cash collateral and the DIP Facility provide the Debtor with sufficient liquidity to complete a plan process that will enable the Debtor to maximize the value of its estate for the benefit of its stakeholders.

10.  Towards that end, commencing on October 3, 2014, the Debtor solicited votes on the *Prepackaged Plan of Reorganization of Seegrid Corporation Under Chapter 11 of the Bankruptcy Code* (the "Plan").  The Debtor received the requisite acceptances in response to the solicitation and promptly commenced this Case on the Petition Date to seek confirmation of the Plan.  The DIP Lender's agreement to extend post-petition financing is conditioned upon and tied to the Debtor's continued pursuit of confirmation of the Plan.

11.  Accordingly, after considering other alternatives, the Debtor concluded that the most effective way to maximize the value of its estate for the benefit of creditors and preserve as many jobs as possible is through confirmation of the Plan.

### JURISDICTION AND VENUE

12.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

13.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(e) and 507 of the Bankruptcy Code and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the U.S. Bankruptcy Court for the District of Delaware (the "Local Rules").

### RELIEF REQUESTED

14.  By the Motion, and for the reasons contained herein as well as the Heilman Declaration, and pursuant to sections 105, 361, 362, 363(c), 363(e), 364(c), 364(e) and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001-2, the Debtor respectfully requests that the Court:

(a)     authorize the Debtor, among other things, to: (i) obtain up to $3 million in post-petition financing pursuant to the DIP Facility; (ii) use the Cash Collateral; (ii) grant first priority, senior secured, super-priority liens and superiority claims to the DIP Lender; and (iv) grant adequate protection to the Investors;

(b)     approve the DIP Facility and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Lender;

(c)     schedule the Final Hearing to be held within thirty (30) days of the entry of the Interim Order; and

(d)     grant certain related relief, in each case on the terms and subject to the conditions described in this Motion and set forth in the Interim Order and the DIP Facility.

## SUMMARY OF PRINCIPAL TERMS OF DIP FACILITY AND INFORMATION REQUIRED BY LOCAL RULE 4001-2

15. Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the following are material provisions of the DIP Facility and the Interim Order, as well as those provisions required to be set forth under Local Rule 4001-2(a)(i):[2]

The Borrower:              Seegrid Corporation

The DIP Lender:           Giant Eagle, Inc.

---

[2] Unless otherwise specified, the capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Facility and the Interim Order, as applicable.  The summaries and descriptions of the terms and conditions of the DIP Facility and the Interim Order set forth in this Motion are intended for informational purposes for the Court and other parties in interest.  In the event of any inconsistency between this Motion and the summary contained herein, the DIP Facility and the Interim Order shall govern.

| | |
|---|---|
| The Borrower: | Seegrid Corporation |

Interim and Final Financing Commitment:

The DIP Facility (the DIP Loan Agreement and all other documents, agreements or instruments in connection therewith or related thereto (collectively, as the same may be amended, supplemented or otherwise modified from time to time, the "DIP Loan Documents") is comprised of the ability to obtain advances in an amount not to exceed $3,000,000 on terms set forth in the DIP Loan Documents.

Terms of DIP Facility

The DIP Facility calls for the accrual of simple interest at the rate of 8% per annum on the outstanding principal balance.  Interest shall be payable monthly.  All unpaid principal, together with accrued and unpaid interest thereon, shall be due and payable or otherwise satisfied in accordance with the Plan on the earlier of (i) the Effective Date of the Plan, (ii) January 15, 2015 and (iii) the date the DIP Financing Commitment terminates pursuant to Article 6 of the DIP Loan Agreement.

Priority and Liens under 364(c) or 364(d):

In order to provide the DIP Lender with security for the Debtor's repayment, reimbursement, and satisfaction of the DIP Facility Obligations, but subject to the Carve-Out (as set forth in Paragraph 17 of the Interim Order), the DIP Lender shall have liens in the Collateral (the liens described in the following subparagraphs (a) - (c), collectively, the "DIP Liens"), as follows:

(a)    Pursuant to Section 364(c)(2) of the Bankruptcy Code, for the sole benefit of the DIP Lender, valid, binding, continuing, enforceable, first priority and fully perfected liens in all of the Collateral that was unencumbered as of the Petition Date.

(b)    Pursuant to Section 364(d)(1) of the Bankruptcy Code, for the sole benefit of the DIP Lender, and insofar as the priority of the liens of the Investors shall be concerned, valid, binding, continuing, enforceable, first priority and fully perfected liens on all of the Collateral that constitutes Pre-Petition Encumbered Assets.

*See*, Interim Order, ¶¶ 9-10.

Permitted Uses:

Pay operating expenses arising postpetition and certain expenses arising prepetition authorized by the Court.

*See*, DIP Loan Agreement at § 5.2.

Milestones that the Debtor has agreed to observe.  Failure to observe these Milestones can trigger an event of default upon notice from the DIP Lender:

Obtaining the Final Order within 30 days from Petition Date; confirm the Plan within 60 days from the Petition Date; achieve the Effective Date of the Plan within 75 days from the Petition Date.

| | |
|---|---|
| The Borrower: | Seegrid Corporation |

Events of Default:    The DIP Loan Agreement provides the following Events of Default:

(a)    The Debtor fails to pay when due the principal which it is required to pay under the DIP Loan Agreement or any Note;

(b)    The Debtor fails to pay when due the interest or any other amount (other than principal) which it is required to pay under the DIP Loan Agreement or any Note, which failure shall continue for a period of three (3) Business Days;

(c)    Any representation or warranty made or deemed made by or on behalf of the Debtor in or in connection with the DIP Loan Agreement or any Note or any amendment or modification hereof or thereof or waiver hereunder or thereunder, or in any report, certificate, financial statement or other document furnished pursuant to or in connection with the DIP Loan Agreement or any Note or any amendment or modification hereof or thereof or waiver hereunder or thereunder, shall prove to have been incorrect or misleading in any material respect when made or deemed made;

(d)    The Debtor shall default in the observance or performance of any covenant or condition set forth in the DIP Orders, the effect of which is to cause the DIP Lender to lose its first- priority security interest in the Debtor's property as contemplated therein; or any Lien securing any obligation under the DIP Loan Agreement or any Note shall, in whole or in part, fail to be a perfected Lien having first priority over all other Liens;

(e)    The Debtor shall fail to perform or observe any term, covenant or agreement contained in the DIP Loan Agreement or any Note, which failure shall continue for a period of five (5) days after the DIP Lender gives the Debtor notice of such failure;

(f)    The Debtor shall contest in any manner the validity or enforceability of any provision of the DIP Loan Agreement or any Note; or the Debtor shall deny that it has any or further liability or obligation under the DIP Loan Agreement or any Note, or shall purport to revoke, terminate or rescind any provision of the DIP Loan Agreement or any Note; or any provision of the DIP Loan Agreement or any Note, at any time after its execution and delivery and for any reason other than as expressly permitted hereunder or thereunder or satisfaction in full of all obligations of the Debtor hereunder or thereunder, shall cease to be in full force and effect; or any Lien securing any obligation of the Debtor under the DIP Loan Agreement or the Notes shall, in whole or in part, fail to be a perfected Lien having the priority purported to be created by the DIP Orders;

7

The Borrower:                          Seegrid Corporation

(g)      The Bankruptcy Court shall enter an order with respect to Debtor dismissing its Chapter 11 Case or converting it to a case under Chapter 7 of the Bankruptcy Code, or appointing a trustee in its Chapter 11 Case or appointing a responsible officer or an examiner with enlarged powers relating to the operation of the Debtor's business (beyond those set forth in Section 1106(a)(3) or (4) of the Bankruptcy Code) under Bankruptcy Code Section 1106(b), and the order appointing such trustee, responsible officer or examiner shall not be stayed, reversed or vacated within three (3) days after the entry thereof;

(h)      The Bankruptcy Court shall enter an order to which the DIP Lender did not consent granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code to the holder of any claim against any of the Debtor having an aggregate value (for all such claims) in excess of $50,000, which order enables the holder of such claim to exercise any right or remedy against any property of the Debtor;

(i)      An order of the Bankruptcy Court shall be entered in the Chapter 11 Case amending, supplementing, staying for a period in excess of five (5) days, vacating or otherwise modifying any of the DIP Orders (including entry of an order terminating the use of cash collateral, or the Debtor shall apply for authority to do so;

(j)      The Debtor shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of the Debtor) any other Person's opposition of, any motion made in the Bankruptcy Court by the DIP Lender seeking confirmation of the amount of the DIP Lender's claim or the validity and enforceability of the Liens in favor of the DIP Lender (including the Liens securing Pre-Petition Secured Debt owed to the DIP Lender);

(k)      From and after the date of entry thereof, the Interim Order shall cease to be in full force and effect (or shall have been vacated, stayed for a period in excess of five (5) days, reversed, modified or amended), in each case without the consent of the DIP Lender, and the Final Order shall not have been entered prior to such cessation (or vacatur, stay, reversal, modification or amendment);

(l)      The Final Order shall not have been entered by the Bankruptcy Court on or before a date that is thirty (30) days after the Petition Date; or from and after the date of entry thereof, the Final Order shall cease to be in full force and effect (or shall have been vacated, stayed for a period in excess of five (5) days, reversed, modified or amended), in each case without the consent of the DIP Lender;

(m)      The Debtor shall make any payment on any Indebtedness of the

8

The Borrower:                         Seegrid Corporation

Debtor incurred before the Petition Date, other than as permitted under the DIP Orders or as permitted hereunder and other than any payment approved by the Bankruptcy Court of any Indebtedness;

(n)       The Debtor shall fail to comply with the terms of the DIP Orders in any material respect;

(o)       The commencement of any action against the DIP Lender by or on behalf of the Debtor except for any action commenced by an unsecured creditors committee or any other individual or entity following authorization and approval by the Bankruptcy Court or any actions pending against the DIP Lender as of the Petition Date;

(p)       The Debtor, without the prior written consent of the DIP Lender, withdraws the Plan or withdraws its support of confirmation of the Plan.

(q)   The Debtor modifies or amends the Plan without the prior written consent of the DIP Lender, which consent shall not be unreasonably withheld with respect to any immaterial modification or amendment.

(r)       The Bankruptcy Court denies confirmation of the Plan.

(s)       The Plan is not confirmed by the Bankruptcy Court on or before the date that is sixty (60) days after the Petition Date.

(t)       The Effective Date does not occur on or before the date that is seventy-five (75) days after the Petition Date.

(u)       The Debtor, without the prior written consent of the DIP Lender, (i) files, supports or seeks confirmation of a plan of reorganization or liquidation other than the Plan (which shall be deemed to include any modifications or amendments to the Plan which the Lender consented to) or (ii) moves to sell all or any portion of the Debtor's assets pursuant to section 363 of the Bankruptcy Code that is not otherwise expressly authorized under the DIP Loan Agreement;

(v)       The entry of an order granting any other claim superpriority status or a Lien equal or superior to that granted to the DIP Lender, other than with respect to the Carve-Out;

(w)       Except as set forth in section 6.1(i) of the DIP Loan Agreement, the filing by the Debtor of any motion or proceeding which could reasonably be expected to result in material impairment of the DIP Lender's rights under the DIP Loan Agreement or the Notes; or a final determination by the Bankruptcy Court (or any other court of competent jurisdiction) with respect to any motion or proceeding brought by any other party which results in any material impairment of

| | |
|---|---|
| The Borrower: | Seegrid Corporation |
| | the DIP Lender's rights under the DIP Loan Agreement or the Notes; |
| | *See*, DIP Loan Agreement, Article 6. |
| Relief from the Automatic Stay: | Upon the occurrence and continuance of any Event of Default as set forth in Section 6.1 of the DIP Loan Agreement or the Debtor's violation of any provision of this Interim Order or the Final Order, and in addition to the right of the DIP Lender to refuse to make further loans pursuant to the provisions of the DIP Loan Documents, the automatic stay under Section 362 of the Bankruptcy Code shall be deemed lifted, without further order of or application to the Bankruptcy Court, to permit the DIP Lender to do one or more of the following: (a) terminate the Debtor's use of Cash Collateral and cease to make any loans or advances to the Debtor; (b) declare all obligations of the Debtor under the DIP Loan Agreement and Notes to be immediately due and payable; (c) terminate the DIP Financing Commitment; (d) enforce rights against the Collateral in the possession of the DIP Lender for application towards the obligations of the Debtor under the DIP Loan Agreement and Notes; and (e) take any other actions or exercise any other rights or remedies permitted under the DIP Orders, the DIP Loan Agreement and the Notes or applicable law to effect the repayment and satisfaction of the DIP Facility Obligations; <u>provided</u>, that the DIP Lender shall provide five (5) business days written notice (by facsimile, telecopy, electronic mail, or otherwise) to the U.S. Trustee, counsel to the Debtor and counsel to any committee appointed in this Case prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the rights described in clauses (a), (b) and (c) above to the extent they might be deemed remedies in respect of the Collateral); <u>provided further</u>, that the Debtor shall have the right to seek continuation of the automatic stay during such five (5) business day period solely on the basis that no Event of Default has occurred. |
| | *See*, DIP Loan Agreement, Article 6. |
| Modification of the Debtor's authority or right to file a plan, seek an extension of time in which the Debtor has the exclusive right to file a plan: | Without the consent of the DIP Lender, under no circumstances shall any Chapter 11 plan other than the Plan in this Case be confirmed or become effective unless such plan provides that the DIP Facility Obligations shall be paid in full in cash and satisfied in the manner provided in the DIP Loan Documents on or before the effective date of such plan. |
| | *See*, Interim Order, ¶ 19(b). |
| <u>Local Rule 4001-2(a)(1)(A)</u>: Provisions that grant cross- | None. |

| The Borrower: | Seegrid Corporation |
|---|---|

collateralized protection to the prepetition secured creditors

| Local Rule 4001-2(a)(1)(B): Provisions or findings of fact that bind the estate with respect to validity, perfection or amount of the secured creditor's prepetition lien or waiver of claims against the seemed creditor without first giving parties in interest at least one hundred twenty (120) days from the entry of the order and the creditors' committee, if formed, or at least sixty (90) days from the date of its formation to investigate such matters. | The Debtor's stipulations, acknowledgments, and agreements in the Interim Order are not binding upon any party-in-interest, creditors' committee or subsequently appointed trustee. |
|---|---|
| Local Rule 4001-2(a)(1)(C): Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c) | None. |
| Local Rule 4001-2(a)(1)(D): Provisions that immediately grant to the prepetition secured creditor liens on certain claims and causes of action. | Causes of action arising under Sections 544, 545, 547, 548, 549, 550, 553(b) and 724(a) (the "Bankruptcy Actions") are specifically excluded from the Collateral solely for purposes of the Interim Order. *See*, Interim Order, ¶6. The inclusion of the Bankruptcy Actions as Collateral under the Final Order is reasonable given the Debtor's urgent need for post-petition financing. But for the inclusion of the Bankruptcy Actions, the DIP Lender would be unwilling to provide the DIP Facility. |
| Local Rule 4001-2(a)(1)(E): Provisions that deem prepetition secured debt to be postpetition secured debt or that use postpetition loans for a prepetition secured creditor to pay part or all of that secured creditor's prepetition debtor, other than as provided in 11 U.S.C. § 552(b). | None |

11

| | |
|---|---|
| The Borrower: | Seegrid Corporation |
| Local Rule 4001-2(a)(1)(F): Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out. | The Debtor does not expect there to be a 341 meeting or committee appointed in this case in light of the results of the voting on the pre-packaged plan of reorganization. |
| Local Rule 4001-2(a)(1)(G): Provisions that prime any secured lien without the consent of the lienor. | Subject to the Carve-Out, which excludes the Pre-Petition Liens from the priming by the DIP Liens, solely to the extent of any diminution in the value of one or more Investor's interest in the Pre-Petition Encumbered Assets from and after the Petition Date, the Motion seeks to prime the liens of HERC, in its capacity as a holder of approximately $1.8 million in Pre-Petition Secured Debt without such lienholder's consent.  All other lienholders whose liens are being primed under the Interim Order have consented to the priming of their liens. |

The DIP Lender would be unwilling to provide the DIP Facility unless the DIP Facility is secured by priming liens.  As a result of the Carve-Out and as set forth in Paragraph 22 below, HERC is adequately protected.

*See*, Interim Order, ¶¶ 8, 17.

## APPLICABLE AUTHORITY

### A.     The DIP Facility Should be Approved

16.   Section 364(c) of the Bankruptcy Code provides that if a debtor-in-possession is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code, then the Court, after notice and a hearing, may authorize the debtor-in-possession to obtain credit or incur debt:

(i)      with priority over any and all administrative expenses of the kind specified in Section 503(b) or 507(b) of [the Bankruptcy Code]; or

(ii)     secured by a lien on property of the estate that is not otherwise subject to a lien; or

(iii)    secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

17.  Pursuant to Section 364(d) of the Bankruptcy Code, a debtor-in-possession may also grant liens and security interests in all or a part of its assets that are prior and superior to all other liens or security interests therein.

18.  Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization to obtain post-petition financing and provides in relevant part:

***

> (2) <u>Hearing</u>.  The Court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion.  If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Bankruptcy Rule 4001(c).  Accordingly, the Court is authorized to grant the relief requested herein.

19.  Courts have articulated a three-part test to determine whether a debtor may obtain financing under Section 364(c) of the Code: (i) the debtor is unable to obtain unsecured credit under Section 364(b) (i.e., by granting a lender administrative expense priority); (ii) the credit transaction is necessary to preserve the assets of the estate; and (iii) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor and the proposed lender.  *In re Aqua Associates,* 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above test and holding that "[o]btaining credit should be permitted not only because it is not available elsewhere, which could suggest the unsoundness of the basis for the use of the funds generated by credit, but also because the credit required is of significant benefit to the debtor's estate and the terms of the proposed loan are within the bounds of reason, irrespective of the inability of the debtor to obtain comparable credit elsewhere."); *In*

13

*re Ames Department Stores, Inc.,* 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (holding that financing will not be approved where "it is apparent that the purpose of the financing is to benefit a creditor rather than the estate" and that the debtor must show that it has made a reasonable effort to seek other sources of financing under Sections 364(a) and (b) of the Bankruptcy Code).   Here, the Debtor has been unable to obtain unsecured credit (or any additional secured credit), and entering into the DIP Facility is necessary to preserve the Debtor's assets; and the Debtor believes that the terms of the DIP Facility are fair, reasonable and adequate.

20.   Pursuant to Section 364(d)(1) of the Code, a debtor can also obtain financing on a superpriority basis over other secured creditors.   In order to obtain superpriority financing, the debtor must show that the interest of the holder of the lien on the property on which the senior priority lien is proposed to be granted is adequately protected.   *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994).   The Bankruptcy Code does not expressly define adequate protection, but Section 361 provides that adequate protection can be provided by periodic cash payments, additional replacement liens, or other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property.   *Swedeland*, 16 F.3d at 564.   "Whether protection is adequate depends directly on how effectively it compensates the secured creditor for loss of value caused by the superpriority given to the post-petition loan." Id.

21.   The Debtor believes that the best means to maximize the value of the Debtor's assets is to promptly seek confirmation of the Plan.   The Debtor, however, lacks sufficient funds to operate its business and meet its post-petition obligations during the Plan process.

22. Following arms-length negotiations, the DIP Lender is providing post-petition financing and all of the Investors other than HERC have consented to the priming of their liens and the use of their cash collateral in connection therewith to enable the Debtor to operate during the Plan process. The Investors including HERC are adequately protected with respect to both the priming liens and the use of its portion of the cash collateral (i) through the Plan process which will maximize value of the Debtor's assets and provide the greatest recovery to all creditors including HERC, (ii) the continued operation of the Debtor's business through the use of receivables under the DIP Facility, and (iii) the adequate protection liens and adequate protection claims being granted to HERC hereunder. In addition, as set forth above, the DIP Lender has agreed, as part of the Carve-Out, to exclude any Pre-Petition Liens from the priming by the DIP Liens, to the extent of any diminution in the value of one or more Investor's interest in the Pre-Petition Encumbered Assets from and after the Petition Date.

23. The Debtor has virtually no unencumbered funds or credit available to fund its business operations. Without funding under the debtor-in-possession financing facility from the DIP Lender and the use of cash collateral, as proposed herein, the Debtor's operations will have to immediately cease, the value of its assets will be severely diminished, and many jobs will be lost. Further, due to severe operating and financial difficulties and its existing capital structure, the Debtor has been unsuccessful in its attempts to secure funding outside of a Chapter 11 context nor could the Debtor secure funding inside of a Chapter 11 bankruptcy on an unsecured or subordinated basis. In short, without the use of cash collateral and funding under the proposed debtor-in-possession financing facility, the Debtor's prospects for maximizing value of its assets through confirmation of the Plan will be substantially undermined and the value of the Debtor's assets will be placed in serious jeopardy. Therefore,

it is imperative that the Debtor be authorized to use cash collateral and obtain debtor-in-possession financing in order to preserve its assets pending confirmation of the Plan.

24. To protect and preserve the Debtor's assets during the confirmation process, the DIP Lender is prepared to proceed with its commitment under the DIP Facility.  The DIP Facility contemplates that the Debtor will first use available cash collateral to satisfy obligations, and then use proceeds from the DIP Facility.

25. The Debtor believes that advances under the DIP Facility coupled with use of cash collateral will be sufficient to enable the Debtor to continue to operate on a going concern basis and allow the Debtor to seek confirmation of the Plan, implement the Plan (if confirmed by this Court) and close this Case.

26. The DIP Facility was negotiated at arms' length and in good faith, and its terms and conditions are reasonable under the circumstances.

27. Inasmuch as the terms and conditions of the DIP Facility are fair and reasonable, and were negotiated by the parties in good faith and at arms' length, the DIP Lender should be accorded the benefits of §364(e) of the Bankruptcy Code.

28. Based on the above, the Debtor decided, in the exercise of its sound business judgment, that the DIP Facility (together with the use of cash collateral) was the most favorable under the circumstances and addressed the Debtor's working capital needs.  It, along with the use of cash collateral, will afford the Debtor valuable additional time to pursue confirmation of the Plan while maintaining the going concern value of the Debtor's business.

29. The Debtor requires immediate access to funds in order to pay essential expense items.  The Debtor also requires certain funds to pay any unforeseen costs and expenses pending a final hearing on this Motion.

**B.**     <u>**The Automatic Stay Should Be Modified On a Limited Basis**</u>

30.   The relief requested in this Motion contemplates a modification of the automatic stay pursuant to Section 362 of the Bankruptcy Code to: (a) permit the Debtor to grant the security interests, liens, and superpriority claims described above with respect to the DIP Facility and to perform such acts as may be reasonably requested to assure the perfection and priority of such security interests and liens; (b) permit the DIP Lender to exercise (solely with respect to the DIP Facility), upon the occurrence and continuance of an Event of Default, the rights and remedies provided for in the DIP Facility, the Interim Order, and the Final Order, as applicable; and (c) implement the terms of the DIP Orders.

31.   In the Debtor's business judgment, the stay modification requested in this Motion (and provided for in the Interim Order) is fair and reasonable under the circumstances.

**C.**     <u>**The Debtor Should be Permitted to Make Interim Borrowings Under the DIP Facility**</u>

32.   Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14) days after service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on such a motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a hearing to consider the relief requested on a final basis.

33.   Pursuant to Bankruptcy Rule 4001(b) and (c), the Debtor respectfully requests that the Court conduct an expedited preliminary hearing on this Motion and (i) authorize the Debtor to use Cash Collateral and, consistent with the Budget and the DIP Facility, use the proceeds of the DIP Facility on an interim basis, pending the Final Hearing and entry of the

Final Order, to avoid immediate and irreparable harm to the Debtor's estate and (ii) schedule the Final Hearing.

34.  The Debtor requires the ability to obtain immediate credit under the DIP Facility on an interim basis pending the Final Hearing in an amount of up to $430,000.

35.  Such credit is needed to satisfy the Debtor's obligations in connection with the operation of its business, including, but not limited to, the payment of employee wages, salaries and benefits, as well as the Debtor's rent obligations.  The immediate and irreparable harm that could result in the absence of approval of interim financing is detrimental to the interests of all concerned.

## SATISFACTION OF BANKRUPTCY RULE 6003

36.  Pursuant to Bankruptcy Rule 6003, the Bankruptcy Court may grant a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty one (21) days after the Petition Date to the extent the relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003.  As set forth above and in the Heilman Declaration, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estates and, therefore, entry of the Interim Order is appropriate under Bankruptcy Rule 6003.

## WAIVER OF BANKRUPTCY RULES 6004(A) AND (H)

37.  For the reasons set forth herein, to implement the foregoing immediately, the Debtor requests that the Bankruptcy Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

18

## **NOTICE**

38. The Debtor shall provide notice of this Motion by facsimile, email and/or overnight mail to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtor's twenty (20) largest unsecured creditors; (iii) the Investors (and their counsel where applicable); (iv) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; and (vi) applicable state regulatory authorities. In light of the nature of the relief requested in this Motion, the Debtor respectfully submits that no further notice is necessary. As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-l(m). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order, attached hereto, schedule the Final Hearing and thereafter enter the Final Order, and (ii) grant such other and further relief as is just and proper.

Dated:  October 21, 2014
       Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Curtis S. Miller*
Robert J. Dehney (Bar No. 3578)
Curtis S. Miller (Bar No. 4583)
Daniel B. Butz (Bar No. 4227)
1201 North Market Street
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email: rdehney@mnat.com
       cmiller@mnat.com
       dbutz@mnat.com

*Proposed Counsel for Debtor*
    *and Debtor in Possession*

8608082