**<u>EXHIBIT A</u>**

INTERIM ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| SEEGRID CORPORATION, | Case No. 14-_12391_ (___) |
| Debtor. | Related to Doc. No. ____ |

### INTERIM FINANCING ORDER (I) (A) REGARDING POSTPETITION FINANCING; (B) USE OF CASH COLLATERAL; (C) SUPERPRIORITY LIENS AND CLAIMS; AND (D) ADEQUATE PROTECTION; AND (II) SCHEDULING AND ESTABLISHING DEADLINES RELATING TO A FINAL HEARING ON SUCH MATTERS

Upon the motion (the "Motion"), dated October 21, 2014, of Seegrid Corporation (the "Debtor"), pursuant to sections 105, 361, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), (a) for the entry of this Interim Financing Order and the Final Financing Order (as defined herein) authorizing the Debtor to: (i) obtain post-petition financing pursuant to section 364 of the Bankruptcy Code; (ii) authorize the use of cash collateral pursuant to section 363 of the Bankruptcy Code; (iii) perform such other and further acts as may be required in connection with the DIP Loan Documents (as defined herein); (iv) grant priming liens and superiority claims to and on behalf of and for the benefit of the DIP Lender (as defined herein) in all Collateral (as defined herein) in accordance with the DIP Loan Documents and this Interim Financing Order and the Final Financing Order to secure any and all of the DIP Facility Obligations (as defined herein); (v) subject to the terms and limitations herein, use Cash Collateral (as defined herein); and (vi) (a) pending a final hearing on the Motion (the "Final Hearing"), obtain emergency postpetition loans in an amount not to exceed $430,000 and authorization to use cash collateral to and including the date on which the Final Financing Order is entered, (b) requesting the provision of adequate protection for the Investors (as defined herein), and (c) in accordance with Rules 4001(b)(2) and (c)(2) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting that this Court

schedule the Final Hearing and approve notice with respect thereto; and the Court having

considered the Motion and the exhibits attached thereto, including, without limitation, the DIP

Loan Documents; and a hearing to consider approval of the interim commitment having been

held and concluded on October __, 2014 (the "Interim Hearing"); and upon all of the pleadings

filed with the Court and all of the proceedings held before the Court; and after due deliberation

and consideration and good and sufficient cause appearing therefor;

**BASED ON THE RECORD, THE COURT HEREBY FINDS:**

      A.      On October 21, 2014 (the "Petition Date"), the Debtor filed a voluntary

petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court"). The Debtor is continuing in the

management and possession of its business and properties as a debtor-in-possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.

      B.      No request has been made for the appointment of a trustee or examiner

and no statutory committee has yet been appointed in the Debtor's above-captioned Chapter 11

case (the "Case").

      C.      Consideration of this Motion constitutes a "core proceeding" as defined in

28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). This Bankruptcy Court has jurisdiction

over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157

and 1334. Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and

1409.

D.       Without prejudice to the rights of any other creditor or other party-in-interest (including any official creditors' committee), the Debtor acknowledges, admits and confirms the following as of the Petition Date:

(i)       Commencing in November 2012, pursuant to several Note and Warrant Purchase Agreements and various other documents and instruments (the "Pre-Petition Agreements"), each by and among the Debtor and the several investors named therein (the "Investors"), the Investors made secured loans and other financial accommodations to the Debtor.  All such loans, financial accommodations and other amounts owing under, or in connection with, the Pre-Petition Agreements and all collateral and ancillary documents executed in connection therewith (collectively, the "Pre-Petition Loan Documents") are hereinafter referred to as the "Prior Obligations".  A chart setting forth the Prior Obligations as of Petition Date and the priority of the Pre-Petition Liens (as defined below) securing such Prior Obligations is attached hereto as **Exhibit A**.

(ii)       The Prior Obligations are not subject to disallowance, subordination, recharacterization, defense, counterclaim, cross-claim, deduction or offset of any kind or otherwise avoidable, and as of the Petition Date, the Debtor is liable to the Investors in respect of loans and advances made by the Investors pursuant to the Pre-Petition Agreements in the aggregate amount of not less than $17,855,197 consisting of (a) the aggregate principal amount and (b) accrued and unpaid interest thereon at the applicable rate.

(iii)       The Prior Obligations are secured by valid, perfected, enforceable liens and security interests (collectively, the "Pre-Petition Liens") granted by the Debtor to the Investors, which liens and security interests are not subject to subordination, defense,

disallowance or otherwise avoidable, upon substantially all of the Debtor's assets (the "Pre-Petition Encumbered Assets").

(iv)     The Pre-Petition Loan Documents are valid and binding agreements and obligations of the Debtor, and the Pre-Petition Liens on the Pre-Petition Encumbered Assets: (a) constitute valid, binding, enforceable and perfected security interests and liens; and (b) are not subject to avoidance, reduction, disallowance, impairment or subordination by the Debtor pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(v)     (i) The Prior Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms; (ii) the Debtor has no objection, offset, defense or counterclaim of any kind or nature to the Prior Obligations; and (iii) the Prior Obligations are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(vi)     The Debtor, in its individual capacity, hereby forever releases, waives, and discharges the DIP Lender (as hereinafter defined), together with its officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any aspect of the prepetition relationship between the Debtor, on the one hand, and any or all of the Released Parties, on the other hand, or any other acts or omissions by any or all of the Released Parties in connection with their prepetition relationship with the Debtor.

E.     That portion of the Pre-Petition Encumbered Assets constituting cash or cash equivalents, including cash constituting the proceeds, product, or profits of any Pre-Petition Encumbered Assets received after the Petition Date, may constitute cash collateral of the

Investors within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"). The Debtor has no material cash or assets readily convertible into cash that are not subject to the asserted liens and security interests of the Investors.

F.    The Debtor does not have sufficient financing to fund its present continuing operations, let alone fund its operations on a long-term basis, and the Debtor's attempts to seek new investors or to sell substantially all of the assets of, or equity interests in, the Debtor outside of bankruptcy did not culminate in a consummated transaction. As a result, the Debtor determined that the appropriate course is to seek confirmation of a prepackaged plan of reorganization. Towards that end, commencing on October 3, 2014, the Debtor solicited votes on the *Prepackaged Plan of Reorganization of Seegrid Corporation Under Chapter 11 of the Bankruptcy Code* (the "Plan"). The Debtor received the requisite acceptances in response to the solicitation and promptly commenced this Case on the Petition Date to seek confirmation of the Plan. The post-petition financing and cash collateral arrangements described in the Motion are conditioned upon and otherwise tied to the Debtor's continued pursuit of confirmation of the Plan by the Bankruptcy Court.

G.    The use of the Cash Collateral alone will not be sufficient to fund the operations of the Debtor throughout the confirmation process and through the effective date of the Plan. In addition, the Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, or subordinate secured financing under section 364 of the Bankruptcy Code, for such purpose. Specifically, and as a result of the presence of the Pre-Petition Liens, financing on a post-petition basis is not otherwise available without the Debtor granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all

- 5 -

administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy

Code, and securing such indebtedness and obligations with security interests in, and liens on, the

pre-petition and post-petition property of the Debtor, whether existing on the Petition Date or

thereafter acquired, as described below, pursuant to sections 364(c)(2) and 364(d)(1) of the

Bankruptcy Code.

    H.  Accordingly, and for the purpose of funding its continuing operations (and

the expenses of bankruptcy administration) throughout the confirmation process and through the

effective date of the Plan, the Debtor seeks approval of a debtor-in-possession credit facility (as

the same may be amended, supplemented or otherwise modified from time to time, the "DIP

Facility") on a superpriority and priming basis on the terms set forth in the Debtor-in-Possession

Loan Agreement, dated as of October 21, 2014 (the "DIP Loan Agreement"),[1] providing for

secured postpetition financing by Giant Eagle, Inc. (the "DIP Lender"), and all other documents,

agreements or instruments in connection therewith or related thereto (collectively, as the same

may be amended, supplemented or otherwise modified from time to time, the "DIP Loan

Documents"), up to an aggregate principal amount of $3,000,000.00.

    I.  The relief requested in the Motion, which relief is a condition to the

financing, use of Cash Collateral, priming liens and other matters set forth herein, is necessary,

essential and appropriate for the continued operation of the Debtor's business and the

management and preservation of its assets and is otherwise necessary to avoid immediate

irreparable harm to the Debtor's estate pending the Final Hearing, and is in the best interests of

the Debtor, its estate, and its creditors.

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings assigned thereto in the DIP Loan Agreement.

J.    The terms and conditions of the DIP Loan Documents are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.

K.    The post-petition financing arrangement described in the Motion and set forth in the DIP Loan Documents and entered into by the Debtor and the DIP Lender was negotiated at arm's length and in good faith as that term is defined in section 364(e) of the Bankruptcy Code, and the DIP Lender is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

L.    The Investors' interests in the Pre-Petition Encumbered Assets and the use of Cash Collateral are adequately protected by (i) the continued operation of the Debtor's business through the use of receivables of the DIP Loan Agreement and (ii) the Adequate Protection Liens and Adequate Protection Claims (as such terms are defined herein) and other benefits and privileges contained herein, including but not limited to the Carve-Out (as defined herein).  Such adequate protections and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.  It is contemplated that such adequate protection will be continued in the Final Financing Order.

M.    Notice of the relief sought by the Motion and the hearing with respect thereto was delivered on October 21, 2014 in the manner indicated on the Notice of Service Doc. No. ___, in additional to the DIP Lender, to the following creditors and parties in interest: (i) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) those parties listed on the List of Creditors Holding Largest Twenty Unsecured Claims Against the Debtor, as identified in the Debtor's Chapter 11 petition; (iii) the Investors (and their counsel, where

applicable); (iv) the Internal Revenue Service; and (v) any party that has filed a lien against any of the Debtor's assets (collectively, the "Interim Notice Parties").  Given the nature of the relief sought in the Motion, such notice constitutes sufficient and adequate notice of this Interim Financing Order pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b) and 364(d) of the Bankruptcy Code, and no further notice of the Motion or this Interim Financing Order is necessary or required.

N.    The Debtor has requested, and good, adequate, and sufficient cause has been shown to justify, the granting of the relief requested herein pending the Final Hearing. Absent entry of this Interim Financing Order, the Debtor's estate will be immediately and irreparably harmed.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Motion Granted</u>.  The Motion is granted in its entirety subject to the provisions hereof.  Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.  This Interim Financing Order shall become effective immediately upon its entry.

2.    <u>DIP Loan Documents</u>.

(a)    The DIP Loan Documents constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms.

(b)    To enable the Debtor to continue to operate its business, during the period from the entry of this Interim Financing Order through and including the earlier of the entry of a Final Financing Order or the date that is thirty (30) days after the Petition Date, and subject to the terms and conditions of this Interim Financing Order and the DIP Loan Documents,

including, without limitation, the budget-related covenants contained in the DIP Loan Documents, the Debtor is hereby authorized to borrow under the DIP Facility an aggregate outstanding principal amount not to exceed $430,000.

(c)    The Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, security agreements, mortgages and financing statements) that may be contractually required or necessary (as the case may be) for the Debtor's performance under the DIP Loan Documents.  The Debtor and the DIP Lender, upon notice to the United States Trustee and any appointed statutory committee, may amend or modify the DIP Loan Documents without the necessity of any further Bankruptcy Court approval so long as any such amendment or modification does not materially alter the provisions of this Interim Financing Order or the Final Financing Order.  The Debtor may use Advances under the DIP Facility as provided in the DIP Loan Documents.

3.    DIP Facility Obligations.  All obligations owed to the DIP Lender under or in connection with the DIP Loan Documents, including, without limitation, all loans, Advances, letters of credit and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the DIP Loan Documents, and any and all other obligations at any time incurred by the Debtor to the DIP Lender, are defined and referred to herein as the "DIP Facility Obligations".

4.    Interest on the DIP Facility Obligations.  Interest on the DIP Facility Obligations shall accrue at the rates (including any applicable default rates) and shall be paid by the Debtor at the times as provided in the DIP Loan Documents.

5.      <u>DIP Budget/Permitted Uses</u>.  In addition to all, and without limiting any, of the other limitations on the Debtor in its use of Cash Collateral and portions of the Pre-Petition Encumbered Assets or in the use of funds borrowed under the DIP Loan Documents that are set forth in this Interim Financing Order and/or in the DIP Loan Documents:

(a)      Cash Collateral or funds borrowed under the DIP Loan Documents may be used only in accordance with the Debtor's weekly operating budget that has been mutually agreed to by the Debtor and the DIP Lender (the "<u>Budget</u>").

(b)      The Budget may be amended from time to time as mutually agreed to in writing by the Debtor and the DIP Lender, upon notice to the United States Trustee and any appointed statutory committee.

(c)      Subject to the limitations of subsection (d), in no event shall the Debtor's actual weekly expenditures exceed:  (i) with respect to any specific line item relating to the payment of professional fees and expenses, the amount budgeted therefor in the Budget; (ii) with respect to any specific line item not relating to the payment of professional fees and expenses, the amount budgeted therefor in the Budget by more than fifteen percent (15%) of such specific line item; and (iii) with respect to the aggregate amount of weekly expenditures, the aggregate amount of all expenditure line items set forth in the Budget for such period by more than ten percent (10%) (collectively, the "<u>Permitted Variance</u>").

(d)      In the event that the actual expenditures for a weekly period are less than the budgeted amount for such period under the Budget, such unused budgeted expenditures may be carried over for use in the next weekly period (and, to the extent not entirely used in that next weekly period, further may be carried over to any and all weekly periods until fully used).

(e)    No later than three (3) business days after the conclusion of each weekly period, the Debtor shall furnish the DIP Lender with reconciliations of projected versus actual revenues and disbursements for that prior period.

6.    Collateral.  The collateral (collectively, the "Collateral") securing the repayment, reimbursement, and satisfaction of the DIP Facility Obligations shall consist of all presently owned and hereafter acquired property, assets, interests and rights, of any kind or nature, of the Debtor, wherever located, including, without limitation, any and all rights, claims, avoidance actions and other causes of action of the Debtor's estate (excluding for purposes of this Interim Financing Order only, actions asserted by the Debtor or any subsequently appointed trustee or representatives of the Debtor's estate under sections 544, 545, 547, 548, 549, 550, 553(b), and 724(a) of the Bankruptcy Code (collectively, the "Bankruptcy Actions")) and Company Claims as defined in the DIP Loan Agreement; provided, however, that the Collateral shall not include any derivative claims for breach of fiduciary duty predicated on actions that occurred prior to the Petition Date.  The Final Financing Order requested to be entered at the Final Hearing is contemplated to contain provisions expressly including the Bankruptcy Actions as part of the Collateral.

7.    Priming.  The priming of the Pre-Petition Liens by the DIP Liens, as well the creation of the Carve-Out (as defined herein), on the terms and conditions set forth in the DIP Loan Documents and this Interim Financing Order is consistent with and authorized by the Bankruptcy Code.

8.    DIP Liens.  In order to provide the DIP Lender with security for the Debtor's repayment, reimbursement, and satisfaction of any and all of the DIP Facility

Obligations, but subject to the Carve-Out, the DIP Lender shall have, and hereby is granted liens in the Collateral, as follows (collectively, the "DIP Liens"):

(a)    Pursuant to section 364(c)(2) of the Bankruptcy Code, for the sole benefit of the DIP Lender, valid, binding, continuing, enforceable, first priority and fully perfected liens in all of the Collateral that was unencumbered as of the Petition Date.

(b)    Pursuant to section 364(d)(1) of the Bankruptcy Code, for the sole benefit of the DIP Lender, valid, binding, continuing, enforceable, first priority and fully perfected liens on all of the Collateral that constitutes Pre-Petition Encumbered Assets.

9.    Super-Priority Claims.  In addition to the DIP Liens granted herein, but subject only to the Carve-Out, all DIP Facility Obligations shall constitute allowed, super-priority, administrative expense claims under section 503(b) of the Bankruptcy Code and under section 364(c)(1) of the Bankruptcy Code (the "DIP Super-Priority Claims") against the Debtor, having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503, 506(c), 507, 546(c), 726, 1113 and 1114 of the Bankruptcy Code, or otherwise whether incurred in the Case or any conversion thereof to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto. The DIP Super-Priority Claims shall be payable from, and have recourse to, all pre-petition and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired, and all proceeds thereof.

10.    Granting of Adequate Protection Liens.  In order to provide, in accordance with section 361(2) of the Bankruptcy Code, the Investors with adequate protection against any diminution in the value of their interest in the Pre-Petition Encumbered Assets (existing as of the

Petition Date) resulting to the extent of any diminution in the value of the Pre-Petition

Encumbered Assets (including Cash Collateral) from and after the Petition Date, including but

not limited to any diminution in value resulting from:  (i) the imposition of the automatic stay;

(ii) the priming of the Pre-Petition Liens in favor of the DIP Facility Obligations; (iii) the use of

the Cash Collateral; (iv) the use, sale or lease of Pre-Petition Encumbered Assets; or (v) the

subordination of the Pre-Petition Liens of the Investors in and to the Pre-Petition Encumbered

Assets to the extent of the DIP Facility Obligations, and the Carve-Out, the Investors hereby are

granted liens (the "Adequate Protection Liens") against and in all presently owned and hereafter

acquired property, assets, and rights, of any kind or nature, of the Debtor, wherever located,

including, without limitation, any and all rights, claims, and causes of action of the Debtor's

estate (excluding only the Bankruptcy Actions) (the "Adequate Protection Collateral").  The

Adequate Protection Liens on the Adequate Protection Collateral shall terminate automatically

and without further Order of this Court upon the effective date of the Plan upon the occurrence

of which, the treatment of the claims of the Investors shall be governed in all respects by the

Plan.

> 11.    Reservation of Section 507(b) Rights.  While the Adequate Protection

Liens are expressly excluded from attaching to the Bankruptcy Actions for purposes of this

Interim Financing Order, the Investors' rights under section 507(b) of the Bankruptcy Code are

not waived, but instead are expressly reserved, including, without limitation, with respect to the

proceeds of the Bankruptcy Actions.  The Adequate Protection Liens shall be a first and prior

lien on the Adequate Protection Collateral, subject only to any other Pre-Petition Liens existing

on the Adequate Protection Collateral, the DIP Liens, and the Carve-Out.  Consistent with the

foregoing, this Paragraph is intended to provide the Investors with security to protect (and is

necessary to protect) the Investors from any risk of erosion (or diminution) in the value of their Pre-Petition Encumbered Assets as such value existed on the Petition Date, which erosion or diminution would give rise to an adequate protection claim in a minimum amount equal to the amount of such erosion or diminution, and to attempt to mitigate (with the other provisions of this Interim Financing Order) the effect of, without limitation:  (i) the DIP Liens; and (ii) the subordination of the Pre-Petition Liens in the Pre-Petition Encumbered Assets to the DIP Liens and to the Carve-Out.

        12.    <u>Adequate Protection Claims</u>.  To the extent that the liens provided herein are insufficient to secure any adequate protection claim of the Investors with respect to the Debtor's use, sale, lease, or further encumbrance of the Pre-Petition Encumbered Assets, the Investors shall be granted allowed, super-priority claims under section 507(b) of the Bankruptcy Code (the "<u>Adequate Protection Claims</u>"); <u>provided</u>, <u>however</u>, that such priority, consistent with the other provisions of this Interim Financing Order, shall be subordinate only to the DIP Liens, the DIP Super-Priority Claims, and the Carve-Out.  Except as provided in this Interim Financing Order as to the superpriority status of the DIP Liens, the DIP Super-Priority Claims, and the Carve-Out, no costs or expenses of administration which have been or may be incurred in these proceedings, or in any other proceeding related hereto, and no priority claims, are or will be prior to or on a parity with the Adequate Protection Claims of the Investors (<u>provided</u>, <u>however</u>, that any administrative claimant who is a professional shall be entitled to retain all such payments to the extent of the Carve-Out and that allowed section 507(b) claims of any of the holders of any other Pre-Petition Liens may be granted on such a parity).

        13.    <u>Deemed Satisfaction of Senior Claims from Unencumbered Assets</u>. Notwithstanding any other provisions of this Interim Financing Order to the contrary, and in

order to mitigate the effect of such a priming of the Pre-Petition Liens caused by the DIP Liens and the Carve-Out set forth herein, the DIP Liens, as well as the priority of any Carve-Out claim, shall attach first to any assets unencumbered by liens in favor of the Investors (excluding the Bankruptcy Actions), if any, and shall be deemed satisfied first by the application of any proceeds of such unencumbered assets.  Where proceeds of encumbered assets shall have been paid in partial or complete satisfaction of any Carve-Out claims or any DIP Facility Obligations prior to the collection or other liquidation of any and all unencumbered assets (excluding the Bankruptcy Actions pending entry of the Final Financing Order), such priority of attachment shall be implemented and otherwise realized through the Investors being deemed to have been subrogated to such Carve-Out claims and/or DIP Facility Obligations to the extent that the holders of such claims received proceeds of encumbered assets in payment thereof, with the right of the Investors to enforce such subrogation being suspended until after payment in full in cash of the DIP Facility Obligations and, to the extent provided for herein, of the Carve-Out claims.

14.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  The liens and security interests granted to the DIP Lender and the Investors pursuant to this Interim Financing Order shall be valid, enforceable and perfected, as of the date of the commencement of the Case, without the need for the execution or filing of any further document or instrument otherwise required to be executed or filed under applicable non-bankruptcy law.  Notwithstanding that no documents need be executed or filed to create or perfect the liens and security interests granted hereunder, the Debtor, and officers on its behalf, is hereby directed to execute and deliver such further documents as the DIP Lender may, in its sole discretion, request to evidence and give notice of the liens granted hereunder; <u>provided</u>, <u>further</u>, that if the DIP Lender shall, in its sole discretion, choose to require the execution of and/or file (as applicable) such mortgages,

financing statements, notices of liens and other similar instruments and documents, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded *nunc pro tunc* at the time and on the date of the Petition Date.  Each and every federal, state and local government agency or department is hereby directed to accept the entry by this Bankruptcy Court of this Interim Financing Order as evidence of the validity, enforceability and perfection on the Petition Date of the liens granted or authorized pursuant to this Interim Financing Order to or for the benefit of the DIP Lender.

15.    Effect on Avoided and Preserved Liens, etc.  The DIP Liens shall be: (a) senior and accordingly not subject to any lien that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code, the proceeds of such avoided liens being Collateral securing the DIP Facility Obligations; or (b) not subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise.  No claim or lien having a priority superior to or *pari passu* with those granted by this Interim Financing Order with respect to the DIP Facility Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction of the DIP Facility Obligations in the manner provided in the DIP Loan Documents.

16.    Section 506(c).  The DIP Lender does not consent (nor shall they be deemed to have consented) in any manner whatsoever (whether through affirmative participation in this Case, lack of objection, inaction, or otherwise) to the imposition of any surcharge against any of their collateral for any cost or expense of administration pursuant to section 506(c) of the Bankruptcy Code.  Without limiting the generality of the foregoing, (i) the consent of the DIP Lender to the entry of this Interim Financing Order, (ii) any support, lack of objection, or other

inaction on the part of the DIP Lender regarding the conversion of the Case to one under Chapter 7 of the Bankruptcy Code or the appointment of any bankruptcy trustee, or (iii) any support, lack of objection, or other inaction on the part of the DIP Lender regarding the entry of any other order by the Bankruptcy Court, including, without limitation, any order approving a section 363 sale, or any fee or expense application of any professional, shall in no manner and for no purpose whatsoever ever be deemed to constitute any such consent for the imposition of any such charge against any of their respective collateral.

        17.     Carve-Out.

        (a)     The DIP Liens, the Pre-Petition Liens, and the Adequate Protections Liens shall be junior, in each case, only to (collectively, but subject to the limitations set forth in this Paragraph, the "Carve-Out"):  (i) the payment of fees pursuant to 28 U.S.C. § 1930; (ii) the payment of unpaid professional fees and disbursements incurred by the Debtor to the extent such fees and expenses (A) do not exceed the amounts budgeted therefor in the Budget (the "Budgeted Amounts") and (B) have been or are subsequently allowed by the Bankruptcy Court; provided, however, that upon (x) the acceleration of the DIP Facility following an Event of Default (as such term is defined in the DIP Loan Agreement) and (y) the termination of the DIP Financing Commitment (as such term is defined in the DIP Loan Agreement), then the Carve-Out with respect to the payment of unpaid professional fees and disbursements incurred by the Debtor after the date of such acceleration and termination shall be limited to an aggregate amount not in excess of $100,000.00 and only to the extent such fees and expenses have been or are subsequently allowed by the Bankruptcy Court; and (iii) the Pre-Petition Liens, but solely to the extent of any diminution in the value of one or more Investor's interest in the Pre-Petition Encumbered Assets from and after the Petition Date resulting from the priming of the Pre-

Petition Liens in favor of the DIP Facility Obligations.  Unused amounts in the Carve-Out for any professional or in any other category shall not be carried over or otherwise be available to any other professional or in any other category.  The Carve Out for any professional or professional firm shall be reduced or deemed satisfied dollar for dollar by any and all amounts held by such professional or professional firm in the form of a retainer that has not been previously applied in interim or final payment of allowed professional fees and expenses.  For the avoidance of doubt, and solely for the purposes of confirming that professionals will not be subject to disgorgement in the event of any administrative insolvency of the Debtor, but without requiring the payment of any such fees and expenses except as expressly provided in this paragraph or of any type of duplicative payment, all professional fees and expenses incurred prior to a Potential Default or an Event of Default to the extent such fees and expenses do not exceed the Budgeted Amounts and have been or are subsequently allowed by the Bankruptcy Court shall be deemed to come within (and shall be entitled to the benefit of) the subordination provided herein in favor of pertinent professionals whether or not such allowed fees and expenses have been paid prior or subsequent to a Potential Default or an Event of Default.  In the event that the subordination of liens contemplated by this paragraph 17(a) and the amounts advanced under the DIP Loan Agreement are insufficient to satisfy the payments comprising subsections (i) and (ii) of the Carve-Out, the DIP Lender shall fund the balance of such unpaid amounts within fourteen (14) days of the Debtor's written request therefor.

        (b)        Nothing herein shall constitute a waiver by the DIP Lender of its rights to object to the fees and expenses of any professional retained by the Debtor or a committee, all such rights being fully reserved.

(c)     Notwithstanding any other provisions of this Interim Financing Order to the contrary, no proceeds of any borrowings under the DIP Loan Documents and no Cash Collateral may be used (and the Carve-Out relating to the professionals retained by the Debtor or any such committee in no manner shall be available) to challenge (as opposed to, solely in the case of any official creditors' committee, investigate) in any manner whatsoever, whether by motion, adversary proceeding, or other action or proceeding before any Bankruptcy Court (including, without limitation, the Bankruptcy Court) or other body, the amount, validity, perfection, or priority of the DIP Facility Obligations (and/or the accompanying security interests and liens, including, without limitation, the DIP Liens, in, to and against the Collateral and the DIP Super-Priority Claims) or of the Prior Obligations (and/or the Pre-Petition Liens in, to and against the Pre-Petition Encumbered Assets, including, without limitation, as to the amount of any Adequate Protection Claim or the scope of any Adequate Protection Lien) or to otherwise assert and/or prosecute, by way of motion, adversary proceeding, or other action or proceeding before any court (including, without limitation, the Bankruptcy Court) or other body, any other cause of action or other claim of any nature or type whatsoever (whether under any provision of the Bankruptcy Code (including, without limitation, any provision of Chapter 5 of the Bankruptcy Code) or otherwise, including, without limitation, whether under contract or tort theory, against the DIP Lender in any other capacity.  Further, no proceeds of any borrowings under the DIP Loan Documents and no Cash Collateral may be used (and the Carve-Out relating to the professionals retained by the Debtor or any such committee in no manner shall be available) to (a) prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement, or realization on the Collateral or the Pre-Petition Encumbered Assets, as applicable, in accordance with the DIP Loan Documents, the Pre-Petition Loan Documents, or this Interim Financing

Order; (b) seek to modify any of the rights granted to the DIP Lender hereunder, under the DIP

Loan Documents, or the Pre-Petition Loan Documents, in each of the foregoing cases without the

party's prior written consent; (c) pay any amount on account of any claims arising prior to the

Petition Date unless such payments are (1) approved by an order of this Bankruptcy Court and

(2) in accordance with the Budget; (d) seek authorization, or support any other person or entity

seeking authorization, to use any Cash Collateral without the consent of the Debtor; or (e) obtain

a lien senior to, or on a parity with, the liens of the Debtor in any Collateral or any portion

thereof, without the prior written consent of the Debtor.

        18.   <u>Events of Default</u>.

        (a)   Upon the occurrence and continuance of any Event of Default as set forth

in Section 6.1 of the DIP Loan Agreement or the Debtor's material violation of any provision of

this Interim Financing Order or the Final Financing Order, and in addition to the right of the DIP

Lender to refuse to make further loans pursuant to the provisions of the DIP Loan Documents,

the automatic stay under section 362 of the Bankruptcy Code shall be deemed lifted, without

further order of or application to the Bankruptcy Court, to permit the DIP Lender to do one or

more of the following:  (a) terminate the Debtor's use of Cash Collateral and cease to make any

loans or Advances to the Debtor; (b) declare all DIP Facility Obligations to be immediately due

and payable; (c) terminate any unfunded commitments under the proposed DIP Facility;

(d) enforce rights against the Collateral in the possession of any of the Debtor and/or the DIP

Lender for application towards the DIP Facility Obligations; and (e) take any other actions or

exercise any other rights or remedies permitted under this Interim Financing Order, the other DIP

Loan Documents, or applicable law to effect the repayment and satisfaction of the DIP Facility

Obligations; <u>provided</u>, that the DIP Lender shall provide five (5) business days written notice (by

facsimile, telecopy, electronic mail, or otherwise) to the U.S. Trustee, counsel to the Debtor and counsel to any committee appointed in this Case prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the rights described in clauses (a), (b) and (c) above to the extent they might be deemed remedies in respect of the Collateral); provided further, that the Debtor shall have the right to seek continuation of the automatic stay during such five (5) business day period solely on the basis that no Event of Default has occurred.

(b) No holder of a lien primed by this Interim Financing Order or granted by the Debtor as adequate protection shall be entitled to object on the basis of the existence of any such lien to the exercise by the DIP Lender of its rights and remedies under the DIP Loan Documents or under applicable law to effect satisfaction of the DIP Facility Obligations or to receive any amounts or remittances due hereunder or under the other DIP Loan Documents. The DIP Lender shall be entitled to apply the payments or proceeds of the Collateral in accordance with the provisions of this Interim Financing Order and the other DIP Loan Documents, and except to the extent specifically provided herein, the DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or otherwise.

19. Preservation of Rights.

(a) Notwithstanding anything herein to the contrary, the entry of this Interim Financing Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (i) any of the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, any right of the DIP Lender to: (X) request modification of the automatic stay of section 362 of the Bankruptcy Code; (Y) request dismissal of the Case, conversion of the Case to a case under Chapter 7 of the

Bankruptcy Code, or appointment of a Chapter 11 trustee or examiner (including with expanded

powers); or (Z) be heard with respect to, object to, or assert any other rights with respect to, any

aspect of the Plan and/or confirmation thereof, or (ii) any other rights, claims or privileges

(whether legal, equitable or otherwise) of the DIP Lender.

       (b)     The DIP Facility Obligations and the Debtor's obligations with respect of

the DIP Super-Priority Claims, and the claims and liens granted to or for the benefit of the DIP

Lender pursuant to this Interim Financing Order and the other DIP Loan Documents, are not

subject to any setoff or reduction of any kind, including, without limitation, under section 502(d)

of the Bankruptcy Code, and shall not be discharged by the entry of an order:  (i) approving a

sale of substantially all assets of the Debtor pursuant to section 363 of the Bankruptcy Code;

(ii) confirming a Chapter 11 plan in this Case other than the Plan (and, pursuant to section

1141(d)(4) of the Bankruptcy Code, the Debtor hereby waives such discharge); or

(iii) converting this Case to a case under Chapter 7 of the Bankruptcy Code.  Without the written

consent of the DIP Lender, under no circumstances shall any section 363 sale or Chapter 11 plan

other than the Plan be confirmed or become effective in this Case unless such sale or such other

plan provides that the DIP Facility Obligations shall be paid in full in cash and satisfied in the

manner provided in the DIP Loan Documents on or before the closing or effective date of such

sale or other plan.

       (c)     Based upon the findings set forth in this Interim Financing Order and in

accordance with section 364(e) of the Bankruptcy Code, which is applicable to the commitments

to extend financing contemplated by this Interim Financing Order, in the event that any or all of

the provisions of this Interim Financing Order or any other DIP Loan Documents, including the

Final Financing Order, are hereafter modified, amended, or vacated by a subsequent order of this

or any other Bankruptcy Court, no such modification, amendment or vacation shall affect the validity, enforceability, or priority of any lien or claim authorized or created hereby or thereby or any DIP Facility Obligations incurred hereunder or thereunder.  Notwithstanding any such modification, amendment, or vacation, any DIP Facility Obligations incurred and any claim granted to the DIP Lender hereunder or under the other DIP Loan Documents, including the Final Financing Order, arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Interim Financing Order and the other DIP Loan Documents, including the Final Financing Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted herein and therein, with respect to any such DIP Facility Obligations.

(d)     The validity, enforceability, priority, or amount of any of the claims and liens granted to or for the benefit of the DIP Lender under this Interim Financing Order or any other DIP Loan Documents with respect to the DIP Facility Obligations shall not be affected by any finding or order of this Bankruptcy Court or any other court regarding any Pre-Petition Liens, including, without limitation, any order of this Bankruptcy Court or any other court invalidating any Prior Obligation or Pre-Petition Lien.

(e)     The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the other DIP Loan Documents or otherwise.  The failure or delay by (i) the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Financing Order or any other DIP Loan Documents, or (ii) the Investors to exercise their rights and remedies under this Interim Financing Order shall not constitute a waiver of any of the rights of the DIP Lender or the Investors hereunder, thereunder, or otherwise, and any single or partial exercise of such rights

and remedies against any party or Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other party and/or the Collateral.

(f)     This Interim Financing Order shall not prejudice or limit the Investors' right to request or seek other or additional protection with respect to the Pre-Petition Encumbered Assets.

(g)     Without limiting the other provisions of this Interim Financing Order, if an order dismissing this Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that:  (i) the claims and liens (and other protections) granted pursuant to this Interim Financing Order to or for the benefit of the DIP Lender shall continue in full force and effect and shall maintain their priorities as provided in this Interim Financing Order; (ii) at the request of the Lender, prior to dismissal, the Debtor shall deliver to the DIP Lender and record, at the Debtor's cost, financing statements, mortgages, and other documentation evidencing perfected liens in the Collateral; and (iii) this Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

20.     <u>Insurance Policies</u>.  Upon entry of this Interim Financing Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtor which in any way relates to the Collateral.  The Debtor is authorized and directed to take any action necessary to have the DIP Lender added as an additional insured and loss payee on each such insurance policy.

21.     <u>Conclusive Evidence of DIP Facility Obligations</u>.  The terms, conditions and covenants of the DIP Loan Documents shall be sufficient and conclusive evidence of the

borrowing and financing arrangements among the Debtor and the DIP Lender for all purposes, including, without limitation, the Debtor's obligation to pay all principal, interest, fees, if any, and other costs and expenses (including, without limitation, all reasonable fees and expenses of consultants, advisors and attorneys), as more fully set forth and to the extent provided in the DIP Loan Documents.

22. <u>Maintenance of Collateral</u>.  The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral, except for sales expressly permitted by the DIP Loan Documents and/or this Interim Financing Order.  Nothing contained in this paragraph shall limit or impair the right of any lessor or other contract party of the Debtor to request that the Bankruptcy Court compel the Debtor to assume or reject any lease or license of real or personal property.

23. <u>Collateral Rights</u>.  Until all of the DIP Facility Obligations shall have been satisfied in full pursuant to the terms of the Plan or otherwise indefeasibly paid and satisfied in full in immediately available funds and without further order of the Bankruptcy Court:

(a) In the event that any party who holds a lien or security interest in any of the Collateral that is junior and/or subordinate to the liens and claims of the DIP Lender in such Collateral receives or is paid proceeds of the Collateral prior to the effective date of the Plan or indefeasible payment and satisfaction in full of all DIP Facility Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, such Collateral proceeds in trust for the DIP Lender and shall immediately turn over to the DIP Lender such proceeds for application to the DIP Facility Obligations in accordance with the DIP Loan Documents and/or this Interim Financing Order;

(b)      Upon the acceleration of the DIP Facility Obligations following an Event of Default, and subject to the DIP Lender providing the notice required by this Interim Financing Order, in connection with a liquidation of any of the Collateral, the DIP Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the cost and expense of the Debtor to be added to the DIP Facility Obligations, to: (i) enter upon, occupy and use any personal property, fixtures and equipment owned or leased by the Debtor, and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtor, which are owned by or subject to a lien of any third party and which are used by the Debtor in its business.  If the DIP Lender exercises any remedies provided for in this paragraph, the DIP Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that the DIP Lender actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the DIP Lender actually occupies or uses such assets or properties); and

(c)      Upon the acceleration of the DIP Facility Obligations following an Event of Default, and subject to the DIP Lender providing the notice required by this Interim Financing Order, as well as two (2) business days' notice to any Debtor's real property lessor of the DIP Lender's intention to enter onto or into such lessor's leased premises to remove or otherwise dispose of any Collateral located at such leased premises in accordance with the terms of this paragraph, the DIP Lender shall have the right, following the expiration of such two (2) business days' notice period described in this paragraph, to enter onto or into such leased premises for the purpose of removing the Collateral from the leased premises or selling such Collateral at the leased premises, in each case subject to the applicable terms of such Debtor's lease arrangements

with such lessor to the extent enforceable or effective under the Bankruptcy Code and subject to the rights of the DIP Lender provided for herein.  Subject to the following sentence, the Debtor shall remain obligated to perform any obligation and to pay any rent and additional rent due under the terms of its leases at all times, including during the period commencing upon the DIP Lender obtaining the right to enter the Debtor's leased premises in accordance with this paragraph.  Nothing herein shall require the DIP Lender to assume any lease or cure any defaults as a condition to the rights afforded in this paragraph.

24.    <u>Restrictions on Additional Use of Cash Collateral, Additional Financing</u>. All post-petition Advances and other financial accommodations under the DIP Loan Documents are made in reliance on this Interim Financing Order and in the event that an order is entered at any time in this Case or in any subsequently converted case under Chapter 7 of the Bankruptcy Code (other than the Final Financing Order) which (a) authorizes the use of cash collateral of the Debtor in which the DIP Lender has an interest or the sale, lease, or other disposition of property of the Debtor's estate in which the DIP Lender has a lien or security interest, except as expressly permitted hereunder or in the DIP Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Lender herein; then, in each instance described in clauses (a) and (b) of this paragraph, (i) the DIP Lender shall first have given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lender, or (ii) such other order shall require that all DIP Facility Obligations first shall be indefeasibly paid in full in cash in immediately available funds.

The liens and security interests granted to or for the benefit of the DIP Lender hereunder and the rights of the DIP Lender pursuant to this Interim Financing Order and the DIP Loan Documents with respect to the DIP Facility Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtor.

25.    <u>Proofs of Claim</u>.  The DIP Lender shall not be required to file a proof of claim in this Case.  Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in this Case shall not apply to the DIP Lender.

26.    <u>No Obligation to Extend Credit</u>.  The DIP Lender shall not have any obligation to make any loan or Advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents and this Interim Financing Order or the Final Financing Order (as applicable) have been satisfied in full or waived by the DIP Lender in accordance with the DIP Loan Documents.

27.    <u>No Imposition of Liability</u>.  Nothing in this Interim Financing Order or the DIP Loan Documents shall in any way be construed or interpreted to impose, or allow the imposition upon the DIP Lender of any liability for any claims arising from the pre-petition or post-petition activities by the Debtor in the operation of its business or in connection with its restructuring efforts.

28.    <u>Termination of Postpetition Credit and Cash Collateral Usage</u>. Notwithstanding anything in this Interim Financing Order to the contrary, the DIP Lender's obligation to fund the DIP Facility in accordance with the DIP Loan Documents shall automatically terminate, without any further action by the Bankruptcy Court or the DIP Lender, upon the DIP Lender's written declaration of the occurrence of the Termination Date.

29.    <u>Good Faith</u>.  The terms of the financing arrangements among the Debtor

and the DIP Lender have been negotiated in good faith and at arms' length among the Debtor

and the DIP Lender and any loans, Advances or other financial accommodations which are made

or caused to be made to the Debtor by the DIP Lender pursuant to the DIP Loan Documents are

deemed to have been made and provided in good faith, as the term "good faith" is used in section

364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the

Bankruptcy Code in the event that this Interim Financing Order or the DIP Loan Documents or

any provisions are hereafter modified, vacated, amended, or stayed by subsequent order of this

Bankruptcy Court or any other court without the consent of the DIP Lender.

30.    <u>Binding Effect; Successors and Assigns</u>.  This Interim Financing Order is

hereby deemed effective immediately pursuant to Federal Bankruptcy Rules of Procedure

6004(h).  The provisions of this Interim Financing Order shall be binding upon and inure to the

benefit of the DIP Lender, the Investors and the Debtor and their respective successors and

assigns, including any Chapter 7 trustee or other trustee or fiduciary hereafter appointed as a

legal representative of the Debtor or with respect to the property of the estates of the Debtor in a

successor case.

31.    <u>Deadline for Entry of Final Financing Order</u>.  Pending the Final Hearing,

the Debtor's authorization to borrow under the DIP Loan Documents subject to and on the terms

and conditions of this Interim Financing Order shall terminate without any further order of this

Bankruptcy Court or action of any party at 5:00 p.m. Eastern Daylight time on the date that is

thirty (30) days after the Petition Date, unless the Debtor's right to borrow under the DIP Loan

Documents as provided herein has been previously terminated pursuant to the provisions of this

Interim Financing Order.  The termination of the Debtor's authorization to borrow under the DIP

Loan Documents shall not result in the termination of any of the other provisions of this Interim Financing Order.  If a Final Financing Order (the "Final Financing Order") approving the DIP Facility and DIP Loan Documents is not entered by 5:00 p.m. Eastern Daylight time on the date that is thirty (30) days after the Petition Date, all such extensions of credit together with accrued interest shall be immediately due and payable.

32.    Findings of Fact and Conclusions of Law.  This Interim Financing Order shall constitute findings of fact and conclusions of law.

33.    Notice.  The Debtor shall, on or before October 24, 2014, serve by United States mail, first class postage prepaid, copies of the Motion, this Interim Financing Order, and a notice of the Final Hearing (the "Final Hearing Notice") to be held on November _____, 2014, at _____ to consider entry of the Final Financing Order on the Interim Notice Parties.  Copies of the Motion, this Interim Financing Order and the Final Hearing Notice also shall be served upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by United States mail, first class postage prepaid.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the Final Financing Order shall file written objections with the Bankruptcy Court no later than 4:00 p.m. (prevailing Eastern Time) on _____, 2014, which objections shall be served so that the same are received on or before such date and time by:  (a) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, Wilmington, DE 19801, Attn: Robert J. Dehney, Esq., and Curtis S. Miller, Esq., proposed counsel to the Debtor; (b) Buchanan Ingersoll & Rooney, 301 Grant Street, One Oxford Centre, 20th Floor, Pittsburgh, PA 15219, Attn:  James D Newell, Esq., proposed special counsel to the Debtor; (c) the Office of the United States Trustee; and (d) Reed Smith LLP, 225 Fifth Avenue, Pittsburgh PA  15222, Attn: Paul M. Singer, Esq., and Luke A. Sizemore, Esq., counsel to the DIP Lender.

34.      <u>Conflict</u>.  Any conflict between the provisions of the DIP Loan
Documents and this Interim Financing Order shall be governed by the provisions of this Interim
Financing Order.

35.      <u>Scope of Order</u>.  The liens and priorities granted under this Interim
Financing Order shall apply to all use by the Debtor of the Pre-Petition Encumbered Assets and
all Advances of the DIP Facility on or after the Petition Date.

36.      <u>Reservation of Rights</u>.  Notwithstanding anything to the contrary set forth
herein, all rights of any statutory committee of unsecured creditors that may be subsequently
appointed in this Case to object to the entry of the proposed Final Financing Order, including
with respect to any of the findings of fact or conclusions of law sought to be set forth therein, are
hereby reserved.

Dated: _____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE

WILM 8607736

- 31 -

EXHIBIT A

<u>Summary of the Prior Obligations as of the Petition Date</u>

(Attached)

**Seegrid Corporation**
**Summary of Secured Debt**
**as of October 20, 2014**

| Lien Tranche | Date Funded | Giant Eagle, Inc. Principal | Interest | Total P + I | HERC Management Company Principal | Interest | Total P + I | Investor | Other Individual Investors Principal | Interest | Total P + I | Total P + I Per Lien Tranche |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 11/5/2012 | $ 2,180,000 | $ 345,893.33 | $ 2,525,893.33 | - | - | - | | - | - | - | |
| | 12/3/2012 | - | - | - | - | - | - | 1 | $ 20,000 | $ 3,048.89 | $ 23,048.89 | |
| | 12/26/2012 | - | - | - | - | - | - | 2 | $ 500,000 | $ 73,666.67 | $ 573,666.67 | |
| | 1/28/2013 | - | - | - | $ 600,000 | $ 84,000.00 | $ 684,000.00 | | - | - | - | |
| | 4/18/2013 | - | - | - | $ 200,000 | $ 24,444.44 | $ 224,444.44 | | - | - | - | |
| | 5/15/2013 | - | - | - | $ 50,000 | $ 5,811.11 | $ 55,811.11 | | - | - | - | |
| | 5/4/2013 | - | - | - | $ 200,000 | $ 23,244.44 | $ 223,244.44 | | - | - | - | |
| | 6/25/2013 | - | - | - | $ 50,000 | $ 5,355.56 | $ 55,355.56 | | - | - | - | |
| | 7/18/2013 | - | - | - | $ 25,000 | $ 2,550.00 | $ 27,550.00 | | - | - | - | |
| | 8/1/2013 | - | - | - | $ 25,000 | $ 2,472.22 | $ 27,472.22 | | - | - | - | |
| | 11/13/2013 | - | - | - | $ 377,614 | $ 28,614.75 | $ 406,228.75 | | - | - | - | |
| | 1/28/2013 | $ 150,000 | $ 21,000.00 | $ 171,000.00 | - | - | - | | - | - | - | |
| | 2/8/2013 | $ 250,000 | $ 34,388.89 | $ 284,388.89 | - | - | - | | - | - | - | Giant Eagle $ 12,196,502.46 82.84% |
| | 2/28/2013 | $ 600,000 | $ 79,866.67 | $ 679,866.67 | - | - | - | | - | - | - | HERC $ 1,704,106.53 11.58% |
| | 3/27/2013 | - | - | - | - | - | - | 3 | $ 50,000 | $ 6,355.56 | $ 56,355.56 | Other Investors $ 821,504.44 5.58% |
| | 3/27/2013 | - | - | - | - | - | - | 4 | $ 50,000 | $ 6,355.56 | $ 56,355.56 | Total $ 14,722,113.43 |
| | 4/23/2013 | - | - | - | - | - | - | 5 | $ 50,000 | $ 6,055.56 | $ 56,055.56 | |
| | 4/26/2013 | - | - | - | - | - | - | 6 | $ 50,000 | $ 6,022.22 | $ 56,022.22 | |
| | 5/15/2013 | $ 200,000 | $ 23,244.44 | $ 223,244.44 | - | - | - | | - | - | - | |
| | 5/31/2013 | $ 400,000 | $ 45,066.67 | $ 445,066.67 | - | - | - | | - | - | - | |
| | 6/21/2013 | $ 350,000 | $ 37,800.00 | $ 387,800.00 | - | - | - | | - | - | - | |
| | 7/10/2013 | $ 300,000 | $ 31,133.33 | $ 331,133.33 | - | - | - | | - | - | - | |
| | 7/26/2013 | $ 300,000 | $ 30,066.67 | $ 330,066.67 | - | - | - | | - | - | - | |
| | 8/5/2013 | $ 75,000 | $ 7,350.00 | $ 82,350.00 | - | - | - | | - | - | - | |
| | 11/13/2013 | $ 1,765,465 | $ 133,783.01 | $ 1,899,248.01 | - | - | - | | - | - | - | |
| | 1/21/2014 | $ 2,000,000 | $ 120,888.89 | $ 2,120,888.89 | - | - | - | | - | - | - | |
| | 3/19/2014 | $ 2,000,000 | $ 95,555.56 | $ 2,095,555.56 | - | - | - | | - | - | - | |
| | 5/23/2014 | $ 600,000 | $ 20,000.00 | $ 620,000.00 | - | - | - | | - | - | - | |
| 1 | 6/11/2014 | $ 400,000 | $ 11,644.44 | $ 411,644.44 | $ 100,000 | $ 2,911.11 | $ 102,911.11 | | - | - | - | Giant Eagle $ 1,361,078.22 92.97% |
| | 7/1/2014 | $ 350,000 | $ 8,633.33 | $ 358,633.33 | - | - | - | | - | - | - | HERC $ 102,911.11 7.03% |
| | 7/9/2014 | $ 440,000 | $ 10,071.11 | $ 450,071.11 | - | - | - | | - | - | - | Total $ 1,463,989.33 |
| | 7/23/2014 | $ 138,000 | $ 2,729.33 | $ 140,729.33 | - | - | - | | - | - | - | |
| 3 | 8/5/2014 | $ 275,000 | $ 4,644.44 | $ 279,644.44 | - | - | - | | - | - | - | |
| | 8/20/2014 | $ 251,000 | $ 3,402.44 | $ 254,402.44 | - | - | - | | - | - | - | Giant Eagle $ 1,661,110.44 100% |
| | 9/3/2014 | $ 698,000 | $ 7,290.22 | $ 705,290.22 | - | - | - | | - | - | - | |
| | 10/1/2014 | $ 420,000 | $ 1,773.33 | $ 421,773.33 | - | - | - | | - | - | - | |
| | Total | $ 14,142,465 | $ 1,076,226.13 | $ 15,218,691.13 | $ 1,627,614 | $ 179,403.64 | $ 1,807,017.64 | | $ 720,000 | $ 101,504.44 | $ 821,504.44 | $ 17,847,213.21 |

| | |
|---|---|
| Interest Rate | 8.00% |
| # Days Year | 360 |
| End Date | 10/20/2014 |