IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SEEGRID CORPORATION,<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 14-12391 (BLS)<br>)<br>) |

**RESPONSE IN OPPOSITION TO THE DEBTOR'S MOTION FOR AN ENTRY OF AN ORDER TO COMPEL THE HORBAL GROUP TO SEARCH FOR DOCUMENTS RESPONSIVE TO SEARCH TERMS**

Anthony Horbal, Michael Horbal, Apryle Anne Horbal, Donna Anderson Horbal, Screaming Eagle Air, Inc., Great American Health Plans, Inc., and HERC Management Services, LLC (collectively, the "Horbal Group"), creditors and parties-in-interest in Seegrid Corporation's (the "Debtor") above-captioned bankruptcy case (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), hereby respond in opposition to the Debtor's Motion for an Entry of an Order to Compel the Horbal Group to Search for Documents Responsive to Search Terms (the "Motion"), as follows:

I.

**PRELIMINARY STATEMENT**

1. In an effort to discredit the Horbal Group's Emergency Motion for Continuance, the Debtor files this Motion based on misrepresentations regarding the parties' discovery-related communications. Indeed, the Debtor's assertion that the Horbal Group did anything other than proceed in good faith with its discovery obligations is unfounded. The voluminous email communications between the parties that the Debtor attached to its Motion illustrates that reality. Moreover, the Debtor, who, incidentally has in its possession all of Mr. Horbal's

communications from his Seegrid email account, bears the burden of proof on its plan and solicitation. To argue that it would be prejudiced by not receiving documents from a plan objector is either: (1) a tacit admission that the plan has flaws that the Debtor hopes will remain concealed; or (2) a transparent ploy to gain the Court's sympathy.

2. The Debtor argues that the Motion is precipitated by the Horbal Group's refusal to search documents using eighteen "narrowly-tailored" search terms. The complete email correspondence between the parties, however, reveals that the Horbal Group opposed the specific terms at issue from the Debtor's initial request to use such terms on the grounds that they were overbroad and would create an undue burden specifically because they were not "narrowly-tailored." Accordingly, the Court should deny the Motion.

## II.

## FACTS

3. On October 21, 2014, the Debtor commenced its bankruptcy case by filing a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. At the First Day Hearing on October 22, 2014, the Horbal Group objected to the scheduling of the confirmation hearing on an expedited schedule on the basis that, among other things, the hearing would involve multiple questions of complex law and fact. The Debtor, however, insisted that the Court schedule the hearing on an expedited basis. As a result, the Court scheduled a confirmation hearing on the Debtor's plan on December 10, 2014.

4. Despite its objections to the expedited schedule, the Horbal Group agreed to proceed in good faith and negotiated with the Debtor on a proposed scheduling order (the "Draft Scheduling Order") that "backed into" discovery dates based on the confirmation hearing date.[1]

---

[1] The Draft Scheduling Order was never finalized and submitted to the Court.

Pursuant to the deadline in the Draft Scheduling Order, on the evening of Monday, October 27, the Debtor served document requests on the Horbal Group.[2] That night, the Horbal Group immediately began drafting a search term list that corresponded to the requests.

5. On Friday, October 30, 2014 at 8:45 p.m., however, the Debtor sent the Horbal Group search terms on which the Debtor proposed it should use to search for responsive documents ("Debtor's Terms") and search terms on which the Debtor proposed the Horbal Group use to search for responsive documents (the "HG Terms"). In order to avoid argument with the Debtor and proceed as quickly as possible, the Horbal Group, in good faith, decided to base its search terms off of the HG Terms rather than its own list.

6. On Saturday, November 1, 2014 at 10:10 a.m., the Horbal Group responded to the Debtor stating that it was reviewing the proposed terms and requested clarification regarding the time period for certain HG Terms.[3]

7. On Sunday, November 2, 2014, the Horbal Group sent the Debtor comments to the Debtor's Terms.[4]

8. On Monday, November 3, 2014, the Debtor responded to the Horbal Group's comments to the Debtor's Terms, which included the deletion of numerous terms proposed by the Horbal Group. The Debtor did not provide a hit report or reasoning regarding why it was deleting such terms.[5]

---

[2] The Debtor mistakenly asserts in the Motion that it served discovery requests on the Horbal Group on Friday October 24.

[3] *See* Email from Marcos Ramos to Matthew Clark, dated November 1, 2014, attached as Exhibit A.

[4] *See* Email from Marcos Ramos to Matthew Clark, dated November 2, 2014, attached as Exhibit B.

[5] *See* Email from Matthew Clark to Marcos Ramos, dated November 3, 2014, attached as Exhibit C.

9. On Tuesday, November 4, 2014, the Horbal Group circulated comments to the HG Terms and further comments to the Debtor's Terms.[6] With regard to the HG Terms, the Horbal Group eliminated terms that, based on a preliminary analysis of search term hits, were overbroad, not calculated to yield relevant documents, and duplicative (the "Contested Terms").[7] In particular, the Contested Terms resulted in an additional 13,535 document hits, on top of the over 15,000 documents the Horbal Group reviewed on the non-contested terms. Such additional documents would take an additional approximately five to six days to fully review and produce.[8] Furthermore, a review of a sampling of 100 document hits using the Contested Terms revealed only two documents were responsive. The Horbal Group advised the Debtor that it was available to confer regarding the terms after the Debtor's review of the comments.

10. Concurrent with these negotiations, the Horbal Group began reviewing documents based on the non-contested HG Terms.

11. On Thursday, November 6, the Debtor responded to the Horbal Group's comments to the HG Terms by merely adding back the Contested Terms to the search term list. The Debtor included no explanation regarding why it insisted that the Horbal Group must employ such terms.[9]

12. On Friday, November 7, the Horbal Group responded to the Debtor stating that it eliminated the Contested Terms because they are overbroad and not reasonably tailored to locate

---

[6] *See* Email from Marcos Ramos to Matthew Clark, dated November 4, 2014, attached as Exhibit D.

[7] *See id.*

[8] The Horbal Group initially advised the Debtor that the Contested Terms yielded 12,000 additional documents. The number of additional documents is actually 13,535.

[9] *See* Email from Matthew Clark to Marcos Ramos, dated November 6, 2014, attached as Exhibit E.

4

relevant, responsive information.[10] The Horbal Group requested that, if the Debtor wanted the Horbal Group to use such terms, that the Debtor propose terms that are more restrictive.[11]

13. Also on November 7, the Horbal Group filed an Emergency Motion to Continue the December 10, 2014 Hearing on the basis that there is not enough time on the current schedule to accommodate the development of the complex legal and fact issues that need to be developed in anticipation of the hearing.

14. On Saturday, November 8, the Debtor responded that the Horbal Group did not identify which of the Contested Terms were overbroad and requested that the Horbal Group provide a hit list for the terms at issue.[12]

15. On Sunday, November 9, pursuant to the Debtor's request the previous day, the Horbal Group produced a hit list report for the Contested Terms.[13] Pursuant to the Draft Scheduling Order, the parties were to have their productions substantially completed by Monday, November 10. As a result, the Horbal Group stated that, unless the Court continues the hearing date and accompanying schedule, the Horbal Group cannot review the over 13,535 document hits and produce any responsive documents pursuant to the current schedule. Based on its review of the Contested Terms and corresponding document hits, the Horbal Group again reiterated its objection that the Contested Terms are overly broad, unduly burdensome and not calculated to lead to the discovery of responsive documents.

16. On Monday, November 10, the Debtor responded to the Horbal Group's hit list stating that it disagrees that the documents yielded from the Contested Terms are overly

---

[10] *See* Email from Marcos Ramos to Matthew Clark, dated November 7, 2014, attached as Exhibit F.
[11] *See id.*
[12] *See* Email from Matthew Clark to Marcos Ramos, dated November 8, 2014, attached as Exhibit G.
[13] *See* Email from Robert Maddox to Matthew Clark, dated November 9, 2014, attached as Exhibit H.

5

burdensome. The Debtor stated that the Horbal Group's failure to provide a hit report for over 10 days is "unacceptable" and "cannot justify" the Horbal Group's failure to abide by the schedule of the parties. Apparently, the Debtor takes the position that when first objecting to the Contested Terms on November 4, the Horbal Group should have provided a hit report as a basis for its objection. As stated above, however, when the Debtor objected on November 3 to the Horbal Group's inclusion of certain terms in the Debtor's Terms, the Debtor did not provide a hit report or any reasoning behind its decision to eliminate terms.[14]

17. Later on the evening of November 10, the Horbal Group responded to the Debtor stating that, as of November 4, the Debtor knew that the Horbal Group disputed the Contested Terms and provided a further explanation for why certain terms were overbroad. In addition, the Horbal Group reminded the Debtor that the Horbal Group provided a hit list of the Contested Terms one day after requested by the Debtor.

18. On Wednesday, November 12, the Debtor asked counsel for the Horbal Group whether there was any need to confer further regarding the Contested Terms. Counsel for the Horbal Group informed counsel for the Debtor that if the Debtor was not going to respond to the Horbal Group's request for the Debtor to propose more restrictive terms, then there did not seem to be a basis for further conferral between the parties.

19. On Friday, November 14, the Debtor filed this Motion and requested that the Court conduct the argument on Tuesday, November 18 when it hears argument for the Horbal Group's Emergency Motion to Continue the December 10, 2014 Hearing.

---

[14] *See supra* note 5.

## III.

## ARGUMENT

### A. The Applicable Legal Standard

20. The scope of permissible discovery is well known. Only discovery that is relevant to a party's claims or defenses, and "reasonably calculated to lead to the discovery of admissible evidence," is permitted under the applicable Federal Rules.[15] A court, however, must "limit the ... extent of discovery otherwise allowed by the rules if it finds that the burden or expense of the proposed discovery outweighs its likely benefit."[16] Where a general search term yields overbroad results with limited relevance, "the burden and expense associated with such an open-ended search cannot be justified in light of the limited relevance of such documents."[17]

21. It is a debtor's burden to demonstrate to the Court why the information it seeks is relevant to its claims or defenses.[18] Furthermore, discovery may be limited where the discovery sought is unreasonably cumulative or duplicative.[19]

22. A debtor's argument that a party's search protocols were inadequate because of a conclusory or speculative assertion that documents should exist that have not been produced is insufficient to sustain a motion to compel.[20]

---

[15] *See* FED. R. BANKR. P. 7026; FED. R. CIV. P. 26(b)(1).

[16] *Medicis Pharm. Corp. v. Actavis Mid Atl. LLC*, 282 F.R.D. 395, 396-97 (D. Del. 2012) (quoting FED. R. CIV. P. 26(b)(2)(C)).

[17] *Id.* at 398.

[18] *See Alexander v. FBI*, 186 F.R.D. 154, 159 (D.D.C. 1999) (holding that "the proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."); *Trader v. Fiat Distribs., Inc.*, No. 76-249, 1981 U.S. Dist. LEXIS 17802 at *5 (D. Del. Jan. 16, 1981) (denying motion to compel because plaintiffs had "not met their burden of showing the relevancy" of the requested information).

[19] *See* FED. R. BANKR. P. 7026; FED. R. CIV. P. 26(b)(2)(c); *see also Johnson v. Geico Cas. Co.*, 269 F.R.D. 406, 415 (D. Del. 2010).

[20] *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 427 (D. N.J. 2009) ("The notion that a document production is insufficient based on a belief that documents must exist simply is not enough to

7

23. Developing appropriate search terms is critical to limiting unnecessary expense and increasing the efficiency of the judicial process. Some factors that have been considered in determining if a set of search terms are reasonable include: (1) the scope of documents searched and whether the search is restricted to specific computers, file systems, or document custodians; (2) any date restrictions imposed on the search; (3) whether the search terms contain proper names, uncommon abbreviations, or other terms unlikely to occur in irrelevant documents; (4) whether operators such as "and", "not", or "near" are used to restrict the universe of possible results; (5) whether the number of results obtained could be practically reviewed given the economics of the case and the amount of money at issue."[21] As that Court noted, "[T]he interests of justice and basic fairness are little served by forcing Plaintiff to undertake an enormously expensive privilege review of material that is unlikely to contain non-duplicative evidence."[22]

### B. The Horbal Group Timely Negotiated In Good Faith To Resolve The Search Term Issue With The Debtor.

24. The Debtor argues that the Horbal Group failed to work cooperatively to negotiate an agreement regarding how to conduct electronic discovery. This argument is misleading and disingenuous. As illustrated by the parties' communications on this issue detailed above, all of which were via email, the Debtor knew on November 4, 2014 – four days after proposing the Contested Terms – that the Horbal Group objected to such terms.

25. Furthermore, the Debtor's argument that the Horbal Group failed to timely provide a basis for its objection is simply false. There is no dispute that the Debtor knew on

---

grant a motion to compel that would require Ford to go back to square one and begin its document collection efforts anew."); *see also Langbord v. U.S. Dep't of the Treasury*, No. 06 Civ. 5315, 2008 U.S. Dist. LEXIS 85533, at 22 (E.D. Pa. 2008) (discovery not permitted where assertion that discovery sought contained relevant information was "purely speculative").

[21] *I-Med Pharma Inc. v. Biomatrix, Inc.*, No. CIV. 03-3677 DRD, 2011 WL 6140658, at *6 (D.N.J. Dec. 9, 2011).

[22] *Id.*

8

November 4, 2014, that the Horbal Group was not proposing to run the Contested Terms. By its November 4, 2014 email, therefore, the Horbal Group timely advised the Debtor that the Contested Terms were not going to be used by the Horbal Group.

26. In addition, the Debtor cannot reasonably complain that the Horbal Group conveyed its response on the Contested Terms via email because the parties only conferred by email and not by telephone with regards to search terms. Moreover, the Debtor's argument that the Horbal Group did not provide an individual hit list on November 4 is not reasonable because not only did the Debtor not ask for one but the Debtor also failed to provide an individual hit list to the Horbal Group when the Debtor rejected certain terms proposed by the Horbal Group on the Debtor's Terms. When the Debtor did ask for an individualized hit list, the Horbal Group provided it to the Debtor the next day, even though the Debtor's request was first made on a Saturday. Accordingly, the timeline clearly illustrates that the Horbal Group promptly responded to the Debtor's requests and continuously offered to negotiate on the issues.

C. **The Horbal Group Has A Valid Basis For Objecting To The Terms At Issue.**

27. The Debtor argues that the Horbal Group has no basis to object to the Contested Terms because such terms are targeted at specific, unopposed production requests, which will return 12,000 unique documents.[23] This argument is without merit for three reasons.

28. *First*, the Horbal Group properly objected to the Contested Terms on the basis that they were overbroad, unduly burdensome and not tailored to yield responsive documents. Indeed, a review of a sampling of 100 documents yielded only two responsive documents. Furthermore, despite the Horbal Group's repeated requests to discuss the issue, the Debtor never negotiated the Contested Terms on a term-by-term basis to reach an agreement. Instead, the

---

[23] As stated above, the Horbal Group initially advised the Debtor that the Contested Terms would yield 12,000 additional document hits. The number of additional document hits is actually 13,535.

9

Debtor insisted that the Horbal Group use *all* of the Contested Terms in its search for potentially responsive documents.

29. *Second*, the fact that the Horbal Group does not oppose a particular production request does not require the Horbal Group to utilize overbroad search terms to search for documents responsive to such request. Furthermore, the law does not require the Horbal Group to conduct a review of documents from searches that it believes will yield little, if any, relevant documents, regardless of the number of document hits.[24] Indeed, the expense and time associated with such exercises, especially in the context of an expedited matter, is not justified in light of the limited relevance of the documents.

30. *Finally*, the Debtor's arguments regarding why the Horbal Group should have used particular search terms is misleading. For example, the Debtor argues that the Horbal Group failed to search for relevant bankruptcy-related documents using the term: "chapter /5 (11 or 7)." The Debtor fails to advise the Court, however, that the Horbal Group used the terms "chapter 11" and "chapter 7," which the Horbal Group believed were tailored to yield more responsive documents.

31. In addition, the Debtor contends that the Horbal Group should have used the term "marketing" to search for documents relating Mr. Horbal's recommendation to hire a sales and marketing executive who worked with one of the Debtor's competitors, Kiva Systems. The Debtor fails to inform the Court, however, that the Horbal Group instead used the terms "marketing executive" or "Kiva" to search for such documents on the basis that those terms are more tailored to yield responsive documents.

---

[24] *McNabb v. City of Overland Park*, 2014 WL 1493124, at *2 (D. Kan. April 16, 2014) (search terms overbroad even if they could produce arguably relevant ESI) ; *Cotton v. Costco Wholesale Corp.*, 2013 WL 3819974, at *2 (D. Kan. July 24, 2013) (same).

32. Furthermore, the Horbal Group objected to using the general term "company" in conjunction with various broad business-related terms, including "buy," "minutes," "director!" or "sales" on the basis that such terms yielded a disproportionally high number of document hits. Instead, the Horbal Group used the terms "Seegrid" and "SG," the two terms Mr. Horbal uses to refer to the Debtor, with the various broad business-related terms to search for relevant documents.

33. Moreover, the Horbal Group objected to broadly searching the terms "Seegrid" and "SG" on the basis that such terms were overbroad on their own and should be coupled with terms relating to issues relating to the plan or the Bankruptcy Case.

34. The Horbal Group further objected to using "(consulting or management) w/5 agreement" on the basis that such term seeks documents relating to an agreement routinely referred to by Mr. Horbal and his agents as the "management agreement" or the "consulting agreement." Thus, the Horbal Group used the terms "consulting agreement" and "management agreement" to find potentially responsive documents.

35. Finally, the Horbal Group eliminated the term "Series A" because it used other terms such as "term w/3 sheet" and "Newco" to search for documents relating to the term sheets Giant Eagle circulated in the Summer of 2014.

36. Accordingly, the Horbal Group properly objected to the Contested Terms and, therefore, the Court should deny the Motion.

D. **The Court Should Deny The Debtor's Request For An Adverse Inference And Cost Shifting.**

37. The Debtor also requests that the Court impose an adverse inference against the Horbal Group if the Horbal Group "cannot, or will not, comply with an order to search for

11

RLF1 11107399v.1

documents" responsive to the Contested Terms.[25] The Court should summarily dismiss the Debtor's request for at least two reasons. *First*, the Debtor does not specify the basis for, or nature of, the adverse inference. Specifically, the Debtor does not detail the nature of the inference and on what specific ground such inference would be justified. The Horbal Group rejected the Contested Terms because they were overbroad. According to the Debtor, then, an adverse inference is appropriate merely because one party disagreed with another party as to search terms. There is no support for such a position and the Debtor provides no support for one.

38. *Second*, adverse inferences are such a significant remedy that they are reserved for the most serious of circumstances where the party seeking such a sanction has demonstrated bad faith.[26] The Debtor has made no such showing here. In fact, the Debtor does not even assert that the Horbal Group acted in bad faith or violated Local Rule 7026-3, nor could it. The Debtor's own exhibits illustrate that the Horbal Group attempted to negotiate the applicable search terms with the Debtor in good faith. Additionally, the citation provided by the Debtor to support its request, *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983), addresses spoliation or the intentional suppression of evidence, not a situation like here where parties merely disagree about the application of search terms.

39. Likewise, the Debtor overstates the court's holding in *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 110 F.R.D. 363, 368 (D. Del. 1986), which addressed a request for a default judgment after a party willfully disobeyed an order of the court requiring the production

---

[25] *See* Motion to Compel ¶ 27.

[26] *Lytle v. Capital Area Intermediate Unit*, 2009 WL 1658519, at *12 (M.D. Pa. June 11, 2009) aff'd, 393 F. App'x 955 (3d Cir. 2010) (denying request and noting that nothing in the record suggesting that defendants acted in bad faith.); *W. Equities, Ltd. v. Hanseatic, Ltd.*, 956 F. Supp. 1232, 1238 (D.V.I. 1997) ("Drawing such an inference against a non-producing party is only proper when the non-production was done in bad faith"); *Muzzleman v. Nat'l Rail Passenger Corp.*, 839 F. Supp. 1094, 1098 (D. Del. 1993) (noting a bad faith finding of actual suppression of evidence required to merit adverse inference).

of certain information.[27] Of course, violation of a court order was the condition, which supported the request for an adverse inference in that case, and no such order exists here. Moreover, even with a violation of court order, that court stated that a history of dilatoriness is most relevant with respect to Rule 37(b) motions predicated on failure to comply with a discovery schedule.[28] The Debtor has established no such history here. Accordingly, in addition to the other reasons stated above, the Debtor has not justified the imposition of an adverse inference.

40. The Debtor also asks the Court to impose expenses including attorney's fees on the Horbal Group under Federal Rules 37(b)(2) and (c)(1) for "the Horbal Group's failure to comply with its discovery obligations under the Agreed Schedule."[29] This request should be denied. First, it is unclear how either rule is applicable to the Debtor's motion. Rule 37(b)(2) addresses the imposition of sanctions when a party has failed to obey an order of the court to permit discovery. No such order has been entered in this action. Likewise, Rule 37(c)(1) addresses a party's failure to disclose the identity of a witness or supplement its disclosures under Rule 26(a) or (e). The Debtor's Motion, however, does not include any allegations relating to non-disclosure of witnesses or failure to provide additional information under Rule 26(a) or (e).

41. Even if Rule 37(b)(2) and (c)(1) were applicable, the Debtor's request would fail. The imposition of costs and expenses for discovery-related motions is reserved for situations in which the party opposing discovery does not have a substantial justification and the circumstances would make an award of expenses just.[30] Courts define substantial justification as

---

[27] *Id.* at 366.

[28] *Id.* at 373.

[29] *See* Motion to Compel ¶ 27.

[30] *See* FED. R. CIV. P. 37(b)(2)(C), (c)(1); *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 141 (3d Cir. 2009) ("Rule 37(c)(1) ... expressly includes the 'substantial justification' standard").

13

"justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."[31] The test of substantial justification is satisfied if there is a genuine dispute concerning compliance.[32]

42. Here, the Debtor asks for expenses and attorney's fees caused by the "Horbal Group's failure to comply with its discovery obligations under the [Draft Scheduling Order]." As an initial matter, it is unclear what obligations the Horbal Group has under the Draft Scheduling Order, because the parties never finalized or executed a scheduling order nor did the Court ever consider or enter one. Notwithstanding that fact, the Debtor has not demonstrated that the Horbal Group failed to comply with any of the deadlines established under the Draft Scheduling Order. Indeed, the Debtor cannot, because (as demonstrated above) the Horbal Group negotiated the relevant search terms in good faith and substantially complied with the deadlines established under the Draft Scheduling Order. The Horbal Group rejected the Contested Terms and made that determination in good faith. Accordingly, an award of expenses would not be just.

43. The Horbal Group reserves its right to address the Court on the merits of the Emergency Motion and the objections thereto at the hearing on the Emergency Motion.

---

[31] *United States v. Dentsply Intern., Inc.*, No., 2000 WL 654378, *7 (D.Del. May 10, 2000).

[32] *Tolerico v. Home Depot*, 205 F.R.D. 169, 175-76 (M.D. Pa. 2002).

14

IV.

**PRAYER**

WHEREFORE, the Horbal Group respectfully requests that the Court deny the Motion.

Dated: November 18, 2014
Wilmington, Delaware

/s/ _____
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Cory D. Kandestin (No. 5025)
Robert C. Maddox (No. 5356)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Patrick J. Neligan, Jr.
Seymour Roberts, Jr.
NELIGAN FOLEY LLP
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

-and-

William A. Brewer III
Catherine Pastrikos
BICKEL & BREWER
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 489-2384

COUNSEL FOR THE HORBAL GROUP