## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SEEGRID CORPORATION,[1] | Case No. 14-12391 (BLS) |
| Debtor. | |

### AFFIDAVIT OF SERVICE

| | |
|---|---|
| STATE OF NEW JERSEY | ) |
| | ) ss. |
| COUNTY OF ESSEX | ) |

I, Kathleen M. Logan, hereby certify:

1.  I am of legal age and I am not a party to this action.

2.  I am President of Logan & Company, Inc., located at 546 Valley Road, Upper Montclair, New Jersey, Balloting Agent for the above-captioned Debtor.

3.  On October 3, 2014 I caused copies of the following:

    - **Debtor's Solicitation Letter**;

    - **Ballot and Voting Instructions for Classes 1-A, 1-B, 1-C, 1-D or 2-A** (as appropriate to each noteholder respectively);

    - **Offer Notice; Election Form; Annex A –Term Sheet; Annex B – Risk Factors; Annex C – Pro-Forma Balance Sheet**;

    - **pre-addressed return envelope**; and

    - **Disclosure Statement for Prepackaged Plan of Reorganization of Seegrid Corporation Pursuant to Chapter 11 of the United States Bankruptcy Code; Exhibit A – Prepackaged Plan of Reorganization; Exhibit B – Feasibility Analysis; Exhibit C – Liquidation Analysis** [Dkt. No. 10 and 11]

    to be served via overnight mail, postage-prepaid upon the parties listed on the Service List attached hereto as Exhibit A. The Debtor's Solicitation Letter, Ballot and Voting Instructions, Offer Notice, Election Form and Annex A to C are attached hereto as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NOT

Kathleen M. Logan

Sworn to before me this
16th day of December 2014

Notary Public

SYLWIA GRABOWSKI
Commission # 2447225
Notary Public, State of New Jersey
My Commission Expires
June 17, 2019

---

[1]  The last four digits of the Debtor's tax payer identification number are: 1133. The Debtor's address is 216 Park West Drive, Pittsburgh, PA 15275.

EXHIBIT A
SERVICE LIST

EXHIBIT A SERVICE LIST

**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Classes 1-A, 1-B, 1-C, 1-D and 2-A]**

**DEBTOR: SEEGRID CORPORATION**                                              **CASE NO: 14-12391  (BLS)**

| | | |
|---|---|---|
| Creditor ID: 299-21<br>AVRUM GOLDBERG<br>2501 WISCONSIN AVENUE, N.W., #308<br>WASHINGTON DC 20007 | Creditor ID: 110-98<br>BERNARD MARCUS<br>ONE OXFORD CENTRE, 35TH FLOOR<br>301 GRANT STREET<br>PITTSBURGH PA 15219 | Creditor ID: 110-98<br>BERNARD MARCUS<br>ONE OXFORD CENTRE, 35TH FLOOR<br>301 GRANT STREET<br>PITTSBURGH PA 15219 |
| Creditor ID: 111-98<br>DANIEL SHAPIRA<br>ONE OXFORD CENTRE, 35TH FLOOR<br>301 GRANT STREET<br>PITTSBURGH PA 15219 | Creditor ID: 111-98<br>DANIEL SHAPIRA<br>ONE OXFORD CENTRE, 35TH FLOOR<br>301 GRANT STREET<br>PITTSBURGH PA 15219 | Creditor ID: 313-98<br>DAVID KALSON<br>1974 BEECHWOOD BLVD.<br>PITTSBURGH PA 15217 |
| Creditor ID: 501-98<br>DAVID SHAPIRA<br>101 KAPPA DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 309-98<br>DEBORAH SHAPIRA<br>245 WEST 99TH STREET, #8B<br>NEW YORK NY 10025 | Creditor ID: 11-90<br>GIANT EAGLE, INC.<br>C/O GENERAL COUNSEL<br>101 KAPPA DRIVE<br>PITTSBURGH PA 15238 |
| Creditor ID: 11-90<br>GIANT EAGLE, INC.<br>C/O GENERAL COUNSEL<br>101 KAPPA DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 11-90<br>GIANT EAGLE, INC.<br>C/O GENERAL COUNSEL<br>101 KAPPA DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 11-90<br>GIANT EAGLE, INC.<br>C/O GENERAL COUNSEL<br>101 KAPPA DRIVE<br>PITTSBURGH PA 15238 |
| Creditor ID: 11-90<br>GIANT EAGLE, INC.<br>C/O GENERAL COUNSEL<br>101 KAPPA DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 109-20<br>HERC MANAGEMENT SERVICES, LLC<br>LEGAL/CFO<br>101 S FT LAUDERDALE BEACH BLVD<br>STE 2203<br>FORT LAUDERDALE FL 33316 | Creditor ID: 109-20<br>HERC MANAGEMENT SERVICES, LLC<br>LEGAL/CFO<br>101 S FT LAUDERDALE BEACH BLVD<br>STE 2203<br>FORT LAUDERDALE FL 33316 |
| Creditor ID: 109-20<br>HERC MANAGEMENT SERVICES, LLC<br>LEGAL/CFO<br>101 S FT LAUDERDALE BEACH BLVD<br>STE 2203<br>FORT LAUDERDALE FL 33316 | Creditor ID: 312-98<br>JAMES ROSENBLOOM<br>138 SPRINGHOUSE LANE<br>PITTSBURGH PA 15238 | Creditor ID: 178-98<br>JOHN LUCOT<br>1783 DOMINION DRIVE<br>PITTSBURGH PA 15241 |
| Creditor ID: 311-98<br>LARRY BALDAUF<br>4108 KENNEDY DRIVE<br>BUTLER PA 16001 | Creditor ID: 314-90<br>LAURA SHAPIRA KARET<br>101 KAPPA DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 190-97<br>MARK J. MINNAUGH<br>3219 ORCHARD DRIVE<br>ALLISON PARK PA 15101 |
| Creditor ID: 310-98<br>NORMAN WEISENBAUM<br>220 N. BELLEFIELD AVENUE, APT. 1104<br>PITTSBURGH PA 15213 | Creditor ID: 308-97<br>RICHARD NIMTZ<br>1233 N GULFSTREAM AVENUE, #1401<br>SARASOTA FL 34236 | Creditor ID: 303-98<br>RICK COHEN<br>C&S WHOLESALE GROCERS<br>7 CORPORATE DRIVE<br>KEENE NH 03431 |
| Creditor ID: 317-24<br>RICK RUSSELL<br>6524 DALZELL PLACE<br>PITTSBURGH PA 15217 | Creditor ID: 62-98<br>SHAUN K. DONNELLAN<br>1250 W SOUTHWINDS BLVD, APT 118<br>VERO BEACH FL 32963 | Creditor ID: 315-98<br>SYLVAN HOLSER<br>545 MIRANDA DRIVE<br>PITTSBURGH PA 15241 |

**EXHIBIT A SERVICE LIST**

**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Classes 1-A, 1-B, 1-C, 1-D and 2-A]**

**DEBTOR: SEEGRID CORPORATION**                                                    **CASE NO: 14-12391  (BLS)**

Creditor ID: 318-24
THOMAS BUCHANAN
619 WEST WALDHEIM ROAD
PITTSBURGH PA 15215

Creditor ID: 316-98
WALTER BASHAW
273 VEELYNN DRIVE
PITTSBURGH PA 15222

Creditor ID: 300-21
WILLIAM ROBINSON
REED SMITH
225 FIFTH AVENUE
PITTSBURGH  PA 15222

**Total:   30**

EXHIBIT B
DOCUMENTS

SEE_AC_AD_AE_AF_AG



David Heilman
President
c/o Seegrid Corporation
216 Parkwest Drive
Pittsburgh, PA  15275

To: Parties Entitled to Vote on the Enclosed
    Prepackaged Plan of Reorganization for
    Seegrid Corporation

October 3, 2014

Dear Recipient:

Enclosed, you will find a Plan of Reorganization, Disclosure Statement and other important materials, including a Ballot, much of which Seegrid Corporation intends to file in the United States Bankruptcy Court in the next few weeks.  **Seegrid encourages you to thoroughly review all enclosed materials**.

As described in the enclosed materials, Seegrid Corporation needs sufficient votes in favor of its proposed Plan of Reorganization in order to confirm its Plan and make the distributions set forth in the Plan.  If you do not vote, there is a chance that the Plan may not be confirmed.

Currently, the Plan proposes that each holder of an Allowed Other General Unsecured Claim (which includes, among others, trade vendors and is designated as Class 2-B in the Plan) shall receive (i) Cash on the Effective Date equal to 50% of its Allowed Claim and (ii) a promissory note issued by Seegrid Sub in the principal amount of the remaining balance of its Allowed Claim.  The promissory note shall be payable on the first anniversary of the Effective Date.  In the alternative, each holder of an Other General Unsecured Claim may elect to receive 75% of such Allowed Claim on the Effective Date by electing to receive such treatment on the enclosed Ballot and returning it in accordance with the instructions.  **In either event, Seegrid must receive sufficient votes accepting the Plan to provide such payments.**

Confirmation requires sufficient votes in favor of the Plan, as set forth in the enclosed materials.  Seegrid Corporation cannot assure that unsecured creditors will receive any recovery on account of their claims if Seegrid does not receive sufficient votes ACCEPTING the Plan pursuant to the enclosed Ballot and instructions.

Sincerely,

David Heilman
President of Seegrid Corporation

Enclosures.

SEEGRID
216 Parkwest Drive
Pittsburgh, PA 15275
+1.412.379.4500
www.seegrid.com

**IMPORTANT: A CHAPTER 11 CASE HAS NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT. THIS BALLOT IS A PREPETITION SOLICITATION OF YOUR VOTE ON A PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. THE VOTING DEADLINE IS OCTOBER 17, 2014 AT 5:00 P.M. (PREVAILING EASTERN TIME)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SEEGRID CORPORATION, | Case No. 14-_____-_____ |
| Debtor. | |

**BALLOT FOR ACCEPTING OR REJECTING PREPACKAGED**
**PLAN OF REORGANIZATION OF SEEGRID CORPORATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**
**CLASS 1-A – First Priority Secured June 11 Noteholder Claims**

This is a ballot to vote to accept or reject Prepackaged Plan of Reorganization of Seegrid Corporation (the "Debtor") under Chapter 11 of the Bankruptcy Code (the "Plan").[1] If you have a claim in more than one Class entitled to vote, you will receive additional ballot(s) on which to cast your vote. If you have more than one claim in the same Class, you must vote all claims within that class the same way.

**PLEASE READ THIS ENTIRE BALLOT BEFORE COMPLETING.**
**PLEASE COMPLETE, DATE, AND SIGN THIS BALLOT AND RETURN IT TO THE BALLOTING AGENT (AS DEFINED BELOW) BY EITHER:**
**(I) ELECTRONIC MAIL TO <u>SEEGRID@LOGANANDCO.COM</u>; OR**
**(II) FACSIMILE TO 973-509-1131; OR**
**(III) IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE TO LOGAN & COMPANY, INC.**
**ATTN: SEEGRID BALLOTING DEPARTMENT**
**546 VALLEY ROAD, 2ND FLOOR**
**UPPER MONTCLAIR, NJ  07043**

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE BALLOTING AGENT (AS DEFINED BELOW) ON OR BEFORE OCTOBER 17, 2014 AT 5:00 P.M., PREVAILING EASTERN TIME**

**PLEASE READ THE FOLLOWING AND THE ENCLOSED VOTING INSTRUCTIONS BEFORE COMPLETING YOUR BALLOT**

This Ballot is submitted to you to solicit your vote to accept the Plan, which is described in the disclosure statement in support of the Plan, dated October 3, 2014 (the "Disclosure Statement"). A copy of the Plan is attached as **Exhibit A** to the Disclosure Statement. The Plan may be confirmed by the United States Bankruptcy Court for the District of Delaware and thereby made binding upon you. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. A copy of the Disclosure Statement is included with this Ballot.

---

[1] Capitalized terms not otherwise defined are defined in the Plan.

Please complete, sign and date this Ballot and return it to Logan & Company, Inc. (the "Balloting Agent") as indicated above.  **If your Ballot is not ACTUALLY RECEIVED by 5:00 p.m., prevailing Eastern time, on October 17, 2014, it will not be counted.**

**By singing this Ballot, you make the following certifications:**

- "I have received or obtained a copy of the Disclosure Statement and the exhibits thereto, including the Plan."

- "I understand that, if this Ballot is validly executed and returned without checking a box to ACCEPT or REJECT, this Ballot will not be counted."

- "I have the full power and authority to vote to accept or reject the Plan on behalf of the claimant listed herein."

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-third in amount and more than one-half in number of the allowed claims in each class voting on the Plan.  In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it and otherwise satisfies the requirements of Section 1129 of the Bankruptcy Code.  **To have your vote count, you must complete and return this Ballot so that it is actually received by the Balloting Agent by 5:00 p.m. prevailing Eastern time on or before October 17, 2014.  Unsigned Ballots will not be counted.**

This Ballot is for voting purposes only and does not constitute and shall not be deemed a proof of claim or interest or an admission by the Debtor of the validity of a claim or interest.

<u>**HOW TO VOTE**</u> (FOR FURTHER DETAIL, SEE ENCLOSED VOTING INSTRUCTIONS)

<u>REVIEW ITEM 1</u>. WHICH SETS OUT THE AMOUNT AND CLASSIFICATION OF YOUR CLAIM FOR VOTING PURPOSES.

<u>COMPLETE ITEM 2</u>.  ANY BALLOT THAT DOES NOT INDICATE ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.

<u>REVIEW ITEM 3</u>.

<u>SIGN THE BALLOT</u>.  ONLY EXECUTED BALLOTS WILL BE COUNTED.

<u>RETURN THE BALLOT</u> BY ELECTRONIC MAIL, FACSIMILE, OR IN THE PRE-ADDRESSED, POSTAGE-PAID ENVELOPE.  THE BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY OCTOBER 17, 2014 AT 5:00 P.M. (ET).  LATE BALLOTS WILL NOT BE COUNTED.

**IF YOU HAVE ANY QUESTIONS CONCERNING THE DISCLOSURE STATEMENT, THE PLAN, THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF ANY ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT AT 973-509-3190.**

## **BALLOT**

**Item 1:  Voting Classification and Amount.**  As of the record date of September 24, 2014 the undersigned is a holder of a Class 1-A – First Priority Secured June 11 Noteholder Claims (as defined in the Plan) against the Debtor in the following amount for voting purposes:   $

**Item 2:  Vote.**  The undersigned votes the above listed Class 1-A Claim to (check one box):

☐  Accept the Plan          ☐  Reject the Plan

**Item 3:  Acknowledgments and Certification.**  By signing this Ballot, the undersigned acknowledges that the undersigned has been provided a copy of the Disclosure Statement, including all exhibits thereto.  The undersigned certifies that (i) it is the holder of the claim identified on this Ballot and (ii) it has full power and authority to vote to accept or reject the Plan.

Name of Creditor:_____
(Print or Type)

By:_____
(Signature of Creditor or Authorized Person)

Print Name of Signatory:_____

Title:_____
(If Applicable)

Street Address:_____
(City, State and Zip Code)

Telephone Number:_____

Social Security or Federal Tax I.D. No._____

Date Completed:_____

**VOTING INSTRUCTIONS FOR THE PREPACKAGED PLAN OF REORGANIZATION OF SEEGRID CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The enclosed Ballot is submitted to you to solicit your vote to accept or reject the Prepackaged Plan of Reorganization of Seegrid Corporation (the "Debtor") Under Chapter 11 of the Bankruptcy Code (the "Plan") that is described in the Disclosure Statement for Prepackaged Plan of Reorganization of Seegrid Corporation Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement"), a copy of which is also enclosed. All capitalized terms not defined in these instructions or in the Ballot are defined in the Plan or the Disclosure Statement, as the case may be.

PLEASE READ THESE VOTING INSTRUCTIONS, THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THE BALLOT. YOU SHOULD REVIEW THE PLAN AND DISCLOSURE STATEMENT BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM(S) UNDER THE PLAN. NEITHER THE DEBTOR, THE DEBTOR'S COUNSEL, NOR THE BALLOTING AGENT CAN GIVE YOU SUCH LEGAL ADVICE.

### Voting and Non-Voting Classes

As set forth in the Plan and Disclosure Statement:

Classes 3 and 4 (the "Non-Voting Classes") are unimpaired and therefore are not entitled to vote on the Plan.

Classes 1-A – First Priority Secured June 11 Noteholders, 1-B First Priority Secured Bridge Noteholders, 1-C Second Priority Secured Noteholders, 1-D Third Priority Secured Bridge Noteholders, 2-A Noteholder General Unsecured, and 2-B Other General Unsecured are impaired and will receive or retain property under the Plan, and therefore, are entitled to vote on the Plan (collectively, the "Voting Classes").

### Voting Procedures

The Debtor is providing Solicitation Packages containing, among other things, copies of the Plan, Disclosure Statement and Ballots to all record holders of claims entitled to vote in the Voting Classes as of September 24, 2014 (the "Record Date").

Ballots may be returned to Logan & Company, Inc. (the "Balloting Agent") by:

(I) ELECTRONIC MAIL TO SEEGRID@LOGANANDCO.COM; OR

(II) FACSIMILE TO 973-509-1131; OR

(III) IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE TO:

LOGAN & COMPANY, INC.
ATTN: SEEGRID BALLOTING DEPARTMENT
546 VALLEY ROAD, 2ND FLOOR
UPPER MONTCLAIR, NJ 07043

If no return envelope for your Ballot has been provided with the Solicitation Package, please send your Ballot to the Balloting Agent at:

LOGAN & COMPANY, INC.
ATTN: SEEGRID BALLOTING DEPARTMENT
546 VALLEY ROAD, 2ND FLOOR
UPPER MONTCLAIR, NJ  07043

With respect to holders of claims in Voting Classes:

Holders of claims in Voting Classes can vote by completing the Ballot, singing it and returning it to the Balloting Agent so that it is actually received by the Balloting Agent on or before October 17, 2014 at 5:00 p.m. (prevailing Eastern time) (the "Voting Deadline").

In order to be counted, your ballot must be actually received by the Voting Deadline.

The Ballot is not a letter of transmittal or a proof of claim and may not be used for any other purpose than to transmit your vote to accept or reject the Plan.

**Tabulation Procedures for All Voting Classes**

Your claim or interest has been temporarily allowed solely for purposes of voting to accept or reject the Plan in accordance with the following Tabulation Rules to be presented to the Bankruptcy Court for approval:

    (a)    Unless otherwise provided in these Tabulation Rules, a claim will be deemed temporarily allowed for voting purposes only in an amount equal to the amount of such claim as set forth in the Debtor's books and records on the Record Date.

    (b)    If a holder of a claim identifies a claim amount in its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot.

The following additional procedures have also been approved by the Court to be utilized in tabulating the Ballots with respect to Ballots submitted by a holder of a claim or interest:

    (a)    Except to the extent the Debtor otherwise determines, in accordance with these Tabulation Procedures, or as permitted by the Court, any Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the Debtor's request for confirmation of the Plan unless the Debtor extends the Voting Deadline.

    (b)    Any Ballot which is otherwise properly completed, executed, and timely returned that does not indicate an acceptance or rejection of the Plan will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(c)    Any Ballot that is returned indicating acceptance or rejection of the Plan, but which is unsigned will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(d)    Whenever a Claimholder casts more than one properly executed Ballot voting the same claim or interest prior to the Voting Deadline, only the last Ballot timely received will be deemed to reflect the voter's intent and will thus supersede any prior Ballots.

(e)    If a Claimholder casts duplicative Ballots which are voted inconsistently and are received simultaneously by the Balloting Agent, those Ballots will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(f)    Each Claimholder shall be deemed to have voted the full amount of its claim or interest as set forth on the Ballot.

(g)    Claimholders shall not split their vote within a claim; thus, each Claimholder shall vote its entire claim within a particular class either to accept or reject the Plan.

(h)    Ballots partially rejecting and partially accepting the Plan will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(i)    The method of delivery of Ballots to the Balloting Agent is at the risk of each Claimholder, and such delivery will be deemed made only when the Ballot is actually received by the Balloting Agent.

(j)    The Debtor expressly reserves the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code). If the Debtor makes material changes in the terms of the Plan, the Debtor will disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Court.

(k)    If a Ballot is signed by a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or other person acting in a fiduciary or representative capacity on behalf of a Claimholder, such person shall be required to indicate such capacity when signing and, at the Debtor's discretion, must submit proper evidence satisfactory to the Debtor to so act on behalf of the Claimholder.

(l)    The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtor may, in its sole discretion, reject such Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan.

(m)    In the event a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise.

(n)    Any Claimholder who has delivered a valid Ballot voting on the Plan may withdraw such vote prior to the Voting Deadline with the consent of the Debtor and in accordance with Bankruptcy Rule 3018(a).

(o)    Subject to any contrary order of the Court, Ballots not proper in form will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(p)    Unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtor (or the Court) determines, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

(q)    Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have theretofore not been cured or waived) will not be counted.

(r)    Subject to any contrary order of the Court, the Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot unless otherwise directed by the Court.

(s)    For purposes of determining whether the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code have been satisfied, the Balloting Agent will tabulate only those Ballots received prior to the Voting Deadline.

**Questions**

If you have any questions regarding your Ballot or these Voting Instructions, please call **(973) 509-3190**.

**IMPORTANT: A CHAPTER 11 CASE HAS NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT. THIS BALLOT IS A PREPETITION SOLICITATION OF YOUR VOTE ON A PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. THE VOTING DEADLINE IS OCTOBER 17. 2014 AT 5:00 P.M. (PREVAILING EASTERN TIME)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SEEGRID CORPORATION, | Case No. 14-_____-_____ |
| Debtor. | |

**BALLOT FOR ACCEPTING OR REJECTING PREPACKAGED**
**PLAN OF REORGANIZATION OF SEEGRID CORPORATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**
**CLASS 1-B – First Priority Secured Bridge Noteholder Claims**

This is a ballot to vote to accept or reject Prepackaged Plan of Reorganization of Seegrid Corporation (the "Debtor") under Chapter 11 of the Bankruptcy Code (the "Plan").[1] If you have a claim in more than one Class entitled to vote, you will receive additional ballot(s) on which to cast your vote. If you have more than one claim in the same Class, you must vote all claims within that class the same way.

**PLEASE READ THIS ENTIRE BALLOT BEFORE COMPLETING.**
**PLEASE COMPLETE, DATE, AND SIGN THIS BALLOT AND RETURN IT TO THE BALLOTING AGENT (AS DEFINED BELOW) BY EITHER:**
**(I) ELECTRONIC MAIL TO <u>SEEGRID@LOGANANDCO.COM</u>; OR**
**(II) FACSIMILE TO 973-509-1131; OR**
**(III) IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE TO LOGAN & COMPANY, INC.**
**ATTN: SEEGRID BALLOTING DEPARTMENT**
**546 VALLEY ROAD, 2ND FLOOR**
**UPPER MONTCLAIR, NJ  07043**

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE BALLOTING AGENT (AS DEFINED BELOW) ON OR BEFORE OCTOBER 17, 2014 AT 5:00 P.M., PREVAILING EASTERN TIME**

**PLEASE READ THE FOLLOWING AND THE ENCLOSED VOTING INSTRUCTIONS BEFORE COMPLETING YOUR BALLOT**

This Ballot is submitted to you to solicit your vote to accept the Plan, which is described in the disclosure statement in support of the Plan, dated October 3, 2014 (the "Disclosure Statement"). A copy of the Plan is attached as **Exhibit A** to the Disclosure Statement. The Plan may be confirmed by the United States Bankruptcy Court for the District of Delaware and thereby made binding upon you. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. A copy of the Disclosure Statement is included with this Ballot.

---

[1] Capitalized terms not otherwise defined are defined in the Plan.

Please complete, sign and date this Ballot and return it to Logan & Company, Inc. (the "Balloting Agent") as indicated above. **If your Ballot is not ACTUALLY RECEIVED by 5:00 p.m., prevailing Eastern time, on October 17, 2014, it will not be counted.**

**By singing this Ballot, you make the following certifications:**

- "I have received or obtained a copy of the Disclosure Statement and the exhibits thereto, including the Plan."

- "I understand that, if this Ballot is validly executed and returned without checking a box to ACCEPT or REJECT, this Ballot will not be counted."

- "I have the full power and authority to vote to accept or reject the Plan on behalf of the claimant listed herein."

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-third in amount and more than one-half in number of the allowed claims in each class voting on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it and otherwise satisfies the requirements of Section 1129 of the Bankruptcy Code. **To have your vote count, you must complete and return this Ballot so that it is actually received by the Balloting Agent by 5:00 p.m. prevailing Eastern time on or before October 17, 2014. Unsigned Ballots will not be counted.**

This Ballot is for voting purposes only and does not constitute and shall not be deemed a proof of claim or interest or an admission by the Debtor of the validity of a claim or interest.

_____

__HOW TO VOTE__ (FOR FURTHER DETAIL, SEE ENCLOSED VOTING INSTRUCTIONS)

REVIEW ITEM 1. WHICH SETS OUT THE AMOUNT AND CLASSIFICATION OF YOUR CLAIM FOR VOTING PURPOSES.

COMPLETE ITEM 2. ANY BALLOT THAT DOES NOT INDICATE ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.

REVIEW ITEM 3.

SIGN THE BALLOT. ONLY EXECUTED BALLOTS WILL BE COUNTED.

RETURN THE BALLOT BY ELECTRONIC MAIL, FACSIMILE, OR IN THE PRE-ADDRESSED, POSTAGE-PAID ENVELOPE. THE BALLOT MUST BE ACTUALLY RECEIVED BY THE BALLOTING AGENT BY OCTOBER 17, 2014 AT 5:00 P.M. (ET). LATE BALLOTS WILL NOT BE COUNTED.
_____

**IF YOU HAVE ANY QUESTIONS CONCERNING THE DISCLOSURE STATEMENT, THE PLAN, THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF ANY ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT AT 973-509-3190.**

## BALLOT

**Item 1:  Voting Classification and Amount.**  As of the record date of September 24, 2014 the undersigned is a holder of a Class 1-B – First Priority Secured Bridge Noteholder Claims (as defined in the Plan) against the Debtor in the following amount for voting purposes:  $

**Item 2:  Vote.**  The undersigned votes the above listed Class 1-B Claim to (check one box):

☐  Accept the Plan              ☐  Reject the Plan

**Item 3:  Acknowledgments and Certification.**  By signing this Ballot, the undersigned acknowledges that the undersigned has been provided a copy of the Disclosure Statement, including all exhibits thereto.  The undersigned certifies that (i) it is the holder of the claim identified on this Ballot and (ii) it has full power and authority to vote to accept or reject the Plan.

Name of Creditor:_____
(Print or Type)

By:_____
(Signature of Creditor or Authorized Person)

Print Name of Signatory:_____

Title:_____
(If Applicable)

Street Address:_____
(City, State and Zip Code)

Telephone Number:_____

Social Security or Federal Tax I.D. No._____

Date Completed:_____

**VOTING INSTRUCTIONS FOR THE PREPACKAGED PLAN OF REORGANIZATION OF SEEGRID CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The enclosed Ballot is submitted to you to solicit your vote to accept or reject the Prepackaged Plan of Reorganization of Seegrid Corporation (the "Debtor") Under Chapter 11 of the Bankruptcy Code (the "Plan") that is described in the Disclosure Statement for Prepackaged Plan of Reorganization of Seegrid Corporation Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement"), a copy of which is also enclosed. All capitalized terms not defined in these instructions or in the Ballot are defined in the Plan or the Disclosure Statement, as the case may be.

PLEASE READ THESE VOTING INSTRUCTIONS, THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THE BALLOT. YOU SHOULD REVIEW THE PLAN AND DISCLOSURE STATEMENT BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM(S) UNDER THE PLAN. NEITHER THE DEBTOR, THE DEBTOR'S COUNSEL, NOR THE BALLOTING AGENT CAN GIVE YOU SUCH LEGAL ADVICE.

### Voting and Non-Voting Classes

As set forth in the Plan and Disclosure Statement:

Classes 3 and 4 (the "Non-Voting Classes") are unimpaired and therefore are not entitled to vote on the Plan.

Classes 1-A – First Priority Secured June 11 Noteholders, 1-B First Priority Secured Bridge Noteholders, 1-C Second Priority Secured Noteholders, 1-D Third Priority Secured Bridge Noteholders, 2-A Noteholder General Unsecured, and 2-B Other General Unsecured are impaired and will receive or retain property under the Plan, and therefore, are entitled to vote on the Plan (collectively, the "Voting Classes").

### Voting Procedures

The Debtor is providing Solicitation Packages containing, among other things, copies of the Plan, Disclosure Statement and Ballots to all record holders of claims entitled to vote in the Voting Classes as of September 24, 2014 (the "Record Date").

Ballots may be returned to Logan & Company, Inc. (the "Balloting Agent") by:

(I) ELECTRONIC MAIL TO SEEGRID@LOGANANDCO.COM; OR

(II) FACSIMILE TO 973-509-1131; OR

(III) IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE TO:

LOGAN & COMPANY, INC.
ATTN: SEEGRID BALLOTING DEPARTMENT
546 VALLEY ROAD, 2ND FLOOR
UPPER MONTCLAIR, NJ 07043

If no return envelope for your Ballot has been provided with the Solicitation Package, please send your Ballot to the Balloting Agent at:

LOGAN & COMPANY, INC.<br>
ATTN: SEEGRID BALLOTING DEPARTMENT<br>
546 VALLEY ROAD, 2ND FLOOR<br>
UPPER MONTCLAIR, NJ  07043

<u>With respect to holders of claims in Voting Classes</u>:

Holders of claims in Voting Classes can vote by completing the Ballot, singing it and returning it to the Balloting Agent so that it is actually received by the Balloting Agent on or before October 17, 2014 at 5:00 p.m. (prevailing Eastern time) (the "<u>Voting Deadline</u>").

In order to be counted, your ballot must be actually received by the Voting Deadline.

The Ballot is not a letter of transmittal or a proof of claim and may not be used for any other purpose than to transmit your vote to accept or reject the Plan.

<strong>Tabulation Procedures for All Voting Classes</strong>

Your claim or interest has been temporarily allowed solely for purposes of voting to accept or reject the Plan in accordance with the following Tabulation Rules to be presented to the Bankruptcy Court for approval:

(a) <u>Unless otherwise provided in these Tabulation Rules</u>, a claim will be deemed temporarily allowed for voting purposes only in an amount equal to the amount of such claim as set forth in the Debtor's books and records on the Record Date.

(b) If a holder of a claim identifies a claim amount in its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot.

The following additional procedures have also been approved by the Court to be utilized in tabulating the Ballots with respect to Ballots submitted by a holder of a claim or interest:

(a) Except to the extent the Debtor otherwise determines, in accordance with these Tabulation Procedures, or as permitted by the Court, any Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the Debtor's request for confirmation of the Plan unless the Debtor extends the Voting Deadline.

(b) Any Ballot which is otherwise properly completed, executed, and timely returned that does not indicate an acceptance or rejection of the Plan will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(c)     Any Ballot that is returned indicating acceptance or rejection of the Plan, but which is unsigned will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(d)     Whenever a Claimholder casts more than one properly executed Ballot voting the same claim or interest prior to the Voting Deadline, only the last Ballot timely received will be deemed to reflect the voter's intent and will thus supersede any prior Ballots.

(e)     If a Claimholder casts duplicative Ballots which are voted inconsistently and are received simultaneously by the Balloting Agent, those Ballots will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(f)     Each Claimholder shall be deemed to have voted the full amount of its claim or interest as set forth on the Ballot.

(g)     Claimholders shall not split their vote within a claim; thus, each Claimholder shall vote its entire claim within a particular class either to accept or reject the Plan.

(h)     Ballots partially rejecting and partially accepting the Plan will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(i)     The method of delivery of Ballots to the Balloting Agent is at the risk of each Claimholder, and such delivery will be deemed made only when the Ballot is actually received by the Balloting Agent.

(j)     The Debtor expressly reserves the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code). If the Debtor makes material changes in the terms of the Plan, the Debtor will disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Court.

(k)     If a Ballot is signed by a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or other person acting in a fiduciary or representative capacity on behalf of a Claimholder, such person shall be required to indicate such capacity when signing and, at the Debtor's discretion, must submit proper evidence satisfactory to the Debtor to so act on behalf of the Claimholder.

(l)     The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtor may, in its sole discretion, reject such Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan.

(m)    In the event a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise.

(n)    Any Claimholder who has delivered a valid Ballot voting on the Plan may withdraw such vote prior to the Voting Deadline with the consent of the Debtor and in accordance with Bankruptcy Rule 3018(a).

(o)    Subject to any contrary order of the Court, Ballots not proper in form will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(p)    Unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtor (or the Court) determines, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

(q)    Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have theretofore not been cured or waived) will not be counted.

(r)    Subject to any contrary order of the Court, the Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot unless otherwise directed by the Court.

(s)    For purposes of determining whether the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code have been satisfied, the Balloting Agent will tabulate only those Ballots received prior to the Voting Deadline.

## **Questions**

If you have any questions regarding your Ballot or these Voting Instructions, please call **(973) 509-3190**.

**IMPORTANT: A CHAPTER 11 CASE HAS NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT.  THIS BALLOT IS A PREPETITION SOLICITATION OF YOUR VOTE ON A PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE.  THE VOTING DEADLINE IS OCTOBER 17, 2014 AT 5:00 P.M. (PREVAILING EASTERN TIME)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SEEGRID CORPORATION, | Case No. 14-_____-_____ |
| Debtor. | |

**BALLOT FOR ACCEPTING OR REJECTING PREPACKAGED PLAN OF REORGANIZATION OF SEEGRID CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE CLASS 1-C – Second Priority Secured Noteholder Claims**

This is a ballot to vote to accept or reject Prepackaged Plan of Reorganization of Seegrid Corporation (the "Debtor") under Chapter 11 of the Bankruptcy Code (the "Plan").[1]  If you have a claim in more than one Class entitled to vote, you will receive additional ballot(s) on which to cast your vote.  If you have more than one claim in the same Class, you must vote all claims within that class the same way.

> **PLEASE READ THIS ENTIRE BALLOT BEFORE COMPLETING.**
> **PLEASE COMPLETE, DATE, AND SIGN THIS BALLOT AND RETURN IT TO THE BALLOTING AGENT (AS DEFINED BELOW) BY EITHER:**
> **(I) ELECTRONIC MAIL TO SEEGRID@LOGANANDCO.COM; OR**
> **(II) FACSIMILE TO 973-509-1131; OR**
> **(III) IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE TO LOGAN & COMPANY, INC.**
> **ATTN: SEEGRID BALLOTING DEPARTMENT**
> **546 VALLEY ROAD, 2ND FLOOR**
> **UPPER MONTCLAIR, NJ  07043**
>
> **THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE BALLOTING AGENT (AS DEFINED BELOW) ON OR BEFORE OCTOBER 17, 2014 AT 5:00 P.M., PREVAILING EASTERN TIME**

**PLEASE READ THE FOLLOWING AND THE ENCLOSED VOTING INSTRUCTIONS BEFORE COMPLETING YOUR BALLOT**

This Ballot is submitted to you to solicit your vote to accept the Plan, which is described in the disclosure statement in support of the Plan, dated October 3, 2014 (the "Disclosure Statement").  A copy of the Plan is attached as **Exhibit A** to the Disclosure Statement.  The Plan may be confirmed by the United States Bankruptcy Court for the District of Delaware and thereby made binding upon you.  The

---

[1] Capitalized terms not otherwise defined are defined in the Plan.

Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. A copy of the Disclosure Statement is included with this Ballot.

Please complete, sign and date this Ballot and return it to Logan & Company, Inc. (the "Balloting Agent") as indicated above. **If your Ballot is not ACTUALLY RECEIVED by 5:00 p.m., prevailing Eastern time, on October 17, 2014, it will not be counted.**

**By singing this Ballot, you make the following certifications:**

- "I have received or obtained a copy of the Disclosure Statement and the exhibits thereto, including the Plan."

- "I understand that, if this Ballot is validly executed and returned without checking a box to ACCEPT or REJECT, this Ballot will not be counted."

- "I have the full power and authority to vote to accept or reject the Plan on behalf of the claimant listed herein."

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-third in amount and more than one-half in number of the allowed claims in each class voting on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it and otherwise satisfies the requirements of Section 1129 of the Bankruptcy Code. **To have your vote count, you must complete and return this Ballot so that it is actually received by the Balloting Agent by 5:00 p.m. prevailing Eastern time on or before October 17, 2014. Unsigned Ballots will not be counted.**

This Ballot is for voting purposes only and does not constitute and shall not be deemed a proof of claim or interest or an admission by the Debtor of the validity of a claim or interest.

**HOW TO VOTE** (FOR FURTHER DETAIL, SEE ENCLOSED VOTING INSTRUCTIONS)

REVIEW ITEM 1. WHICH SETS OUT THE AMOUNT AND CLASSIFICATION OF YOUR CLAIM FOR VOTING PURPOSES.

COMPLETE ITEM 2. ANY BALLOT THAT DOES NOT INDICATE ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.

REVIEW ITEM 3.

SIGN THE BALLOT. ONLY EXECUTED BALLOTS WILL BE COUNTED.

RETURN THE BALLOT BY ELECTRONIC MAIL, FACSIMILE, OR IN THE PRE-ADDRESSED, POSTAGE-PAID ENVELOPE. THE BALLOT MUST BE ACTUALLY RECEIVED BY THE BALLOTING AGENT BY OCTOBER 17, 2014 AT 5:00 P.M. (ET). LATE BALLOTS WILL NOT BE COUNTED

**IF YOU HAVE ANY QUESTIONS CONCERNING THE DISCLOSURE STATEMENT, THE PLAN, THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF ANY ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT AT 973-509-3190.**

## BALLOT

**Item 1:  Voting Classification and Amount.**  As of the record date of September 24, 2014 the undersigned is a holder of a Class 1-C – Second Priority Secured Noteholder Claims (as defined in the Plan) against the Debtor in the following amount for voting purposes:   $

**Item 2:  Vote.**  The undersigned votes the above listed Class 1-C Claim to (check one box):

☐ Accept the Plan          ☐ Reject the Plan

**Item 3:  Acknowledgments and Certification.**  By signing this Ballot, the undersigned acknowledges that the undersigned has been provided a copy of the Disclosure Statement, including all exhibits thereto.  The undersigned certifies that (i) it is the holder of the claim identified on this Ballot and (ii) it has full power and authority to vote to accept or reject the Plan.

Name of Creditor:_____
(Print or Type)

By:_____
(Signature of Creditor or Authorized Person)

Print Name of Signatory:_____

Title:_____
(If Applicable)

Street Address:_____
(City, State and Zip Code)

Telephone Number:_____

Social Security or Federal Tax I.D. No._____

Date Completed:_____

**VOTING INSTRUCTIONS FOR THE PREPACKAGED PLAN OF REORGANIZATION OF SEEGRID CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The enclosed Ballot is submitted to you to solicit your vote to accept or reject the Prepackaged Plan of Reorganization of Seegrid Corporation (the "Debtor") Under Chapter 11 of the Bankruptcy Code (the "Plan") that is described in the Disclosure Statement for Prepackaged Plan of Reorganization of Seegrid Corporation Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement"), a copy of which is also enclosed. All capitalized terms not defined in these instructions or in the Ballot are defined in the Plan or the Disclosure Statement, as the case may be.

PLEASE READ THESE VOTING INSTRUCTIONS, THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THE BALLOT. YOU SHOULD REVIEW THE PLAN AND DISCLOSURE STATEMENT BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM(S) UNDER THE PLAN. NEITHER THE DEBTOR, THE DEBTOR'S COUNSEL, NOR THE BALLOTING AGENT CAN GIVE YOU SUCH LEGAL ADVICE.

### Voting and Non-Voting Classes

As set forth in the Plan and Disclosure Statement:

Classes 3 and 4 (the "Non-Voting Classes") are unimpaired and therefore are not entitled to vote on the Plan.

Classes 1-A – First Priority Secured June 11 Noteholders, 1-B First Priority Secured Bridge Noteholders, 1-C Second Priority Secured Noteholders, 1-D Third Priority Secured Bridge Noteholders, 2-A Noteholder General Unsecured, and 2-B Other General Unsecured are impaired and will receive or retain property under the Plan, and therefore, are entitled to vote on the Plan (collectively, the "Voting Classes").

### Voting Procedures

The Debtor is providing Solicitation Packages containing, among other things, copies of the Plan, Disclosure Statement and Ballots to all record holders of claims entitled to vote in the Voting Classes as of September 24, 2014 (the "Record Date").

Ballots may be returned to Logan & Company, Inc. (the "Balloting Agent") by:

(I) ELECTRONIC MAIL TO SEEGRID@LOGANANDCO.COM; OR

(II) FACSIMILE TO 973-509-1131; OR

(III) IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE TO:

LOGAN & COMPANY, INC.
ATTN: SEEGRID BALLOTING DEPARTMENT
546 VALLEY ROAD, 2ND FLOOR
UPPER MONTCLAIR, NJ  07043

If no return envelope for your Ballot has been provided with the Solicitation Package, please send your Ballot to the Balloting Agent at:

LOGAN & COMPANY, INC.
ATTN: SEEGRID BALLOTING DEPARTMENT
546 VALLEY ROAD, 2ND FLOOR
UPPER MONTCLAIR, NJ  07043

With respect to holders of claims in Voting Classes:

Holders of claims in Voting Classes can vote by completing the Ballot, singing it and returning it to the Balloting Agent so that it is actually received by the Balloting Agent on or before October 17, 2014 at 5:00 p.m. (prevailing Eastern time) (the "Voting Deadline").

In order to be counted, your ballot must be actually received by the Voting Deadline.

The Ballot is not a letter of transmittal or a proof of claim and may not be used for any other purpose than to transmit your vote to accept or reject the Plan.

## Tabulation Procedures for All Voting Classes

Your claim or interest has been temporarily allowed solely for purposes of voting to accept or reject the Plan in accordance with the following Tabulation Rules to be presented to the Bankruptcy Court for approval:

(a)     Unless otherwise provided in these Tabulation Rules, a claim will be deemed temporarily allowed for voting purposes only in an amount equal to the amount of such claim as set forth in the Debtor's books and records on the Record Date.

(b)     If a holder of a claim identifies a claim amount in its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot.

The following additional procedures have also been approved by the Court to be utilized in tabulating the Ballots with respect to Ballots submitted by a holder of a claim or interest:

(a)     Except to the extent the Debtor otherwise determines, in accordance with these Tabulation Procedures, or as permitted by the Court, any Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the Debtor's request for confirmation of the Plan unless the Debtor extends the Voting Deadline.

(b)     Any Ballot which is otherwise properly completed, executed, and timely returned that does not indicate an acceptance or rejection of the Plan will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(c)     Any Ballot that is returned indicating acceptance or rejection of the Plan, but which is unsigned will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(d)     Whenever a Claimholder casts more than one properly executed Ballot voting the same claim or interest prior to the Voting Deadline, only the last Ballot timely received will be deemed to reflect the voter's intent and will thus supersede any prior Ballots.

(e)     If a Claimholder casts duplicative Ballots which are voted inconsistently and are received simultaneously by the Balloting Agent, those Ballots will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(f)     Each Claimholder shall be deemed to have voted the full amount of its claim or interest as set forth on the Ballot.

(g)     Claimholders shall not split their vote within a claim; thus, each Claimholder shall vote its entire claim within a particular class either to accept or reject the Plan.

(h)     Ballots partially rejecting and partially accepting the Plan will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(i)     The method of delivery of Ballots to the Balloting Agent is at the risk of each Claimholder, and such delivery will be deemed made only when the Ballot is actually received by the Balloting Agent.

(j)     The Debtor expressly reserves the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code). If the Debtor makes material changes in the terms of the Plan, the Debtor will disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Court.

(k)     If a Ballot is signed by a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or other person acting in a fiduciary or representative capacity on behalf of a Claimholder, such person shall be required to indicate such capacity when signing and, at the Debtor's discretion, must submit proper evidence satisfactory to the Debtor to so act on behalf of the Claimholder.

(l)     The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtor may, in its sole discretion, reject such Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan.

(m)    In the event a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise.

(n)    Any Claimholder who has delivered a valid Ballot voting on the Plan may withdraw such vote prior to the Voting Deadline with the consent of the Debtor and in accordance with Bankruptcy Rule 3018(a).

(o)    Subject to any contrary order of the Court, Ballots not proper in form will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(p)    Unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtor (or the Court) determines, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

(q)    Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have theretofore not been cured or waived) will not be counted.

(r)    Subject to any contrary order of the Court, the Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot unless otherwise directed by the Court.

(s)    For purposes of determining whether the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code have been satisfied, the Balloting Agent will tabulate only those Ballots received prior to the Voting Deadline.

## **Questions**

If you have any questions regarding your Ballot or these Voting Instructions, please call **(973) 509-3190**.

**IMPORTANT: A CHAPTER 11 CASE HAS NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT. THIS BALLOT IS A PREPETITION SOLICITATION OF YOUR VOTE ON A PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. THE VOTING DEADLINE IS OCTOBER 17, 2014 AT 5:00 P.M. (PREVAILING EASTERN TIME)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SEEGRID CORPORATION, | Case No. 14-_____-_____ |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING PREPACKAGED PLAN OF REORGANIZATION OF SEEGRID CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE
### CLASS 1-D – Third Priority Secured Bridge Noteholder Claims

This is a ballot to vote to accept or reject Prepackaged Plan of Reorganization of Seegrid Corporation (the "Debtor") under Chapter 11 of the Bankruptcy Code (the "Plan").[1]  If you have a claim in more than one Class entitled to vote, you will receive additional ballot(s) on which to cast your vote.  If you have more than one claim in the same Class, you must vote all claims within that class the same way.

**PLEASE READ THIS ENTIRE BALLOT BEFORE COMPLETING.
PLEASE COMPLETE, DATE, AND SIGN THIS BALLOT AND RETURN IT TO THE BALLOTING AGENT (AS DEFINED BELOW) BY EITHER:
(I) ELECTRONIC MAIL TO SEEGRID@LOGANANDCO.COM; OR
(II) FACSIMILE TO 973-509-1131; OR
(III) IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE TO
LOGAN & COMPANY, INC.
ATTN: SEEGRID BALLOTING DEPARTMENT
546 VALLEY ROAD, 2ND FLOOR
UPPER MONTCLAIR, NJ  07043**

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE BALLOTING AGENT (AS DEFINED BELOW) ON OR BEFORE OCTOBER 17, 2014 AT 5:00 P.M., PREVAILING EASTERN TIME**

**PLEASE READ THE FOLLOWING AND THE ENCLOSED VOTING INSTRUCTIONS BEFORE COMPLETING YOUR BALLOT**

This Ballot is submitted to you to solicit your vote to accept the Plan, which is described in the disclosure statement in support of the Plan, dated October 3, 2014 (the "Disclosure Statement").  A copy of the Plan is attached as **Exhibit A** to the Disclosure Statement.  The Plan may be confirmed by the United States Bankruptcy Court for the District of Delaware and thereby made binding upon you.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  A copy of the Disclosure Statement is included with this Ballot.

---

[1] Capitalized terms not otherwise defined are defined in the Plan.

Please complete, sign and date this Ballot and return it to Logan & Company, Inc. (the "Balloting Agent") as indicated above.  **If your Ballot is not ACTUALLY RECEIVED by 5:00 p.m., prevailing Eastern time, on October 17, 2014, it will not be counted.**

**By singing this Ballot, you make the following certifications:**

- "I have received or obtained a copy of the Disclosure Statement and the exhibits thereto, including the Plan."

- "I understand that, if this Ballot is validly executed and returned without checking a box to ACCEPT or REJECT, this Ballot will not be counted."

- "I have the full power and authority to vote to accept or reject the Plan on behalf of the claimant listed herein."

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-third in amount and more than one-half in number of the allowed claims in each class voting on the Plan.  In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it and otherwise satisfies the requirements of Section 1129 of the Bankruptcy Code.  **To have your vote count, you must complete and return this Ballot so that it is actually received by the Balloting Agent by 5:00 p.m. prevailing Eastern time on or before October 17, 2014.  Unsigned Ballots will not be counted.**

This Ballot is for voting purposes only and does not constitute and shall not be deemed a proof of claim or interest or an admission by the Debtor of the validity of a claim or interest.

<u>**HOW TO VOTE**</u> (FOR FURTHER DETAIL, SEE ENCLOSED VOTING INSTRUCTIONS)

<u>REVIEW ITEM 1</u>. WHICH SETS OUT THE AMOUNT AND CLASSIFICATION OF YOUR CLAIM FOR VOTING PURPOSES.

<u>COMPLETE ITEM 2</u>.  ANY BALLOT THAT DOES NOT INDICATE ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.

<u>REVIEW ITEM 3</u>.

<u>SIGN THE BALLOT</u>.  ONLY EXECUTED BALLOTS WILL BE COUNTED.

<u>RETURN THE BALLOT</u> BY ELECTRONIC MAIL, FACSIMILE, OR IN THE PRE-ADDRESSED, POSTAGE-PAID ENVELOPE.  THE BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY OCTOBER 17, 2014 AT 5:00 P.M. (ET).  LATE BALLOTS WILL NOT BE COUNTED

**IF YOU HAVE ANY QUESTIONS CONCERNING THE DISCLOSURE STATEMENT, THE PLAN, THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF ANY ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT AT 973-509-3190.**

## BALLOT

**Item 1:  Voting Classification and Amount.**  As of the record date of September 24, 2014 the undersigned is a holder of a Class 1-D Third Priority Secured Bridge Noteholder Claims (as defined in the Plan) against the Debtor in the following amount for voting purposes:   $

**Item 2:  Vote.**  The undersigned votes the above listed Class 1-D Claim to (check one box):

☐ Accept the Plan          ☐ Reject the Plan

**Item 3:  Acknowledgments and Certification.**  By signing this Ballot, the undersigned acknowledges that the undersigned has been provided a copy of the Disclosure Statement, including all exhibits thereto.  The undersigned certifies that (i) it is the holder of the claim identified on this Ballot and (ii) it has full power and authority to vote to accept or reject the Plan.

Name of Creditor:_____
(Print or Type)

By:_____
(Signature of Creditor or Authorized Person)

Print Name of Signatory:_____

Title:_____
(If Applicable)

Street Address:_____
(City, State and Zip Code)

Telephone Number:_____

Social Security or Federal Tax I.D. No._____

Date Completed:_____

**VOTING INSTRUCTIONS FOR THE PREPACKAGED PLAN OF REORGANIZATION OF SEEGRID CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The enclosed Ballot is submitted to you to solicit your vote to accept or reject the Prepackaged Plan of Reorganization of Seegrid Corporation (the "Debtor") Under Chapter 11 of the Bankruptcy Code (the "Plan") that is described in the Disclosure Statement for Prepackaged Plan of Reorganization of Seegrid Corporation Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement"), a copy of which is also enclosed.  All capitalized terms not defined in these instructions or in the Ballot are defined in the Plan or the Disclosure Statement, as the case may be.

PLEASE READ THESE VOTING INSTRUCTIONS, THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THE BALLOT.  YOU SHOULD REVIEW THE PLAN AND DISCLOSURE STATEMENT BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM(S) UNDER THE PLAN. NEITHER THE DEBTOR, THE DEBTOR'S COUNSEL, NOR THE BALLOTING AGENT CAN GIVE YOU SUCH LEGAL ADVICE.

### Voting and Non-Voting Classes

As set forth in the Plan and Disclosure Statement:

Classes 3 and 4 (the "Non-Voting Classes") are unimpaired and therefore are not entitled to vote on the Plan.

Classes 1-A – First Priority Secured June 11 Noteholders, 1-B First Priority Secured Bridge Noteholders, 1-C Second Priority Secured Noteholders, 1-D Third Priority Secured Bridge Noteholders, 2-A Noteholder General Unsecured, and 2-B Other General Unsecured are impaired and will receive or retain property under the Plan, and therefore, are entitled to vote on the Plan (collectively, the "Voting Classes").

### Voting Procedures

The Debtor is providing Solicitation Packages containing, among other things, copies of the Plan, Disclosure Statement and Ballots to all record holders of claims entitled to vote in the Voting Classes as of September 24, 2014 (the "Record Date").

Ballots may be returned to Logan & Company, Inc. (the "Balloting Agent") by:

(I) ELECTRONIC MAIL TO SEEGRID@LOGANANDCO.COM; OR

(II) FACSIMILE TO 973-509-1131; OR

(III) IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE TO:

LOGAN & COMPANY, INC.
ATTN: SEEGRID BALLOTING DEPARTMENT
546 VALLEY ROAD, 2ND FLOOR
UPPER MONTCLAIR, NJ  07043

If no return envelope for your Ballot has been provided with the Solicitation Package, please send your Ballot to the Balloting Agent at:

LOGAN & COMPANY, INC.
ATTN: SEEGRID BALLOTING DEPARTMENT
546 VALLEY ROAD, 2ND FLOOR
UPPER MONTCLAIR, NJ  07043

With respect to holders of claims in Voting Classes:

Holders of claims in Voting Classes can vote by completing the Ballot, singing it and returning it to the Balloting Agent so that it is actually received by the Balloting Agent on or before October 17, 2014 at 5:00 p.m. (prevailing Eastern time) (the "Voting Deadline").

In order to be counted, your ballot must be actually received by the Voting Deadline.

The Ballot is not a letter of transmittal or a proof of claim and may not be used for any other purpose than to transmit your vote to accept or reject the Plan.

## Tabulation Procedures for All Voting Classes

Your claim or interest has been temporarily allowed solely for purposes of voting to accept or reject the Plan in accordance with the following Tabulation Rules to be presented to the Bankruptcy Court for approval:

(a)     Unless otherwise provided in these Tabulation Rules, a claim will be deemed temporarily allowed for voting purposes only in an amount equal to the amount of such claim as set forth in the Debtor's books and records on the Record Date.

(b)     If a holder of a claim identifies a claim amount in its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot.

The following additional procedures have also been approved by the Court to be utilized in tabulating the Ballots with respect to Ballots submitted by a holder of a claim or interest:

(a)     Except to the extent the Debtor otherwise determines, in accordance with these Tabulation Procedures, or as permitted by the Court, any Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the Debtor's request for confirmation of the Plan unless the Debtor extends the Voting Deadline.

(b)     Any Ballot which is otherwise properly completed, executed, and timely returned that does not indicate an acceptance or rejection of the Plan will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(c)     Any Ballot that is returned indicating acceptance or rejection of the Plan, but which is unsigned will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(d)     Whenever a Claimholder casts more than one properly executed Ballot voting the same claim or interest prior to the Voting Deadline, only the last Ballot timely received will be deemed to reflect the voter's intent and will thus supersede any prior Ballots.

(e)     If a Claimholder casts duplicative Ballots which are voted inconsistently and are received simultaneously by the Balloting Agent, those Ballots will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(f)     Each Claimholder shall be deemed to have voted the full amount of its claim or interest as set forth on the Ballot.

(g)     Claimholders shall not split their vote within a claim; thus, each Claimholder shall vote its entire claim within a particular class either to accept or reject the Plan.

(h)     Ballots partially rejecting and partially accepting the Plan will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(i)     The method of delivery of Ballots to the Balloting Agent is at the risk of each Claimholder, and such delivery will be deemed made only when the Ballot is actually received by the Balloting Agent.

(j)     The Debtor expressly reserves the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code).  If the Debtor makes material changes in the terms of the Plan, the Debtor will disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Court.

(k)     If a Ballot is signed by a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or other person acting in a fiduciary or representative capacity on behalf of a Claimholder, such person shall be required to indicate such capacity when signing and, at the Debtor's discretion, must submit proper evidence satisfactory to the Debtor to so act on behalf of the Claimholder.

(l)     The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice.  Unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtor may, in its sole discretion, reject such Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan.

(m)    In the event a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise.

(n)    Any Claimholder who has delivered a valid Ballot voting on the Plan may withdraw such vote prior to the Voting Deadline with the consent of the Debtor and in accordance with Bankruptcy Rule 3018(a).

(o)    Subject to any contrary order of the Court, Ballots not proper in form will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(p)    Unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtor (or the Court) determines, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

(q)    Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have theretofore not been cured or waived) will not be counted.

(r)    Subject to any contrary order of the Court, the Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot unless otherwise directed by the Court.

(s)    For purposes of determining whether the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code have been satisfied, the Balloting Agent will tabulate only those Ballots received prior to the Voting Deadline.

## Questions

If you have any questions regarding your Ballot or these Voting Instructions, please call **(973) 509-3190**.

**IMPORTANT: A CHAPTER 11 CASE HAS NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT.  THIS BALLOT IS A PREPETITION SOLICITATION OF YOUR VOTE ON A PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE.  THE VOTING DEADLINE IS OCTOBER 17, 2014 AT 5:00 P.M. (PREVAILING EASTERN TIME)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SEEGRID CORPORATION, | Case No. 14-_____-_____ |
| Debtor. | |

**BALLOT FOR ACCEPTING OR REJECTING PREPACKAGED PLAN OF REORGANIZATION OF SEEGRID CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE CLASS 2-A – Noteholder General Unsecured Claims**

This is a ballot to vote to accept or reject Prepackaged Plan of Reorganization of Seegrid Corporation (the "Debtor") under Chapter 11 of the Bankruptcy Code (the "Plan").[1]  If you have a claim in more than one Class entitled to vote, you will receive additional ballot(s) on which to cast your vote.  If you have more than one claim in the same Class, you must vote all claims within that class the same way.

**PLEASE READ THIS ENTIRE BALLOT BEFORE COMPLETING. PLEASE COMPLETE, DATE, AND SIGN THIS BALLOT AND RETURN IT TO THE BALLOTING AGENT (AS DEFINED BELOW) BY EITHER: (I) ELECTRONIC MAIL TO SEEGRID@LOGANANDCO.COM; OR (II) FACSIMILE TO 973-509-1131; OR (III) IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE TO LOGAN & COMPANY, INC. ATTN: SEEGRID BALLOTING DEPARTMENT 546 VALLEY ROAD, 2ND FLOOR UPPER MONTCLAIR, NJ  07043**

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE BALLOTING AGENT (AS DEFINED BELOW) ON OR BEFORE OCTOBER 17, 2014 AT 5:00 P.M., PREVAILING EASTERN TIME**

**PLEASE READ THE FOLLOWING AND THE ENCLOSED VOTING INSTRUCTIONS BEFORE COMPLETING YOUR BALLOT**

This Ballot is submitted to you to solicit your vote to accept the Plan, which is described in the disclosure statement in support of the Plan, dated October 3, 2014 (the "Disclosure Statement").  A copy of the Plan is attached as **Exhibit A** to the Disclosure Statement.  The Plan may be confirmed by the United States Bankruptcy Court for the District of Delaware and thereby made binding upon you.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. A copy of the Disclosure Statement is included with this Ballot.

---

[1] Capitalized terms not otherwise defined are defined in the Plan.

Please complete, sign and date this Ballot and return it to Logan & Company, Inc. (the "Balloting Agent") as indicated above. **If your Ballot is not ACTUALLY RECEIVED by 5:00 p.m., prevailing Eastern time, on October 17, 2014, it will not be counted.**

**By singing this Ballot, you make the following certifications:**

- "I have received or obtained a copy of the Disclosure Statement and the exhibits thereto, including the Plan."

- "I understand that, if this Ballot is validly executed and returned without checking a box to ACCEPT or REJECT, this Ballot will not be counted."

- "I have the full power and authority to vote to accept or reject the Plan on behalf of the claimant listed herein."

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-third in amount and more than one-half in number of the allowed claims in each class voting on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it and otherwise satisfies the requirements of Section 1129 of the Bankruptcy Code. **To have your vote count, you must complete and return this Ballot so that it is actually received by the Balloting Agent by 5:00 p.m. prevailing Eastern time on or before October 17, 2014. Unsigned Ballots will not be counted.**

This Ballot is for voting purposes only and does not constitute and shall not be deemed a proof of claim or interest or an admission by the Debtor of the validity of a claim or interest.

<u>**HOW TO VOTE**</u> (FOR FURTHER DETAIL, SEE ENCLOSED VOTING INSTRUCTIONS)

<u>REVIEW ITEM 1</u>. WHICH SETS OUT THE AMOUNT AND CLASSIFICATION OF YOUR CLAIM FOR VOTING PURPOSES.

<u>COMPLETE ITEM 2</u>.  ANY BALLOT THAT DOES NOT INDICATE ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.

<u>REVIEW ITEM 3</u>.

<u>SIGN THE BALLOT</u>.  ONLY EXECUTED BALLOTS WILL BE COUNTED.

<u>RETURN THE BALLOT</u> BY ELECTRONIC MAIL, FACSIMILE, OR IN THE PRE-ADDRESSED, POSTAGE-PAID ENVELOPE.  THE BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE BALLOTING AGENT BY OCTOBER 17, 2014 AT 5:00 P.M. (ET).  LATE BALLOTS WILL NOT BE COUNTED.

**IF YOU HAVE ANY QUESTIONS CONCERNING THE DISCLOSURE STATEMENT, THE PLAN, THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF ANY ENCLOSED MATERIALS, PLEASE CONTACT THE DEBTOR'S COUNSEL AT 973-509-3190.**

## **BALLOT**

      **Item 1:  Voting Classification and Amount.**  As of the record date of September 24, 2014 the undersigned is a holder of a Class 2-A Noteholder General Unsecured Claims (as defined in the Plan) against the Debtor in the following amount for voting purposes:   $

      **Item 2:  Vote.**  The undersigned votes the above listed Class 2-A Claim to (check one box):

☐ Accept the Plan          ☐ Reject the Plan

      **Item 3:  Acknowledgments and Certification.**  By signing this Ballot, the undersigned acknowledges that the undersigned has been provided a copy of the Disclosure Statement, including all exhibits thereto.  The undersigned certifies that (i) it is the holder of the claim identified on this Ballot and (ii) it has full power and authority to vote to accept or reject the Plan.

Name of Creditor:_____
                       (Print or Type)

By:_____
          (Signature of Creditor or Authorized Person)

Print Name of Signatory:_____


Title:_____
              (If Applicable)

Street Address:_____
           (City, State and Zip Code)

Telephone Number:_____


Social Security or Federal Tax I.D. No._____


Date Completed:_____

## VOTING INSTRUCTIONS FOR THE PREPACKAGED PLAN OF REORGANIZATION OF SEEGRID CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The enclosed Ballot is submitted to you to solicit your vote to accept or reject the Prepackaged Plan of Reorganization of Seegrid Corporation (the "Debtor") Under Chapter 11 of the Bankruptcy Code (the "Plan") that is described in the Disclosure Statement for Prepackaged Plan of Reorganization of Seegrid Corporation Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement"), a copy of which is also enclosed.  All capitalized terms not defined in these instructions or in the Ballot are defined in the Plan or the Disclosure Statement, as the case may be.

PLEASE READ THESE VOTING INSTRUCTIONS, THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THE BALLOT.  YOU SHOULD REVIEW THE PLAN AND DISCLOSURE STATEMENT BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM(S) UNDER THE PLAN. NEITHER THE DEBTOR, THE DEBTOR'S COUNSEL, NOR THE BALLOTING AGENT CAN GIVE YOU SUCH LEGAL ADVICE.

### Voting and Non-Voting Classes

As set forth in the Plan and Disclosure Statement:

Classes 3 and 4 (the "Non-Voting Classes") are unimpaired and therefore are not entitled to vote on the Plan.

Classes 1-A – First Priority Secured June 11 Noteholders, 1-B First Priority Secured Bridge Noteholders, 1-C Second Priority Secured Noteholders, 1-D Third Priority Secured Bridge Noteholders, 2-A Noteholder General Unsecured, and 2-B Other General Unsecured are impaired and will receive or retain property under the Plan, and therefore, are entitled to vote on the Plan (collectively, the "Voting Classes").

### Voting Procedures

The Debtor is providing Solicitation Packages containing, among other things, copies of the Plan, Disclosure Statement and Ballots to all record holders of claims entitled to vote in the Voting Classes as of September 24, 2014 (the "Record Date").

Ballots may be returned to Logan & Company, Inc. (the "Balloting Agent") by:

(I) ELECTRONIC MAIL TO SEEGRID@LOGANANDCO.COM; OR

(II) FACSIMILE TO 973-509-1131; OR

(III) IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE TO:

LOGAN & COMPANY, INC.
ATTN: SEEGRID BALLOTING DEPARTMENT
546 VALLEY ROAD, 2ND FLOOR
UPPER MONTCLAIR, NJ  07043

If no return envelope for your Ballot has been provided with the Solicitation Package, please send your Ballot to the Balloting Agent at:

LOGAN & COMPANY, INC.<br>
ATTN: SEEGRID BALLOTING DEPARTMENT<br>
546 VALLEY ROAD, 2ND FLOOR<br>
UPPER MONTCLAIR, NJ  07043

<u>With respect to holders of claims in Voting Classes</u>:

Holders of claims in Voting Classes can vote by completing the Ballot, singing it and returning it to the Balloting Agent so that it is actually received by the Balloting Agent on or before October 17, 2014 at 5:00 p.m. (prevailing Eastern time) (the "<u>Voting Deadline</u>").

In order to be counted, your ballot must be actually received by the Voting Deadline.

The Ballot is not a letter of transmittal or a proof of claim and may not be used for any other purpose than to transmit your vote to accept or reject the Plan.

<b>Tabulation Procedures for All Voting Classes</b>

Your claim or interest has been temporarily allowed solely for purposes of voting to accept or reject the Plan in accordance with the following Tabulation Rules to be presented to the Bankruptcy Court for approval:

      (a)    <u>Unless otherwise provided in these Tabulation Rules</u>, a claim will be deemed temporarily allowed for voting purposes only in an amount equal to the amount of such claim as set forth in the Debtor's books and records on the Record Date.

      (b)    If a holder of a claim identifies a claim amount in its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot.

The following additional procedures have also been approved by the Court to be utilized in tabulating the Ballots with respect to Ballots submitted by a holder of a claim or interest:

      (a)    Except to the extent the Debtor otherwise determines, in accordance with these Tabulation Procedures, or as permitted by the Court, any Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the Debtor's request for confirmation of the Plan unless the Debtor extends the Voting Deadline.

      (b)    Any Ballot which is otherwise properly completed, executed, and timely returned that does not indicate an acceptance or rejection of the Plan will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(c)     Any Ballot that is returned indicating acceptance or rejection of the Plan, but which is unsigned will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(d)     Whenever a Claimholder casts more than one properly executed Ballot voting the same claim or interest prior to the Voting Deadline, only the last Ballot timely received will be deemed to reflect the voter's intent and will thus supersede any prior Ballots.

(e)     If a Claimholder casts duplicative Ballots which are voted inconsistently and are received simultaneously by the Balloting Agent, those Ballots will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(f)     Each Claimholder shall be deemed to have voted the full amount of its claim or interest as set forth on the Ballot.

(g)     Claimholders shall not split their vote within a claim; thus, each Claimholder shall vote its entire claim within a particular class either to accept or reject the Plan.

(h)     Ballots partially rejecting and partially accepting the Plan will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(i)     The method of delivery of Ballots to the Balloting Agent is at the risk of each Claimholder, and such delivery will be deemed made only when the Ballot is actually received by the Balloting Agent.

(j)     The Debtor expressly reserves the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code). If the Debtor makes material changes in the terms of the Plan, the Debtor will disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Court.

(k)     If a Ballot is signed by a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or other person acting in a fiduciary or representative capacity on behalf of a Claimholder, such person shall be required to indicate such capacity when signing and, at the Debtor's discretion, must submit proper evidence satisfactory to the Debtor to so act on behalf of the Claimholder.

(l)     The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtor may, in its sole discretion, reject such Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan.

(m)    In the event a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such claim will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise.

(n)    Any Claimholder who has delivered a valid Ballot voting on the Plan may withdraw such vote prior to the Voting Deadline with the consent of the Debtor and in accordance with Bankruptcy Rule 3018(a).

(o)    Subject to any contrary order of the Court, Ballots not proper in form will not be accepted or counted by the Balloting Agent in connection with the Debtor's request for confirmation of the Plan.

(p)    Unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtor (or the Court) determines, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

(q)    Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have theretofore not been cured or waived) will not be counted.

(r)    Subject to any contrary order of the Court, the Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot unless otherwise directed by the Court.

(s)    For purposes of determining whether the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code have been satisfied, the Balloting Agent will tabulate only those Ballots received prior to the Voting Deadline.

## Questions

If you have any questions regarding your Ballot or these Voting Instructions, please call **(973) 509-3190**.

C<small>ONFIDENTIAL</small>

THIS IS A NOTICE OF AN OPPORTUNITY TO PARTICIPATE IN THE CURRENT PROPOSED EQUITY FINANCING OF A NEWLY FORMED ENTITY ("NEW SEEGRID CORPORATION") AS DESCRIBED BELOW AND IS NOT AN OFFER TO SELL SECURITIES IN ANY JURISDICTION WHERE THE OFFER OR SALE IS NOT PERMITTED. THERE IS NO GUARANTEE THAT THE BANKRUPTCY COURT WILL APPROVE THE PLAN (AS DEFINED HEREIN). YOU HAVE NO RIGHTS IN SUCH PROPOSED FINANCING, AND/OR IN ANY SECURITIES TO BE OFFERED OR SOLD, UNTIL THE PLAN IS APPROVED BY THE BANKRUPTCY COURT.  UPON THE APPROVAL OF THE BANKRUPTCY COURT, THE ELECTION FORM IS A BINDING OBLIGATION ON YOUR PART TO ACQUIRE NEW SECURITIES IN NEW SEEGRID CORPORATION.  IF THE BANKRUPTCY COURT DOES NOT APPROVE THE PLAN, THE OFFERING SHALL BE WITHDRAWN WITHOUT FURTHER LIABILITY OR OBLIGATION TO NEW SEEGRID CORPORATION.  BY EXECUTING THE ELECTION FORM, YOU ARE REPRESENTING TO NEW SEEGRID CORPORATION THAT YOU ARE AN ACCREDITED INVESTOR AS SUCH TERM IS DEFINED IN THE SECURITIES ACT OF 1933, AS AMENDED. NEW SEEGRID CORPORATION RESERVES THE RIGHT TO REJECT ANY PARTICIPATION THAT DOES NOT CONFORM TO APPLICABLE LAWS OR REGULATIONS.  NEW SEEGRID CORPORATION RESERVES THE SOLE AND ABSOLUTE RIGHT TO REJECT OR NOT ACCEPT ANY PARTICIPATION THAT DOES NOT CONFORM TO THE REQUIREMENTS OF THE REQUIRED DOCUMENTATION.

**NEW SEEGRID CORPORATION**
**OFFER NOTICE**
October 3, 2014

Seegrid Corporation ("Seegrid Holdings") is preparing to file a Prepackaged Plan of Reorganization of the Corporation pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan").  This Offer Notice is being sent to you in connection with the Plan and its accompanying materials, including a detailed disclosure statement (the "Disclosure Statement"). As part of the Plan, Seegrid Holdings' operating assets are being transferred to a newly formed wholly-owned subsidiary ("New Seegrid Corporation").  You, as a Seegrid Holdings debt holder or direct or indirect stockholder (each an "Investor" and collectively the "Investors"), are being offered the opportunity to participate in the offering of New Seegrid Corporation's Series A Preferred Stock as described herein (the "Offering").   This Offering is non-transferrable. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Disclosure Statement or the Plan.

New Seegrid Corporation is offering to sell shares of Series A Preferred Stock.  The shares of Series A Preferred Stock proposed to be issued are referred to herein as the "New Securities."  Additional terms and conditions of the proposed sale of New Securities are set forth in the Term Sheet attached hereto as **Annex A** (the "Term Sheet") and incorporated herein. Each Investor has the right to acquire New Securities as described below (the "Purchase Right").

**The Offering**

On or prior to the Effective Date, Seegrid Holdings shall form New Seegrid Corporation, a wholly-owned Delaware "C" corporation subsidiary to which Seegrid Holdings shall convey: (i) all of its operating assets, including without limitation, its intellectual property and the name

"Seegrid"; (ii) its post Commencement Date operating liabilities; and (iii) its employees. In exchange for its contribution to New Seegrid Corporation, Seegrid Holdings shall receive 11.25 million shares of New Seegrid Corporation common stock.

On the Effective Date, all indebtedness of Seegrid Holdings to Giant Eagle for borrowed money arising after June 11, 2014, including Giant Eagle's First Priority Secured Bridge Noteholder Claims and Third Priority Secured Bridge Noteholder Claims, and any indebtedness under the DIP Credit Agreement, shall be converted dollar for dollar into Series A Preferred Shares of New Seegrid Corporation. Such Series A Preferred Shares shall have the rights and preferences reflected in the Term Sheet. To the extent that the Giant Eagle debt converted hereunder is less than $10 million, for a period of one year after the Effective Date, Giant Eagle shall have the right to purchase such additional Series A Preferred Shares in New Seegrid Corporation to enable it to have a total of $10 million in Series A Preferred Shares of New Seegrid Corporation (the "Additional Securities"). To the extent that New Seegrid Corporation meets certain agreed-upon projections following confirmation of the Plan, Giant Eagle has agreed to purchase the Additional Securities to fund New Seegrid Corporation's post-reorganization operations. **Except to the extent described in the previous sentence, Giant Eagle is under no obligation to continue to provide funding to New Seegrid Corporation, if any such additional funding is required, and there can be no assurance that Giant Eagle will make any additional financing available to New Seegrid Corporation or, if it does, that New Seegrid Corporation and Giant Eagle will be able to negotiate acceptable terms for such financing.**

Additional Series A Shares in New Seegrid Corporation beyond the $10 million of Series A Shares available to Giant Eagle are being offered to the Investors in at least an amount that allows the Investors to maintain their direct and indirect pro rata share of New Seegrid Corporation on a fully diluted, as converted basis (the "Minimum Investment Amount"), or such larger amount as the Board of Seegrid Holdings may determine. Investors interested in participating in the Offering are encouraged to indicate the maximum amount they wish to invest on the accompanying Election Form.

Giant Eagle and each Investor who purchases Series A Preferred Shares in New Seegrid Corporation shall also receive a warrant to purchase additional Series A Preferred Shares in New Seegrid Corporation at $1.00 per share in an amount equal to the amount invested in Series A Preferred Shares of New Seegrid Corporation. Such warrant shall be exercisable up to and including the second anniversary of the Effective Date of the Plan.

**The sale, transfer or other disposition of the New Securities purchased pursuant to this Offering is restricted by applicable federal and state securities law. This Offering is made, and sales of the New Securities will be made, only to persons whom New Seegrid Corporation believes to be "Accredited Investors" (as such term is defined in Regulation D promulgated under the Securities Act of 1933, as amended). The New Securities offered hereby are highly speculative and involve a high degree of risk and should not be purchased by anyone who cannot afford the loss of his or her entire investment.**

If you elect to exercise your Purchase Right, closing on your purchase of New Securities will occur concurrently with, or promptly following, confirmation of the Chapter 11 Case. Closing documents, including a Subscription Agreement, a Shareholders Agreement, a Registration Rights Agreement, and such other documents as are reasonably required to complete your purchase of the New Securities and reflecting the terms set forth on **Annex A** hereto, will be provided to you in advance of closing (the "Investment Agreements").

In connection with your evaluation of a purchase of New Securities, in addition to the Disclosure Statement and the Plan, you should also carefully review the Term Sheet, the Risk Factors attached as **Annex B** and the pro forma balance sheet for New Seegrid Corporation attached as **Annex C.**

In the event the Plan is not approved by the Seegrid Holdings Board and confirmed by the Bankruptcy Court, this Offering shall terminate and your right to acquire the New Securities shall be null and void.

**NEW SEEGRID CORPORATION**

**ELECTION FORM**

**If you wish to participate in the Offering, please complete this Election Form, sign where indicated, and fax or email a copy to Logan & Company, Inc. at (973) 509-1131, Attn: SEEGRID BALLOTING DEPARTMENT SEEGRID@LOGANANDCO.COM, no later than 5:00 P.M. (prevailing Eastern Time) on October 17, 2014. If you fail to adhere to this deadline, you will not be able to participate in the Offering.**

**WAIVER**

☐   **No, I do not wish to exercise my Purchase Right** (as described in the Offer Notice, the terms of which are incorporated herein by reference) over any of the New Securities, and by checking this box I am waiving such Purchase Right. I waive any right to further notice, and any additional time to consider participation in such transaction upon modifications to the terms of the New Securities or the Plan.

-------------------------------------------------------------------------------

**ACCEPTANCE NOTICE**

☐   **Yes, I wish to exercise my Purchase Right** over the New Securities, in the amount set forth below. I acknowledge and agree that this Election Form is a binding agreement to acquire the New Securities. I represent that I am an accredited investor as defined in the Securities Act of 1933, as amended. Upon the confirmation of the Plan by the Bankruptcy Court, I will be required to purchase the New Securities and execute and deliver the Investment Agreements.

The undersigned Investor hereby exercises his, her or its right to purchase the following amount of New Securities:

$_____

The undersigned acknowledges that, in the event he, she, or it has exercised the right **to** purchase more than his, her or its Minimum Investment Amount, Seegrid Holdings and New Seegrid Corporation reserve the right to reduce the amount of New Securities to be sold to the undersigned, but not below the undersigned's Minimum Investment Amount.

**Acknowledgement.** The undersigned acknowledges that he, she or it has fully read the related Offer Notice, the attached Risk Factors, the Disclosure Statement and attachments to it, and understands the terms and conditions of the proposed offer and sale of New Securities and all other material terms and conditions thereof.

Investor Name: _____

Signature:_____

Date:_____

Name of authorized signatory (if different from Investor Name):_____

Title (if applicable):_____

ANNEX A

## Summary of the Series A Convertible Preferred Stock Rights and Preferences
of
New Seegrid Corporation

### October 2, 2014

| | |
|---|---|
| *Company:* | [New Seegrid Corporation], a to-be-formed Delaware corporation (the "Company"). It is anticipated that New Seegrid Corporation will be renamed "Seegrid Corporation" following consummation of the Plan. |
| *Price Per Share:* | $1.00 per share.  The price per share represents a Company pre-investment valuation of $15 million, on Fully-Diluted Basis (as defined below). |
| *Type of Security:* | Series A Preferred Stock, par value $0.001 per share ("Series A Preferred"), ranking senior to the common stock, par value $0.001 per share, of the Company ("Common Stock"). |
| *Initial Capitalization of New Seegrid Corporation (Common Stock, Equity Incentive Plan, and Giant Eagle Series A Preferred):* | Upon the consummation of the Plan: |

- 11.25 million shares of Common Stock will be issued to existing Seegrid Corporation (for purposes of this summary, "Seegrid Holdings") representing 45% of the Company's Common Stock outstanding on a "Fully-Diluted Basis" (calculated as all shares of Common Stock outstanding, all shares of Common Stock issuable upon conversion of outstanding Series A Preferred Stock, and all outstanding options and warrants, on an as-exercised basis);

- 3.75 million shares of Common Stock will be reserved for issuance under an equity incentive plan to be adopted by the Company's Board of Directors (the "Equity Incentive Plan") representing 15% of the Company on a Fully-Diluted Basis; and

- 10 million shares of Series A Preferred will be made available to Giant Eagle, Inc. ("GE") representing 40% of the Company on a Fully-Diluted Basis when fully subscribed.

| | |
|---|---|
| *Additional Shares of Series A Preferred; Warrants* | Additional shares of Series A Preferred Stock beyond the $10 million of Series A Preferred Stock made available to GE will be offered to Seegrid Holdings' other direct and indirect stockholders and debt holders ("Investors") in an amount that allows the Investors to maintain their direct and indirect pro rata share of the Company on a Fully-Diluted Basis or such larger amount as the Board of Seegrid Holdings may determine.  Any issuance of such additional shares of Series A Preferred Stock will dilute proportionally the percentage of capital stock held by Seegrid Holdings and GE and reserved for issuance under the Equity Incentive Plan. |

GE and each Investor will receive a warrant to purchase additional shares of Series A Preferred Stock at an exercise price of $1.00 per share in an amount equal to the amount invested by GE or such

Investor in Series A Preferred Stock.  Such warrant shall be exercisable up to and including the second anniversary of the consummation of the Plan.  Any exercise of such warrants will dilute proportionally the percentage of capital stock held by Seegrid Holdings, GE and the Investors and reserved for issuance under the Equity Incentive Plan.

*Certificate of Incorporation:*    The Company's Certificate of Incorporation (the "Certificate") will include the following provisions:

*Dividends:*    Holders of Series A Preferred Stock will be entitled to receive cumulative dividends at the rate of 8% of the Original Issue Price per annum, payable (a) prior to and in preference to any declaration or payment of dividends to holders of Common Stock, or (b) in the event of a liquidation, dissolution, or winding up of the Company, or a Mandatory Redemption Event (as defined below).  In addition, prior to the consummation of a Qualified Public Offering (as defined below), holders of Series A Preferred Stock have a right to participate with the holders of the Common Stock on an as-converted basis as to any such dividends declared or paid to the holders of the Common Stock.

"Qualified Pubic Offering" means an underwritten public offering of shares of Common Stock, by a nationally recognized investment banking firm, where the shares are listed on a nationally recognized securities exchange, at a price per share of at least equal to three times the Original Purchase Price of Series A Preferred Stock, (as adjusted for stock splits, stock dividends, combinations, or recapitalizations) with gross proceeds to the Company of not less than $50 million.

*Liquidation Preference:*    Upon any liquidation, dissolution or winding up of the Company, each holder of Series A Preferred Stock will be entitled to receive prior and in preference to, any distribution with respect to the Common Stock, an amount in cash equal to the Original Issue Price (as adjusted for stock splits, stock dividends, combinations, or recapitalizations) plus all accrued and unpaid dividends (the "Liquidation Preference").   After payment of the Liquidation Preference to the holders of Series A Preferred Stock the remaining assets of the Company, if any, will be distributed ratably to the holders of Common Stock.

Unless the holders of a 66⅔% of the Series A Preferred Stock then outstanding, elect otherwise, a merger, consolidation, sale of assets or other transaction in which control of the Company is transferred will be deemed to be a liquidation, dissolution, or winding up for purposes of the Liquidation Preference.

*Voluntary Conversion:*    A holder of Series A Preferred Stock will have the right at any time after the date of issuance to convert the holder's Shares into shares of Common Stock (the "Conversion Shares").   Shares of Series A Preferred Stock initially are convertible into shares of Common Stock on a 1:1 basis, and thereafter are convertible at the then applicable conversion price (see "**Antidilution Protection**" below).  Upon any voluntary conversion, any accrued and unpaid dividends will be canceled.

- 2 -

| | |
|---|---|
| *Automatic Conversion:* | The Series A Preferred Stock will be automatically converted into Common Stock, at the then applicable conversion price (see "**Antidilution Protection**" below), (a) in the event of a Qualified Public Offering, or (b) in the event that the holders of a majority of the outstanding Series A Preferred Stock consent to such conversion. Upon any automatic conversion, any accrued and unpaid dividends will be canceled. |
| *Antidilution Protection:* | The conversion price of the Series A Preferred Stock will be subject to adjustment (a) for stock splits, stock dividends, combinations, recapitalizations, or similar events, and (b) on a broad-based weighted average basis to reduce dilution in the event that the Company issues additional equity securities (subject to certain customary exceptions) at a purchase price per share less than the applicable conversion price of Series A Preferred Price immediately prior to such issuance. |
| *Voting Rights:* | The holders of Series A Preferred Stock will vote together with the holders of Common Stock, and not as a separate class, except with respect to the election of directors and as specifically provided in "**Protective Provisions**" below or as otherwise required by applicable law or the terms of the Series A Preferred Stock and Existing Preferred Stock. |
| *Protective Provisions Preferred:* | The affirmative vote or consent of the holders of a majority of the outstanding shares of Series A Preferred Stock will be required for any action which: (i) amends the Certificate in a manner requiring a class vote of the Series A Preferred Stock pursuant to Section 242 of the General Corporation Law; (ii) otherwise alters or changes the powers, preferences or special rights of the Series A Preferred Stock so as to affect them adversely (including by amendment to the Company's Bylaws); (iii) increases the authorized number of shares of Series A Preferred Stock; (iv) creates any class or series of stock which is senior to or has preference over the Series A Preferred Stock; (v) effects a merger of the Company with another corporation in which the Company is not the surviving corporation or effects the sale of the Company or substantially all of its assets; (vi) effects a reclassification or recapitalization of the outstanding capital stock of the Company into shares of capital stock senior to or having preference over the Series A Preferred Stock; (vii) effects the repurchase of Series A Preferred Stock on terms not available to all holders of Series A Preferred Stock (viii) effects a transaction with "affiliates" (as such term is defined in Rule 405 of the Securities Act); (ix) effects the payment of cash dividends by the Corporation, (x) increases the number of shares of capital stock available for issuance under the Equity Incentive Plan, creates any other equity or equity-based incentive plan for management, employees, consultants or directors, or otherwise effects the issuance of any equity, instruments convertible to equity, or equity-based incentives to management, employees, consultants or directors other than through the Equity Incentive Plan; (xi) effects the incurrence of debt for borrowed money, other than trade debt in the ordinary course of the Company's business; or (xii) effects the grant of any security interest in the Company's assets. |

*Series A Preferred Subscription
Agreement:*

Purchasers of Series A Preferred Stock will enter into the Series A Preferred Stock Subscription Agreement, which will include fundamental representations and warranties and closing conditions, but otherwise will reference the Disclosure Statement.

*Registration Rights Agreement:*

In connection with the financing, purchasers of Series A Preferred Stock will enter into a Registration Rights Agreement (the "Registration Rights Agreement"), which will include the following provisions:

*Registration Rights:*

Demand Registration Rights:  Subject to the conditions described below, the holders of Registrable Securities will be entitled to two demand registrations at any time on or after the earlier of (a) _____ ___, 2019 [the 5th anniversary of the initial issuance of Series A Preferred Stock] or (b) 180 days after consummation of the Company's initial public offering pursuant to an effective registration statement ("IPO").  These demand registration rights may only be exercised if one or more holders of Series A Preferred Stock holding more than 66⅔% of the outstanding shares of Series A Preferred Stock on an as-converted basis (including for this purpose any shares of Common Stock issued in connection with the conversion of such shares of Series A Preferred Stock (the "Conversion Shares")) request that the Company file a registration statement under the Securities Act.  In the event of a request *after* an IPO, such demand registration must cover at least 40% of the then outstanding Registrable Securities (as defined below) held by the initiating holder(s) and having an aggregate offering price to the public of not less than $3,000,000.  After _____ ___, 2019 and *prior* to an IPO, a demand for registration may only be made if (a) the anticipated aggregate price to the public would equal or exceed $20 million, (b) the proposed public offering would be underwritten by a nationally recognized investment banking firm and cover at least a majority of the then outstanding Registrable Securities, and (c) the shares offered would be listed on a nationally recognized securities exchange.

"Registrable Securities" means (a) any Conversion Shares, (b) any shares of Common Stock owned by any holder of Series A Preferred Stock, and (c) any shares of Common Stock subsequently issued to such holders on conversion of other securities, or in a merger, reorganization, as a stock dividend, or similar events.

The Company will use its commercially reasonable efforts to cause such shares to be registered, subject to the right of the Company and its underwriters to reduce the number of shares proposed to be registered pro rata in view of market conditions with preference in such cut-backs to be given to holders of Conversion Shares.  The Company has the right to delay such registration under certain circumstances for a reasonable period in any 12 month period.  The Company will not be obligated to effect a registration during the 180 day period commencing with the effective date of any registration statement filed in connection with any public offering of Common Stock or if it delivers written notice to the holders of the Registrable Securities, within 30 days of any registration demand, of its intent to

- 4 -

file a registration statement with 120 days.

Other Registration Rights. The holders of Registrable Securities will be entitled to (a) unlimited piggyback registrations (as to offerings for the account of the Company or any other party), subject to the right of the Company and its underwriters to reduce the number of shares proposed to be registered in view of market conditions, with preference in such cut-backs being given to the Company and then to holders of Conversion Shares, and (b) unlimited S-3 registrations provided the aggregate price to the public would equal or exceed $1,000,000. The Company will bear registration expenses (exclusive of underwriting discounts and commissions) of all such demand, piggyback, and S-3 registrations. Piggyback registration rights will not apply to an IPO with gross aggregate proceeds to the Company, before deducting underwriting commissions, of more than $25,000,000.

Lock-Up Provision.    Except as otherwise contemplated by the provisions of the Registration Rights Agreement, each holder of Registrable Securities will agree not to sell its shares for a specified period (but not to exceed 180 days) in connection with each registration statement.

*Stockholders' Agreement:*

In connection with the financing, Seegrid Holdings and the purchasers of Series A Preferred Stock will enter into a Stockholders Agreement (the "Stockholders' Agreement"), which will include the following provisions:

1. Right of First Refusal. If any stockholder who is party to the Stockholders' Agreement desires to sell, transfer, or hypothecate any or all of its shares to a third party (other than to a Permitted Transferee (as defined in the Stockholders' Agreement)), such holder must first offer such shares to the Company and then to each Major Holder.

"Major Holder" means Seegrid Holdings, for so long as Seegrid Holdings holds shares of Common Stock representing 5% or more of the issued and outstanding shares of Common Stock, and each holder of shares of Series A Preferred Stock (whenever purchased) representing 5% or more of the issued and outstanding shares of Series A Preferred Stock.

2. Participation Rights. The Major Holders will have the right to participate in any future sale of equity securities by the Company and will have the right to subscribe for and purchase such securities on a *pro rata* basis, subject to certain customary carve-outs. Seegrid Holdings will have the right, but not the obligation, to assign the Seegrid Holdings participation right to its stockholders and note holders on such basis as the board of directors of Seegrid Holdings may reasonably determine.

3. Right of Co-Sale. Major Holders will have a right to participate *pro rata* (on the basis of outstanding shares of Series A Preferred Stock and Common Stock) in transfers of Common Stock by any holder of Common Stock for value, subject to certain customary carve-outs.

4. <u>Bring-Along Right</u>. If holders of at least 66⅔% of all of the then outstanding shares of Series A Preferred Stock and at least a majority of the then outstanding shares of the Company's Common Stock, voting as separate classes, propose to sell all shares of Preferred Stock and Common Stock then held by them to a third party, then at the request of such holders, all of the parties to the Stockholders' Agreement (including the holders of Series A Preferred Stock) will be obligated to sell their shares in the proposed transaction on the same terms and conditions.

5.    <u>Agreement to Vote Shares</u>.    If, at any time prior to the commencement of trading of the Company's Common Stock in the over-the-counter market or on any national securities exchange, holders of at least 66⅔% of the Series A Preferred Stock and at least a majority of the Company's Common Stock, voting as separate classes, propose that the Company sell, convey, lease or exchange all or substantially all of its assets in an arm's length, <u>bona fide</u> transaction with a third party or engage in a merger, business combination or other transaction with substantially the same effect, then all of the parties to the Stockholders' Agreement (including the holders of Series A Preferred Stock) will be required to vote their shares in favor of the transaction. Each stockholder will also waive appraisal right available under Delaware law in connection with such a transaction to the extent permitted by law.

***Information Rights and
Inspection Rights:***

Major Holders will have the following information and inspection rights:

<u>Information Rights</u>. The Company will deliver to each Major Holder copies of its annual financial plan for the upcoming fiscal year, in reasonable detail, and broken down on a monthly basis. Each Major Holder also will be entitled to receive (i) unaudited, and if requested by certain Major Holders, audited annual financial statements (audited by an accounting firm acceptable to the non-management directors) within 90 days after the end of each fiscal year, and (ii) unaudited quarterly financial statements within 45 days after the end of each fiscal quarter.

<u>Inspection Rights</u>.    Each Major Holder will also be entitled to standard inspection and visitation rights.

***Board of Directors:***

The Company's Board of Directors shall consist of up to 7 directors. These directors must be designated as follows:

- Up to four (4) directors designated by GE;

- Up to two (2) directors designated by Seegrid Holdings one of whom will be Dr. Hans Moravec for so long as he is employed by the Company; and

- The Company's Chief Executive Officer.

After a Qualified Public Offering, director nomination rights will be held by majority vote of the Board.

*Termination of Stockholders*
*Agreement:*

Unless sooner terminated in accordance with their terms, the provisions of the Stockholders' Agreement will terminate upon the earlier of (a) the consummation of a Qualified Public Offering or (b) the consummation of any other initial public offering if upon or prior thereto all shares of Series A Preferred Stock have been converted into Common Stock.

## ANNEX B
## RISK FACTORS

*The New Securities offered hereby are highly speculative and involve a high degree of risk. Each Investor should carefully consider the following risk factors before making an investment decision. Capitalized terms used herein have the meanings given them in the Offer Notice to which these risk factors are attached.*

*The following contains forward looking statements and information that is based on management's belief as well as assumptions made by and information currently available to management. When used herein, words such as "anticipate," "believe," "estimate," "expect" and depending on the context, "will," "intends" and similar expressions are intended to identify forward looking statements. Such statements reflect Seegrid Holdings' current assumptions with respect to future events and are subject to certain risks, uncertainties and further assumptions, including the specific risk factors described herein. If one or more of these risks or uncertainties materialize, or if underlying assumptions prove incorrect, actual results may vary materially from those anticipated, believed, estimated or expected.*

*Please note that, unless otherwise indicated or the context requires otherwise, when we use the terms "we," "our," or "us," we mean the historical operation of the Business (as defined below) by Seegrid Holdings as well as the anticipated continued operation of the Business by New Seegrid Corporation following the proposed reorganization. The statements made herein assume the transfer of the Assets and related operations to New Seegrid Corporation.*

As part of the Plan, Seegrid Holdings is transferring all of its operations and assets to New Seegrid Corporation (the "Business"). The Business, as operated by New Seegrid Corporation, may face many of the same operating issues that the Business, as operated by Seegrid Holdings, has faced in the past. In addition to reviewing the Disclosure Statement, the Plan and the Risk Factors included as part of the Disclosure Statement, potential Investors should also consider the risk factors below. The below risk factors include new risk factors that the Business may face, as well as the Business' continued risk factors.

**New Seegrid Corporation's ability to continue as a going concern may be dependent on its ability to raise capital.**

To the extent that New Seegrid Corporation meets certain agreed-upon projections following confirmation of the Plan, Giant Eagle has agreed to purchase the Additional Securities. It is anticipated that such post-reorganization financing, along with any additional funds raised in the Offering, will be sufficient to allow New Seegrid Corporation to continue operations without the need to raise additional capital. If, however, New Seegrid Corporation does not meet the agreed-upon projections or requires additional capital to continue operations beyond a certain point, there can be no assurances that New Seegrid Corporation will be able to raise such capital. Except to the extent described above, Giant Eagle is under no obligation to provide any additional funding to New Seegrid Corporation, and there can be no assurance that Giant Eagle will make any additional financing available to New Seegrid Corporation or, if it does, that New Seegrid Corporation and Giant Eagle will be able to negotiate acceptable terms for such financing.

If New Seegrid Corporation is unable to raise additional capital, it may be required to significantly curtail, or entirely cease, operations. If New Seegrid Corporation is successful in raising additional funding, any debt or equity securities issued in connection with such financing will likely provide for rights, preferences or privileges senior to those of holders of our common stock and existing preferred stock.

**Uncertainty of Impact of Seegrid Holdings Bankruptcy.**

The Business may be adversely impacted by the filing of the Plan, which could result in the loss of sales both during and after the bankruptcy process. We may not be able to recover from the loss of such sales, or the perceived damage to New Seegrid Corporation's reputation and viability as a going-concern. Similarly, trade vendors and other critical partners may cease to do business with New Seegrid Corporation, which would have an adverse impact on the Business. Other constituencies important to New Seegrid Corporation's success, such as employees and consultants, may also terminate or seek to modify their relationships with New Seegrid Corporation, which could have an adverse impact on our business.

**Gross margins may not be achievable or sustainable.**

To date, the Business has not been successful in maintaining gross margins at projected levels due to a number of factors, including the early stage of the Business's operations, the small scale of its purchases from suppliers, service and support costs that are not being passed through to customers, and pressures from quality control improvements. The current standard product margin based on our standard list price for our S-Kit of $40,000 is 59.5% and the standard product margins on our own brand robotic trucks is between 59.5% and 63.5%. There can be no assurance that the Business will be able to achieve or sustain standard product gross margins of between 59.5% and 63.5%. In that event, the Business's projected profitability could be significantly impacted.

**We may not achieve profitability, and our business model based on developing a scalable distribution model centered on selling our robotic components to material handling OEMs may not be successful.**

Because the Business has operated only since February 2003, it has a limited operating history on which you can base your evaluation of the business. Although the Business entered into agreements with two original equipment manufacturers (OEMs) in 2010, and an agreement with a third OEM in late 2013, development of our OEM strategy has progressed more slowly than we anticipated, and has resulted in greater than anticipated capital expenditures related to testing, qualification and similar matters. Despite these efforts, there can be no assurance that we will be able to successfully implement our OEM strategy or that our technology and products will achieve widespread commercial acceptance or that we will achieve profitability. We face a number of risks encountered by early stage companies in the industrial automation and material handling industries, including:

- issues relating to the development, improvement, manufacturing, and commercialization of new technology;
- challenges of introducing new technology to an old industry;
- limited sales and operating history;

2

- dependence on key developing strategic relationships, including those with the three OEMs that are expected to drive increased sales of the Seegrid S-Kit in 2015, suppliers, and distributors;
- unproven business model, including uncertainty as to customer and OEM demand, sales cycle, speed of product implementation, pricing, and distribution strategies;
- dependence on top officers and key technical personnel;
- need for continuous innovation;
- issues relating to product defects;
- current and future competition;
- New Seegrid Corporation's ability to manage its growth and expansion;
- the outcome of any future legal claims or proceedings;
- New Seegrid Corporation's ability to enforce or adequately protect or defend its intellectual property and proprietary rights; and
- general economic conditions.

Our business strategy may not be successful, and we may not successfully address these risks.

**There can be no assurance as to the timing or amount of further purchase orders, if any, from our OEM partners.**

Seegrid Holdings entered into agreements with Raymond Corporation, Linde Material Handling GmbH and NAACO Materials Handling Group, Inc. To date the Business has received a limited number of orders for the component kits which these OEMs are using to conduct tests and ready their production lines prior to full commercialization. The Business' projections assume that the Business will receive significant orders beginning in 2015 beyond the initial purchases from Raymond and successfully begin selling trucks in Europe, beyond our initial order, in early 2015. The Business' projections further assume that the scope of the Business' existing OEM relationships will be expanded. There can be no assurance that our OEM partners will purchase the volume of units that are included in the projections. Any orders by Raymond, Linde, NAACO and/or other OEMs will be subject in any event to the completion of successful marketing launches by the OEMs of their branded products, satisfactory testing of their manufacturing lines and acceptance of the branded products by their customers. Failure of the OEMs to obtain early reference customers for our products as a result of a failure to convert early trials into completed orders could materially adversely affect our ability to achieve our forecasts and implement our business plan in the timeframe we anticipate.

**We may encounter unanticipated difficulties**

Our trucks are new to the market and our OEM strategy is relatively untested. Our OEM business model requires our OEM partners to incorporate our component kits into their current equipment offerings which will require the OEMs to modify their existing product manufacturing processes or to allow us to sell Guided by Seegrid™ trucks carrying their brand through their dealer network. Unanticipated difficulties may be encountered that slow the implementation of the strategy or prevent development and sales altogether. Furthermore, our products may fail to perform as planned and customers may require our products to incorporate functionality that we are unable to develop in a timely manner or at all. Certain key characteristics of our products, including in particular its serviceability, cannot as a practical

3

matter be fully tested until they have been implemented by large numbers of customers. In addition, we may be required to engage consultants and system integrators to help us gain traction with customers for our trucks and our strategy may need to evolve to being a part of a complete solution to a customer's warehousing needs. This development could delay broader acceptance of our products. In any event, there is a risk that our products will not be as successful as we hope them to be.

**Our industry is old and historically has been resistant to the introduction of new technology**

Material handling is a large established, stable and growing market, but there is no assurance that innovative automation solutions will gain acceptance. Factors such as cost constraints and concerns about system reliability may cause businesses to delay using such automation tools. Historically, the material handling market has been extremely resistant to the introduction of new technology and early forecasts of technology adoption have often proved to be over-optimistic. If our OEM strategy is successful, we expect that the installed base of products incorporating our technology will grow rapidly. However, there can be no assurance as to the timing or amount of additional purchase orders from these or any other potential OEM partner and we cannot predict the rate of adoption by the potential users of our products, or the price that they would be willing to pay for them. If acceptance of innovative automation applications does not occur, our targeted OEM partners may not dedicate the resources required to support our efforts and other potential customers may not adopt our technology. Even if accepted, the life cycle of our products is difficult to estimate. We may not be able to develop and introduce new products, services and enhancements that respond to technological changes or evolving industry standards on a timely basis, in which case our business would suffer. There can be no assurances that we will be able to avoid material changes to the model and plan described in our business plan, or that, if changes are required, we will be successful in making them.

**We have completed important installations of the GT10 and GP8 products, but there can be no assurance that such sales will result in further significant sales of the products**

It is common practice in the materials handling automation industry for customers to require trials of new products until an installed base is established. Even after an installed base has been established, new customers often ask for trials, though the practice is generally ended over time. Trials will require an expenditure of New Seegrid Corporation's time, resources and labor and are unprofitable. However, our products are new to the market and we will continue to incur these expenses until we believe it is appropriate to discontinue the practice.

There is no guarantee as to the number of robots that any prospective customer will order after a trial is completed or that they will order any robots at all. Robots could fail to perform to the customer's expectations as a result of technical problems, difficulties in the operating environment or other factors. Even if trials are successful, changes in budgets and other factors beyond our control could result in the delay or cancellation of orders.

4

**Sales of our products depend on the capital spending patterns of our customers**

Our success will depend in large part upon the capital expenditure budgets of our customers, including the customers of our OEM partners. Accordingly, our future operations may be subject to substantial fluctuations as a consequence of economic conditions, industry patterns and other factors affecting capital spending. A downturn in any of our major markets and any resulting cutbacks in capital spending would have a direct, negative impact on our business.

**Our initial sales cycle is long and subject to factors outside of our control**

Our products perform critical functions in a customer's material handling operations. As a result potential customers commit significant resources to an evaluation of our products, and we expect that they will be subject to review at multiple levels of the potential customer's organization. Based on our current experience the initial sales cycle seems to be between three and nine months and the follow-on sales cycle between two and six months. Most of our sales in the short and medium terms will be initial sales which will be subject to many factors that may interfere with the sales cycle, including budgetary constraints, conditions in the customer's industry and business, actions by competitors and general economic conditions.

**Relationship with Giant Eagle**

Giant Eagle, Inc. and its affiliates will hold a significant portion of the equity of New Seegrid Corporation and have the right to appoint a majority of New Seegrid Corporation's Board of Directors. As a result of its investment and other contractual rights negotiated with New Seegrid Corporation, Giant Eagle could potentially exert significant influence over New Seegrid Corporation's management, policies and financing decisions.

**Dependence on our top officers**

Our success is highly dependent upon our senior management team, which plays a vital role in our development, promotion, and potential growth. The loss of any of them and their services or any other key employee could have a material adverse effect on our business, financial condition and results of operations. In order for New Seegrid Corporation to create meaningful equity incentives, New Seegrid Corporation intends to establish an equity incentive plan consisting of a pool equivalent to 15% of New Seegrid Corporation's Common Stock on a fully diluted, as converted basis. It may also be necessary for the Board to consider other performance-based awards such as cash bonuses upon certain events. Such awards will dilute the interests of investors. However, there can be no assurance that the awards will result in the long-term benefits to New Seegrid Corporation that we intend.

**We may not be able to hire or retain other qualified personnel**

Our success depends to a significant degree upon our ability to attract and retain additional qualified management, technical, marketing and sales personnel and upon the continued contributions of these people. Competition for qualified employees and personnel in the technology industry is intense. The process of locating personnel with the combination of skills

and attributes required to execute our business strategy may be difficult. New Seegrid Corporation's status as a reorganized operating entity following the Chapter 11 bankruptcy filing for Seegrid Holdings may also impact New Seegrid Corporation's ability to attract and retain key employees. We may not be able to attract qualified personnel in our current location, and may have to develop offices in other locations with a resulting increase in operating expenses. Furthermore, our employees may voluntarily terminate their employment with us at any time. Therefore, we cannot assure you that we will be successful in attracting and retaining qualified executives and other personnel. In order for New Seegrid Corporation to create meaningful equity incentives, New Seegrid Corporation intends to establish an equity incentive plan consisting of a pool equivalent to 15% of New Seegrid Corporation's Common Stock on a fully diluted, as converted basis. It may also be necessary for the Board to consider other performance-based awards such as cash bonuses upon certain events. Such awards will dilute the interests of investors. However, there can be no assurance that the awards will result in the long-term benefits to New Seegrid Corporation that we intend.

**Future growth will strain our resources**

To succeed in the implementation of our business strategy, we must rapidly execute our OEM and product strategies and further develop products and expand service capabilities, while managing expenses and the anticipated growth by hiring new personnel only as revenue can support them while implementing effective planning and operating processes. If we fail to manage our growth effectively, our business could suffer materially. To manage anticipated growth, we must:

- continue to implement and improve our operational, financial, and management information systems;
- hire, train, and retain additional qualified personnel;
- continue to expand and upgrade core technologies; and
- effectively manage multiple relationships with various OEM partners, third party logistics providers, and other third parties.

Our systems, procedures, and controls may not be adequate to support our operations, and our management may not be able to achieve the rapid execution necessary to exploit the market for our products and services.

**Our products may contain defects**

The products we develop, including our component kits for OEM partners, are complex and must meet the stringent technical requirements of our customers and partners. Products and services as complex as ours are likely to contain undetected errors or defects, especially when first introduced or when new versions are released. Despite our best efforts, our products may not be free from errors or defects after commercial shipments have begun, which could result in the rejection of our products and damage to our reputation, as well as lost revenues, diverted development resources, and increased service and warranty costs, any of which could harm our business.

Our robots have performed reliably in many different customer environments. However, from time to time our robots have performed unreliably in "low light" conditions and also when in need of standard maintenance. In addition, our products are new and we may not be able to anticipate all problems that could arise in different environments. Accordingly, there is a risk that future field performance will not match current field performance for reasons we do not currently anticipate.

**We may not be able to protect our intellectual property**

Our success depends significantly on our ability to protect our proprietary rights to the technologies used in our products. If we are not adequately protected, our competitors could use the intellectual property that we have developed to enhance their products and services, which could harm our business. We primarily rely on a combination of patent, copyright and trademark laws, trade secrets, confidentiality provisions and other contractual provisions, to protect our proprietary rights. We have or have been allowed 44 patents primarily in the US and western Europe on 11 matters, and we have over an additional 30 in process on over 6 matters and we are taking other steps towards patent protection for other algorithms and proprietary processes, with applications in respect of other patents at varying stages of preparation for filing. There can be no guarantee that any of these applications will be granted, or that our allowed patents will not be challenged. These foregoing legal means may afford only limited protection.

**We may be sued by third parties for infringement of their proprietary rights**

Automation and robotics technologies are characterized by the existence of a large number of patents and frequent litigation based on allegations of patent infringement or other violations of intellectual property rights. As the number of entrants into our market increases, the possibility of an intellectual property claim against us grows. Any intellectual property claims, with or without merit, could be time-consuming and expensive to litigate or settle and could divert management attention from administering our core business.

Because automation and robotics technologies are new and rapidly evolving, the law as it relates to these technologies is not well developed. In addition to other types of liability for infringement of third-party proprietary rights, our technology may expose us to claims such as copyright infringement, trademark infringement, unfair competition, breach of contract (whether actual or implied), and similar or related claims. While we believe that we may be able to take steps that might limit our exposure to such liability by, for example, complying with the "safe harbor" provisions of the Digital Millennium Copyright Act, putting procedures in place to respond appropriately to claims of infringement, and attempting to incorporate limitations on liability into our license agreements, we cannot guarantee that we will not be held liable under such claims or that we will not be required to indemnify a licensee held liable under such claims. If such claims are successfully enforced against us, our results of operations, financial position and ability to conduct our business could all be adversely affected.

**Our competition is well established in our industry**

The material handling automation market is extremely competitive. Our competitors offer a

7

variety of solutions addressed at various segments of the automation market. Businesses and activities in which these competitors engage include: providing automated guided vehicle systems; providing automatic storage and retrieval systems; and offering outsourced logistics management. Some of these competitors have longer operating histories, significantly greater financial, technical, marketing and other resources, and greater name recognition. There may also be unknown competitors who have better solutions available.

In addition, current and potential competitors may acquire or merge with other competitors or may establish cooperative relationships among themselves or with third parties to increase the ability of their products to address the needs of our prospective clients.

We intend to jointly market our products as a complement to certain of the systems referenced above. However, as we attempt to increase our market share and expand our product offerings, and as other vendors expand their own product offerings, our relationships with these vendors may become more competitive.

While we are aware of no direct competitor for our products that has successfully installed competing products at customer locations in the US, and our products are by their nature, "disruptive," it is likely that competition will emerge and will be intense.

**Scaling our sales of the Business' trucks may not be successful**

Although we have sold a total of 179 Seegrid -branded robotic trucks, we may not complete additional sales of the trucks in the future and any such sales may not occur in the volumes necessary for the Business to become profitable and sustain profitability on a long-term basis. Sales of the Business' trucks may be affected by the launch of branded products by our OEM partners if our distributors do not commit the necessary resources to promote sales.

**We may not be a disruptive technology**

While we believe that we have developed technology which, through its automatic nature and other features, disrupts the market and displaces alternative approaches, this may not be true. Customers purchasing services and products from our competitors may choose to continue to do so and others may choose to incur the costs and efforts required to deploy more traditional solutions.

## ANNEX C
## PRO-FORMA BALANCE SHEET

**See Attached**

## NEW SEEGRID CORPORATION
## OPENING BALANCE SHEET

| | Seegrid 08/31/14 | Giant Eagle Conversion | ADJ | Opening |
|---|---|---|---|---|
| **Current Assets** | | | | |
| Cash & Cash Equivalents | 121,929 | - | (71,929) | 50,000 |
| Restricted Cash Equivalent | 100,000 | - | - | 100,000 |
| Accounts Receivable | 458,776 | - | (408,776) | 50,000 |
| Stock Subscription Receivable | - | 5,418,000 | - | 5,418,000 (a) |
| Inventory | | | | |
| FIFO Inventories | 6,617,420 | - | (490,000) | 6,127,420 |
| GP8 Inventory-Chassis | - | - | (36,000) | (36,000) |
| PS0C Inventory-Chassis | - | - | - | - |
| S-Kit Inventory Build | - | - | - | - |
| Inventory Reserves | (2,306,135) | - | 1,556,135 | (750,000) |
| Prepaid Insurance | 17,352 | - | 112,648 | 130,000 |
| Prepaid Expenses | 117,218 | - | - | 117,218 |
| Total Current Assets | 5,126,560 | 5,418,000 | 662,078 | 11,206,638 |
| Plant, Equipment & Capital Leases | 2,615,591 | - | (2,123,127) | 492,464 |
| Accumulated Depreciation & Amortization | (2,078,372) | - | 2,078,372 | - |
| | 537,219 | - | (44,755) | 492,464 |
| **Other Assets** | | | | |
| Goodwill | - | - | - | - |
| Security Deposits | 20,981 | - | (20,981) | - |
| Total Other Assets | 20,981 | - | (20,981) | - |
| **TOTAL ASSETS** | 5,684,760 | 5,418,000 | 596,342 | 11,699,102 |
| **Current Liabilities** | | | | |
| Accounts Payable and Related | 2,383,258 | - | (2,383,258) | - |
| Accrued Expenses - Other | 284,743 | - | (284,743) | - |
| Accrued Expenses - Payroll | 340,249 | - | (160,249) | 180,000 |
| Accrued Expenses - PTO | 166,105 | - | (91,105) | 75,000 |
| Accrued Expenses - Interest | 7,715,729 | - | (7,715,729) | - |
| Deferred Revenue | 634,802 | - | (69,802) | 565,000 |
| Accrued Expenses - Warranty | 112,445 | - | - | 112,445 |
| Accrued Expenses - Other | 569 | - | 4,431 | 5,000 |
| Current Portion Promissory Notes | 44,560,253 | (4,582,000) | (39,328,253) | 650,000 (b) |
| Current Portion of Installment Loans & Capital Leases | 6,540 | - | (6,540) | - |
| Total Current Liabilities | 56,204,693 | (4,582,000) | (50,035,248) | 1,587,445 |
| **Noncurrent Liabilities** | | | | |
| Installment Loans & Capital Leases | 111,657 | - | - | 111,657 |
| Deferred Service Contract Revenue | 569,913 | - | (569,913) | - |
| Deferred Rent | - | - | - | - |

| | | | | |
|---|---|---|---|---|
| Total Noncurrent Liabilities | 681,570 | - | (569,913) | 111,657 |
| | | | | |
| Stockholders' Equity | | | | |
| Common Stock | 10,885 | - | (10,885) | - |
| Preferred Stock | 22,673 | 10,000,000 | (22,673) | 10,000,000 |
| Stock Warrants | 5,697,302 | - | (5,697,302) | - |
| Additional Paid Capital | 16,842,551 | - | (16,842,551) | - |
| Deferred Compensation | (58,333) | - | 58,333 | - |
| Accumulated Deficit | (73,716,581) | - | 73,716,581 | - |
| Total Stockholders' Equity | (51,201,503) | 10,000,000 | 51,201,503 | 10,000,000 |
| TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY | 5,684,760 | 5,418,000 | 596,342 | 11,699,102 |

| | |
|---|---|
| Giant Eagle Investment: | |
| Bridge Funding through 08/29/14: | |
| GE 29 - Funding - 07/01/14 | 350,000 |
| GE 30 - Funding - 07/09/14 | 440,000 |
| GE 31 - Funding - 07/23/14 | 138,000 |
| GE 32 - Funding - 08/05/14 | 275,000 |
| GE 33 - Funding - 08/21/14 | 251,000 |
| GE 34 - Funding - 09/03/14 | 698,000 |
| | 2,152,000 |
| | |
| DIP Funding: | |
| DIP Funding Proposed from Budget | 3,300,000 |
| Adjustment for Raymond Payment | (370,000) |
| Adjustment for Change in Vendor Payments from 75% to 50% | (500,000) |
| | 2,430,000 |
| Subscription Receivable (a) | 5,418,000 |

| | | |
|---|---|---|
| (b) Estimated Payables Notes | | 10,000,000 |
| Estimated Accounts Payable at closing | 2,400,000 | |
| Estimated Unvouchered Payables | 100,000 | |
| Estimated Other Payables | 100,000 | |
| Total Unsecured Creditors to Settle | 2,600,000 | |
| 50% of Creditors accepting 75% cash settlement | 975,000 | |
| 50% of Creditors accepting 50% cash settlement/50% note | | |
| Accepting 50% at closing (cash) | 650,000 | |
| Accepting 50% in 1 year (note) | 650,000 | |
| Total amount settled | 2,275,000 | |
| Amount not paid | 325,000 | |