**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| SEEGRID CORPORATION,[1] | Case No. 14-12391 (BLS) |
| Debtor. | |

### AFFIDAVIT OF SERVICE

| STATE OF NEW JERSEY | ) |
|---|---|
| | ) ss. |
| COUNTY OF ESSEX | ) |

I, Kathleen M. Logan, hereby certify:

1.  I am of legal age and I am not a party to this action.

2.  I am President of Logan & Company, Inc., located at 546 Valley Road, Upper Montclair, New Jersey, Balloting Agent for the above-captioned Debtor.

3.  On October 3, 2014 I caused copies of the following:

    - **Notification of Non-Voting Status for Classes 3 and 4 Pursuant to the Prepackaged Plan of Reorganization of Seegrid Corporation Under Chapter 11 of the Bankruptcy Code;**

    - **Offer Notice; Election Form; Annex A –Term Sheet; Annex B – Risk Factors; Annex C – Pro-Forma Balance Sheet;**

    - **pre-addressed return envelope; and**

    - **Disclosure Statement for Prepackaged Plan of Reorganization of Seegrid Corporation Pursuant to Chapter 11 of the United States Bankruptcy Code; Exhibit A – Prepackaged Plan of Reorganization; Exhibit B – Feasibility Analysis; Exhibit C – Liquidation Analysis** [Dkt. No. 10 and 11]

    to be served via U.S. first-class mail, postage-prepaid upon the parties listed on the Service List attached hereto as Exhibit A. The Notice of Non-Voting Status, Offer Notice, Election Form and Annex A to C are attached hereto as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NOT

Kathleen M. Logan

Sworn to before me this
16th day of December 2014

Notary Public

SYLWIA GRABOWSKI
Commission # 2447225
Notary Public, State of New Jersey
My Commission Expires
June 17, 2019

---

[1]  The last four digits of the Debtor's tax payer identification number are: 1133. The Debtor's address is 216 Park West Drive, Pittsburgh, PA 15275.

EXHIBIT A
SERVICE LIST

SEE_AA

**EXHIBIT A SERVICE LIST**

**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Class 3 and Class 4 and Indirect Shareholders]**

**DEBTOR: SEEGRID CORPORATION**                                    **CASE NO: 14-12391 (BLS)**

| | | |
|---|---|---|
| Creditor ID: 69-04<br>323 BOULEVARD ASSOC.<br>C/O JACK FRIEDMAN<br>5860 SOLWAY STREET<br>PITTSBURGH PA 15217 | Creditor ID: 78-05<br>323 BOULEVARD ASSOCIATES<br>C/O JACK FRIEDMAN<br>5860 SOLWAY STREET<br>PITTSBURGH PA 15217 | Creditor ID: 491-01<br>AARON KLEINER<br>KURZWEIL TECHNOLOGIES, INC.<br>16 WALNUT STREET<br>WELLESLEY HILLS MA 02481 |
| Creditor ID: 8-01<br>AARON KLEINER<br>KURZWEIL TECHNOLOGIES, INC.<br>15 WALNUT STREET<br>WELLESLEY HILLS MA 02481 | Creditor ID: 15-01<br>AARON MORRIS<br>3364 PARKVIEW AVENUE<br>PITTSBURGH PA 15213 | Creditor ID: 208-07<br>ABBY GOODMAN 2000 TRUST<br>CHARLES PORTER, TRUSTEE<br>5 HUNT CLUB LANE<br>PITTSBURGH PA 15215 |
| Creditor ID: 502-07<br>ABBY LYNN GOODMAN<br>51 HUNT CLUB DRIVE<br>PITTSBURGH PA 15215 | Creditor ID: 92-05<br>ADA FACCENDA<br>545 KINGSBERRY CIRCLE<br>PITTSBURGH PA 15234 | Creditor ID: 222-07<br>AL PULICE<br>5140 ASHBAUGH ROAD<br>MURRYSVILLE PA 15668 |
| Creditor ID: 51-03<br>AMY DYSON<br>13162 CAPSTONE DRIVE<br>SAN DIEGO CA 92130 | Creditor ID: 105-06<br>ANDREW PLEVIN<br>920 PARK AVE, #19B<br>NEW YORK NY 10028 | Creditor ID: 71-04<br>ANDREW PLEVIN<br>544 E. 86TH STREET, APT 10-E<br>NEW YORK NY 10028 |
| Creditor ID: 127-07<br>ANNA MARYE CARCIA<br>4610 WINTERBURN AVENUE<br>PITTSBURGH PA 15207 | Creditor ID: 45-90<br>ANTHONY HORBAL<br>1301 GRANDVIEW AVE, SUITE 220<br>PITTSBURGH PA 15211 | Creditor ID: 84-05<br>APRYLE ANNE HORBAL<br>1301 GRANDVIEW AVE, SUITE 220<br>PITTSBURGH PA 15211 |
| Creditor ID: 113-07<br>ARI ALLON<br>435 ABBEYVILLE RD.<br>APT 9<br>PITTSBURGH PA 15228 | Creditor ID: 68-04<br>ARTHUR GABRIEL, II<br>275 FLORAL HILL DRIVE<br>WASHINGTON PA 15301 | Creditor ID: 145-07<br>AVRUM M.GOLDBERG<br>2501 WISCONSIN AVE.<br>N.W. #308<br>WASHINGTON DC 20007 |
| Creditor ID: 498-02<br>AXXON ROBOTICS, LLC<br>1331 NW 17TH AVE.<br>PORTLAND OR 97209-2412 | Creditor ID: 39-02<br>AXXON ROBOTICS, LLC<br>C/O HENRY HILMAN, JR.<br>3304 S. E. BIDDLE ROAD<br>VANCOUVER WA 98684 | Creditor ID: 196-07<br>BARBARA MORAVITZ REILLY<br>1468 LAUREL DRIVE<br>SEWICKLEY PA 15143 |
| Creditor ID: 219-07<br>BARBARA PORTER HILL<br>8701 NORWOOD DRIVE<br>LEAWOOD KS 66206 | Creditor ID: 290-07<br>BARBARA WEIZENBAUM<br>208 HILLCREST ROAD<br>PITTSBURGH PA 15238 | Creditor ID: 268-07<br>BARRY L. STERN<br>245 W. 99TH STREET, #8B<br>NEW YORK NY 10025 |
| Creditor ID: 273-07<br>BEATRICE SUSAN<br>5205 WOODLAND DRIVE<br>WEST MIFFLIN PA 15122 | Creditor ID: 170-07<br>BELLENA KRANZLER-ROSS<br>14600 SUTTON STREET<br>SHERMAN OAKS CA 91403 | Creditor ID: 191-07<br>BEN MORAVITZ<br>216 LINDEN COURT<br>SEWICKLEY PA 15143 |

**EXHIBIT A SERVICE LIST**
**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Class 3 and Class 4 and Indirect Shareholders]**

**DEBTOR: SEEGRID CORPORATION**                                   **CASE NO: 14-12391  (BLS)**

Creditor ID: 31-02
BENJAMIN G. WILSON
PRINCIPAL, PEI FUNDS
2 GOLD STREET, APT 3207
NEW YORK NY 10038

Creditor ID: 497-02
BENJAMIN G. WILSON
PRINCIPAL, PEI FUNDS
424 WEST END AVE., APT. 8H
NEW YORK NY 10024

Creditor ID: 182-07
BERNARD MARCUS
MARCUS & SHAPIRA LLP
ONE OXFORD CENTER, 35TH FLOOR
PITTSBURGH PA 15219

Creditor ID: 144-07
BEZALEL GLEISER
MOBILE POST
EVTACH  79245
ISRAEL

Creditor ID: 272-07
BONNIE SUN
2026 HOBART BLVD.
LOS ANGELES CA 90027

Creditor ID: 7-01
BORISLAV DZODZO
138 PENN LEAR DRIVE
MONROEVILLE PA 15146

Creditor ID: 29-01
CARNEGIE MELLON UNIVERSITY
C/O ROBERT WOOLDRIDGE
CENTER FOR TECHNOLOGY TRANSFER
4615 FORBES AVENUE, SUITE 302
PITTSBURGH PA 15213

Creditor ID: 232-07
CAROL ROSENBLOOM
323 S. MURTLAND STREET
PITTSBURGH PA 15208

Creditor ID: 163-07
CHARITY IMBRIE
110 OLDE SAXONY TRAIL
CHESWICK PA 15024

Creditor ID: 12-01
CHARLES HOWELL
9211 MARY STREET
PITTSBURGH PA 15237

Creditor ID: 493-01
CHARLES HOWELL
RURAL ROUTE 2, BOX 384
FAIRMONT WV 26554

Creditor ID: 205-07
CHARLES M PORTER EXEMPT TRUST
CHARLES PORTER
5 HUNT CLUB LANE
PITTSBURGH PA 15215

Creditor ID: 204-07
CHARLES PORTER
5 HUNT CLUB LANE
PITTSBURGH PA 15215

Creditor ID: 17-01
CHRIS WHITE
4227 EL RANCHO DRIVE
ALLISON PARK PA 15101

Creditor ID: 277-07
CLIFF TIMKO
3408 TIMBERWOOD ROAD
MUNHALL PA 15120

Creditor ID: 162-07
CRAIG IGNATZ
8028 SADDLEWOOD DRIVE
BRIDGEVILLE PA 15017

Creditor ID: 221-07
CURTIS POULTON JR.
307 WINDJAMMER DR.
COLUMBIANA OH 44408-9662

Creditor ID: 146-07
DANIEL GOLDSTEIN
50855 WASHINGTON ST. C189
LA QUINTA CA 92253

Creditor ID: 165-07
DANIEL JARVIS
216 WHITEMARSH WAY
CHERRY HILL NJ 08034

Creditor ID: 226-07
DANIEL LOUIS REISNER
110 RIVERSIDE DRIVE
APT. 7E
NEW YORK NY 10024

Creditor ID: 179-07
DANIEL MAGRISH
160 WOODSHIRE ROAD
PITTSBURGH PA 15215

Creditor ID: 241-07
DANIEL SCHNORR
4800 SHAMROGUE COURT
ALLISON PARK PA 15101

Creditor ID: 44-02
DANIEL SHAPIRA
80 WOODLAND ROAD
PITTSBURGH PA 15232

Creditor ID: 244-07
DANNY SHAPIRA
MARCUS & SHAPIRA LLP
ONE OXFORD CENTER, 35TH FLOOR
PITTSBURGH PA 15219

Creditor ID: 54-03
DARLENE R. BERKOVITZ
166 NORTH DRIVE
PITTSBURGH PA 15232

Creditor ID: 136-07
DAVID DANIEL
13608 FERNLACE CT.
PICKERINGTON OH 43147

Creditor ID: 67-04
DAVID J. AND SUSAN F. KALSON
1974 BEECHWOOD BOULEVARD
PITTSBURGH PA 15217

**EXHIBIT A SERVICE LIST**
**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Class 3 and Class 4 and Indirect Shareholders]**

**DEBTOR: SEEGRID CORPORATION**　　　　　　　　　　　　　　　　**CASE NO: 14-12391  (BLS)**

Creditor ID: 180-07
DAVID MAGRISH
917 PARK PLAZA
WEXFORD PA 15090

Creditor ID: 185-07
DAVID MCGEARY
239 HIGHLAND AVENUE
NEW KENSINGTON PA 15068

Creditor ID: 213-07
DAVID PORTER
11217 MEADOW LANE
LEAWOOD KS 66211

Creditor ID: 245-07
DAVID SHAPIRA
111 HAWTHORNE ROAD
PITTSBURGH PA 15238

Creditor ID: 187-07
DEAN METROPULOS
2548 RED OAK CT.
ALLISON PARK PA 15101

Creditor ID: 227-07
DEBBIE RESNICK
200 HIGHLAND ROAD
PITTSBURGH PA 15238

Creditor ID: 230-07
DEBORAH L. ROBINSON
6 W. WOODLAND ROAD
PITTSBURGH PA 15232

Creditor ID: 246-07
DEBORAH SHAPIRA
(BARRY L. STERN)
245 W. 99TH STREET, #8B
NEW YORK NY 10025

Creditor ID: 218-07
DEBRA PORTER GILL
4244 WEST 113TH TERRACE
LEAWOOD KS 66211

Creditor ID: 229-07
DIANE ROBERTS
6021 JACKSON STREET
PITTSBURGH PA 15206

Creditor ID: 235-07
DIANE ROSS
45 HYACINTH LN
FAIRPORT NY 14450-9219

Creditor ID: 13-01
DOMENIC NIRO
RURAL ROUTE 2, BOX 384
FAIRMONT WV 26554

Creditor ID: 494-01
DOMENIC NIRO
9211 MARY STREET
PITTSBURGH PA 15237

Creditor ID: 86-05
DONNA ANDERSON HORBAL
1301 GRANDVIEW AVE., SUITE 220,
PITTSBURGH  PA 15211

Creditor ID: 291-07
DOUGLAS WELLS
318 NICHOLS ROAD
PITTSBURGH PA 15237

Creditor ID: 225-07
DR & MRS RICHARD REISNER
3026 CONGRESS STREET
ALLENTOWN PA 18104

Creditor ID: 188-07
ED MICHALEK
2321 WILLOW DRIVE
NORTH HUNTINGDON PA 15642

Creditor ID: 133-07
EDITH CUCURA
P.O. BOX 1552
212 PINECREST STREET
MAMOTH LAKES CA 93546

Creditor ID: 247-07
EDITH SHAPIRA
6550 BEACON STREET
PITTSBURGH PA 15217

Creditor ID: 267-07
EDWARD STEINMETZ
227 D'ORSAY VALLEY DRIVE
CRANBERRY TWP. PA 16066

Creditor ID: 258-07
ESTHER PEARL SHAPIRA-STERN
245 W. 99TH STREET, #8B
NEW YORK NY 10025

Creditor ID: 278-07
EUGENE W. TOMMASI
1155 WASHINGTON ROAD
PITTSBURGH PA 15228

Creditor ID: 155-07
FRANCIS GUNDERSEN
227 MEADOWBROOK DRIVE
CRANBERRY TWP. PA 16066

Creditor ID: 284-07
GARY & LOIS WEINSTEIN
537 N. NEVILLE STREET
UNIT 4-A
PITTSBURGH PA 15213

Creditor ID: 174-07
GARY LICHIUS
541 JAMES STREET
TURTLE CREEK PA 15145

Creditor ID: 66-04
GEFSKY & LEHMAN, INV. PT IV
C/O STEVEN CHERIN
STRASSBURGER MCKENNA, GUTNICK & GEFSKY
444 LIBERTY AVE, STE 2200, 4 GATEWAY CTR
PITTSBURGH PA 15222

Creditor ID: 47-03
GENCO I INC.
C/O RICK ROADARMEL
100 PAPERCRAFT PARK
PITTSBURGH PA 15238

**EXHIBIT A SERVICE LIST**

**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Class 3 and Class 4 and Indirect Shareholders]**

**DEBTOR: SEEGRID CORPORATION**                                          **CASE NO: 14-12391  (BLS)**

| | | |
|---|---|---|
| Creditor ID: 186-07<br>GEORGE MCGRADY<br>662 EDWARDS DRIVE<br>CARNEGIE PA 15106 | Creditor ID: 168-07<br>GERALDINE KAY<br>5821 FERREE STREET<br>PITTSBURGH PA 15217 | Creditor ID: 36-02<br>GESKY & LEHMAN INV. PRT IV<br>C/O STEVEN CHERIN<br>STRASSBURGER, MCKENNA, GUTNICK & GEFSKY<br>444 LIBERTY AVENUE, SUITE 2200<br>PITTSBURGH PA 15222 |
| Creditor ID: 43-02<br>GIANT EAGLE OF DE AS TRUSTEE<br>C/O GENERAL COUNSEL<br>GIANT EAGLE, INC.<br>101 KAPPA DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 77-05<br>GIANT EAGLE OF DELAWARE, INC.<br>C/O GENERAL COUNSEL<br>GIANT EAGLE, INC.<br>101 KAPPA DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 11-90<br>GIANT EAGLE, INC.<br>C/O GENERAL COUNSEL<br>101 KAPPA DRIVE<br>PITTSBURGH PA 15238 |
| Creditor ID: 211-07<br>GILLIAN TYSON PORTER<br>CHARLES PORTER, CUSTODIAN<br>5 HUNT CLUB LANE<br>PITTSBURGH PA 15215 | Creditor ID: 206-07<br>GILLIAN TYSON PORTER TRUST<br>U/A IRWIN W PORTER<br>CHARLES PORTER<br>5 HUNT CLUB LANE<br>PITTSBURGH PA 15215 | Creditor ID: 10-01<br>GREG VALENTINE<br>WELLS FARGO SECURITIES<br>2020 LOMBARDY CIRCLE<br>CHARLOTTE NC 28203 |
| Creditor ID: 214-07<br>GREGORY PORTER<br>C/O KAREN LEVITON<br>7933 ELECTRA DRIVE<br>LOS ANGELES CA 90046 | Creditor ID: 22-01<br>HAGOP ANTOUNIAN<br>48 WEBSTER ROAD<br>LEXINGTON MA 02421 | Creditor ID: 2-01<br>HANS MORAVEC<br>415 SOUTH MURTLAND STREET<br>PITTSBURGH PA 15208 |
| Creditor ID: 21-01<br>HEATHER KURTZ<br>10644 SILVERTHORN ROAD<br>EDINBORO PA 16412 | Creditor ID: 18-90<br>HERC MANAGEMENT SERVICES, LLC<br>1301 GRANDVIEW AVE, SUITE 220<br>PITTSBURGH PA 15211 | Creditor ID: 150-07<br>IDA GOODMAN<br>9403 N. RIVER BEND<br>MILWAUKEE WI 53217 |
| Creditor ID: 50-03<br>INNOVATION WORKS, INC.<br>C/O MATT HARBAUGH<br>2000 TECHNOLOGY DRIVE, SUITE 250<br>PITTSBURGH PA 15219 | Creditor ID: 82-05<br>J. PHILLIP COOPER<br>7 FIELDSTONE DRIVE<br>WINCHESTER MA 01890 | Creditor ID: 220-07<br>JACK E. POTTS<br>818 SWEETLEAF DRIVE<br>MONROEVILLE PA 15146 |
| Creditor ID: 139-07<br>JACK FLANAGAN<br>1249 BEVERLY ROAD<br>MCLEAN VA 22101 | Creditor ID: 203-07<br>JACK POMPOCO<br>224 TERREHILL DRIVE<br>CORTLAND OH 44410 | Creditor ID: 151-07<br>JACOB GOODMAN<br>541 6TH AVENUE<br>GARDEN APT.<br>BROOKLYN NY 11215 |
| Creditor ID: 209-07<br>JACOB GOODMAN 2000 TRUST<br>CHARLES PORTER, TRUSTEE<br>5 HUNT CLUB LANE<br>PITTSBURGH PA 15215 | Creditor ID: 282-07<br>JACOB WEINSTEIN<br>1200 S. NEGLEY<br>PITTSBURGH PA 15217 | Creditor ID: 94-05<br>JAMES & LINDA ROSENBLOOM<br>138 SPRINGHOUSE LANE<br>PITTSBURGH PA 15238 |
| Creditor ID: 25-01<br>JAMES FORKIN<br>3210 SHADYWAY DR.<br>PITTSBURGH PA 15227 | Creditor ID: 280-07<br>JAMES VOGT<br>768 SUNSET CIRCLE<br>CRANBERRY TWP. PA 16066 | Creditor ID: 119-07<br>JANE BARNES<br>110 OLDE SAXONY TRAIL<br>CHESWICK PA 15024 |

**EXHIBIT A SERVICE LIST**

**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Class 3 and Class 4 and Indirect Shareholders]**

**DEBTOR: SEEGRID CORPORATION**                                      **CASE NO: 14-12391  (BLS)**

| | | |
|---|---|---|
| Creditor ID: 189-07<br>JANET MILAN<br>252 HIGHBURY ROAD<br>CHESWICK PA 15024 | Creditor ID: 274-07<br>JANICE TALERICO<br>400 EASTERN AVENUE<br>PITTSBURGH PA 15215 | Creditor ID: 492-01<br>JEFFREY FARBACHER<br>512 LANGDON DR.<br>GIBSONIA PA 15044 |
| Creditor ID: 9-01<br>JEFFREY FARBACHER<br>1711 ROUTE 588<br>FOMBELL PA 16123 | Creditor ID: 142-07<br>JEFFREY GALMARINI<br>20 FAIRHILL DRIVE<br>NEW CASTLE PA 16105 | Creditor ID: 193-07<br>JENNIFER MORAVITZ<br>743 N. ORLANDO AVENUE<br>LOS ANGELES CA 90069 |
| Creditor ID: 248-07<br>JEREMY SHAPIRA<br>2901 SMALLMAN STREET, #3B<br>PITTSBURGH PA 15201 | Creditor ID: 223-07<br>JESSE REISNER<br>165 PROSPECT PARK WEST #26<br>BROOKLYN NY 11215 | Creditor ID: 249-07<br>JESSE SHAPIRA<br>THE MARLOWE<br>445 NORTH ROSSMORE AVE.,<br>#421<br>LOS ANGELES CA 90004 |
| Creditor ID: 171-07<br>JIM LAMPL<br>100 CENTRAL AVENUE<br>UNIT 714<br>SARASOTA FL 34236 | Creditor ID: 116-07<br>JODI APTER<br>2962 HIGHWAY Z<br>WENTZVILLE MO 63385-5411 | Creditor ID: 129-07<br>JODI CLARK<br>3408 WINDY HILL DRIVE<br>LOWER BURRELL PA 15068 |
| Creditor ID: 121-07<br>JOHN BIFULCO<br>1266 HOVERSHAM DRIVE<br>NEW PORT RICHEY FL 34655 | Creditor ID: 178-98<br>JOHN LUCOT<br>1783 DOMINION DRIVE<br>PITTSBURGH PA 15241 | Creditor ID: 19-01<br>JOHN S. MCCLOREY<br>389 EAST FOSTER ST<br>MELROSE MA 02176 |
| Creditor ID: 276-07<br>JOHN TEDESCO<br>3126 TALL OAK DRIVE<br>ALLISON PARK PA 15101 | Creditor ID: 114-07<br>JONATHAN ALLON<br>435 ABBEYVILLE RD.<br>APT.9<br>PITTSBURGH PA 15228 | Creditor ID: 27-01<br>JORDAN MEENEN<br>181 TOPSFIELD RD.<br>PITTSBURGH PA 15241 |
| Creditor ID: 138-07<br>JOSEPH FACCENDA<br>194 PORTOFINO DRIVE<br>NORTH VENICE FL 34275 | Creditor ID: 256-07<br>JOSEPH SCHMIDHOFER<br>EDITH SHAPIRA, CUSTODIAN<br>6550 BEACON STREET<br>PITTSBURGH PA 15217 | Creditor ID: 292-07<br>JOSEPH WINKLER<br>127 LOHENGRIN DRIVE<br>PITTSBURGH PA 15209 |
| Creditor ID: 250-07<br>JOSH SHAPIRA<br>530 LINDEN LANE<br>PITTSBURGH PA 15208 | Creditor ID: 194-07<br>JOY MORAVITZ<br>100 VISTA CIRCLE #501<br>PITTSBURGH PA 15238-6100 | Creditor ID: 297-07<br>JUDITH ZIBBELL<br>227 GLOXINA STREET<br>EN CINITAS CA 92024 |
| Creditor ID: 251-07<br>JULIA SHAPIRA<br>268 ELIZABETH STREET,<br>APT. 8<br>NEW YORK NY 10012 | Creditor ID: 173-07<br>KAREN LEVITON<br>7933 ELECTRA DRIVE<br>LOS ANGELES CA 90046 | Creditor ID: 199-07<br>KAREN ORWELL<br>3460 TALL OAKS LANE<br>YOUNGSTOWN OH 44511 |

**EXHIBIT A SERVICE LIST**
**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Class 3 and Class 4 and Indirect Shareholders]**

**DEBTOR: SEEGRID CORPORATION**                                    **CASE NO: 14-12391  (BLS)**

| | | |
|---|---|---|
| Creditor ID: 496-01<br>KATRINA WEISS<br>523 BROOK ST.<br>CARLISLE MA 01741-1605 | Creditor ID: 23-01<br>KATRINA WEISS<br>515 W MONUMENT ST., APT B<br>COLORADO SPRINGS CO 80905 | Creditor ID: 259-07<br>KAYLA AMITAL SHAPIRA-STERN<br>245 W. 99TH STREET, #8B<br>NEW YORK NY 10025 |
| Creditor ID: 261-07<br>KEVIN SHELTON<br>8666 OLD ORCHARD ROAD<br>WARREN OH 44484 | Creditor ID: 264-07<br>KEVIN SRIGLEY<br>155 LOGAN ROAD<br>GIBSONIA PA 15044 | Creditor ID: 28-01<br>KILEY BALDAUF<br>455 ALT 19, UNIT 158<br>PALM HARBOR FL 34683 |
| Creditor ID: 103-06<br>LARRY & ALICE BALDAUF<br>4108 KENNEDY DRIVE<br>BUTLER PA 16001 | Creditor ID: 228-07<br>LARRY REUSS<br>655 FIELD CLUB DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 243-07<br>LARRY SEVICH<br>11 RIDGECREST DRIVE<br>CHAGRIN FALLS OH 44022 |
| Creditor ID: 79-05<br>LATTERMAN FAMILY LTD PARTNERSHIP<br>C/O EARL LATTERMAN<br>5000 5TH AVENUE, #306<br>PITTSBURGH PA 15232 | Creditor ID: 166-07<br>LAURA KARET<br>608 SQUAW RUN ROAD EAST<br>PITTSBURGH PA 15238 | Creditor ID: 56-03<br>LAURA SZCZEPANIAK VALENTINE IRA<br>128 HAWTHORNE STREET<br>EDGEWOOD PA 15218 |
| Creditor ID: 159-07<br>LAUREN HOLLIS WEBSTER<br>3520 SOUTH WAKEFIELD AVENUE<br>ARLINGTON VA 22206 | Creditor ID: 97-05<br>LAWRENCE & ALICE BALDAUF JTWROS<br>4108 KENNEDY DRIVE<br>BUTLER PA 16001 | Creditor ID: 169-07<br>LAWRENCE KLOS<br>267 LILAC DRIVE<br>MONROEVILLE PA 15146 |
| Creditor ID: 89-05<br>LAWRENCE V MOWELL<br>10 COLONY ROAD<br>WEST HARTFORD CT 06117 | Creditor ID: 42-02<br>LEE SWENON VALENTINE<br>13162 CHELTENHAM DRIVE<br>SHERMAN OAKS CA 91423 | Creditor ID: 34-02<br>LEE VALENTINE, IRA<br>13162 CHELTENHAM DRIVE<br>SHERMAN OAKS CA 91423 |
| Creditor ID: 135-07<br>LINDA DANBY<br>1816 PINE MEADOW CIRCLE NW<br>MASSILLON OH 44646 | Creditor ID: 52-03<br>LISA GOLDMAN<br>200 E 10TH ST #115<br>NEW YORK NY 10003 | Creditor ID: 265-07<br>LORETTA STANISH<br>6524 DALZALL PL.<br>PITTSBURGH PA 15217 |
| Creditor ID: 201-07<br>LOUIS PLUNG<br>FOUR GATEWAY CENTER<br>9TH FLOOR<br>PITTSBURGH PA 15222 | Creditor ID: 263-07<br>M MICHELE SPONHOLZ<br>10207 COUNTRY MANOR LANE<br>WEXFORD PA 15090 | Creditor ID: 176-07<br>MARIA LISKO<br>109 HEATHER CREEK RUN<br>YOUNGSTOWN OH 44511 |
| Creditor ID: 252-07<br>MARIAM SHAPIRA<br>4028 CROMWELL AVENUE<br>LOS ANGELES CA 90027 | Creditor ID: 207-07<br>MARISA LEIGH PORTER TRUST<br>U/A IRWIN W PORTER<br>CHARLES PORTER<br>5 HUNT CLUB LANE<br>PITTSBURGH PA 15215 | Creditor ID: 215-07<br>MARISA PORTER<br>100A ALBANY STREET<br>PORTSMOUTH NH 03801 |

**EXHIBIT A SERVICE LIST**
**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Class 3 and Class 4 and Indirect Shareholders]**

**DEBTOR: SEEGRID CORPORATION**                                                          **CASE NO: 14-12391  (BLS)**

| | | |
|---|---|---|
| Creditor ID: 16-01<br>MARK FAURIE<br>4004 FREDRICKSBURG COURT<br>EXPORT PA 15632 | Creditor ID: 37-02<br>MARK FORWELL<br>54 BLUE SPRINGS DRIVE, APT 23<br>WATERLOO ON N2L 5T2<br>CANADA | Creditor ID: 190-97<br>MARK J. MINNAUGH<br>3219 ORCHARD DRIVE<br>ALLISON PARK PA 15101 |
| Creditor ID: 239-07<br>MARK SCHMIDHOFER<br>6550 BEACON STREET<br>PITTSBURGH PA 15217 | Creditor ID: 266-07<br>MARK STEBOR<br>234 ERIN DRIVE<br>CRANBERRY TWP. PA 16066 | Creditor ID: 294-07<br>MARK WOLFSON<br>4549 SALTSBURG ROAD<br>MURRYSVILLE PA 15668 |
| Creditor ID: 293-07<br>MARY WINSTON<br>43 LONG MEADOW DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 260-07<br>MATAN YOSEF SHAPIRA-STERN<br>245 W. 99TH STREET, #8B<br>NEW YORK NY 10025 | Creditor ID: 20-01<br>MELISSA MAIDA<br>803 CHERRY HILL DRIVE<br>PRESTO PA 15142 |
| Creditor ID: 14-01<br>MICHAEL CLARK<br>600 MCKINSEY PARK DRIVE<br>SEVERNA PARK MD 21146 | Creditor ID: 495-01<br>MICHAEL CLARK<br>3521 PINEY WOODS PLACE, APT F103<br>LAUREL MD 20724-5996 | Creditor ID: 149-07<br>MICHAEL GOLDSTEIN<br>78830 CASA DEL RIO<br>LA QUINTA CA 92253 |
| Creditor ID: 157-07<br>MICHAEL HAMED<br>714 EAST REYNOLDS STREET<br>NEW CASTLE PA 16101 | Creditor ID: 85-05<br>MICHAEL HORBAL<br>1301 GRANDVIEW AVE, SUITE 220<br>PITTSBURGH PA 15211 | Creditor ID: 181-07<br>MICHAEL MAGRISH<br>108 S. OAK HILL<br>PITTSBURGH PA 15238 |
| Creditor ID: 217-07<br>MICHAEL PORTER<br>1270 JOHNSON COURT<br>HOLLYWOOD FL 33019 | Creditor ID: 58-03<br>MILLENIUM TRUST CO. LLC CUST. FBO<br>LEE S SEP/IRAT, VALENTINE XXXX39488<br>2001 SPRING ROAD, SUITE 700<br>OAK BROOK IL 60523 | Creditor ID: 4-01<br>MITCHELL WEISS<br>523 BROOK STREET<br>CARLISLE MA 01741 |
| Creditor ID: 152-07<br>MOLLIE GOODMAN<br>75 WEBSTER STREET<br>SAN FRANCISCO CA 94117 | Creditor ID: 210-07<br>MOLLIE GOODMAN 2000 TRUST<br>CHARLES PORTER, TRUSTEE<br>5 HUNT CLUB LANE<br>PITTSBURGH PA 15215 | Creditor ID: 224-07<br>MOLLY REISNER<br>399 17TH STREET #1L<br>BROOKLYN NY 11215 |
| Creditor ID: 197-07<br>MOSHAV NIR-GALIM<br>MOBILE POST<br>EVTACH  79245<br>ISRAEL | Creditor ID: 192-07<br>MR & MRS EDWARD MORAVITZ<br>951 RED OAK DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 216-07<br>MR & MRS EDWARD PORTER<br>8158 DELMAR<br>PRAIRIE VILLAGE KS 66208 |
| Creditor ID: 183-07<br>MR & MRS JEFFREY MATES<br>134 MONTICELLO DRIVE<br>MONROEVILLE PA 15146 | Creditor ID: 128-07<br>MR & MRS JERRY CHAIT<br>605 WHISPERING PINES DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 285-07<br>MR & MRS SAMUEL WEINSTEIN<br>2833 STONELEIGH DRIVE<br>TOLEDO OH 43617 |

**EXHIBIT A SERVICE LIST**

**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Class 3 and Class 4 and Indirect Shareholders]**

**DEBTOR: SEEGRID CORPORATION**                                         **CASE NO: 14-12391  (BLS)**

| | | |
|---|---|---|
| Creditor ID: 115-07<br>MRS ALLAN APTER<br>5000 FIFTH AVENUE<br>APARTMENT 101<br>PITTSBURGH PA 15232 | Creditor ID: 296-07<br>MRS CHARLES ZIBBELL<br>C/O MS. JUDITH ZIBBELL<br>227 GLOXINA STREET<br>EN CINITAS CA 92024 | Creditor ID: 147-07<br>MRS MORRIS GOLDSTEIN<br>10 MISSION PALMS WEST<br>RANCHO MIRAGE CA 92270 |
| Creditor ID: 195-07<br>MRS STANLEY MORAVITZ<br>100 VISTA CIRCLE #501<br>PITTSBURGH PA 15238-6100 | Creditor ID: 234-07<br>MRS STANLEY ROSENBLOOM<br>147 HARTWOOD DRIVE<br>PITTSBURGH PA 15208 | Creditor ID: 40-02<br>MURRAY GOLDMAN<br>1125 SAVOY STREET<br>SAN DIEGO CA 92107 |
| Creditor ID: 286-07<br>NAN WEIZENBAUM<br>5879 DOUGLAS STREET<br>PITTSBURGH PA 15217 | Creditor ID: 238-07<br>NAOMI SAUNDERS<br>1537 4TH STREET #55<br>RAFAEL CA 94901 | Creditor ID: 287-07<br>NORMAN WEIZENBAUM<br>2308 EMBASSY<br>WEST PALM BEACH FL 33401 |
| Creditor ID: 288-07<br>NORMAN WEIZENBAUM<br>220 N. BELLFIELD AVENUE<br>APT. 1104<br>PITTSBURGH PA 15213-1468 | Creditor ID: 172-07<br>PATRICIA LEGAL<br>312 OAK RIDGE DRIVE<br>VENETIA PA 15367 | Creditor ID: 184-07<br>PATRICIA MCANLIS<br>525 STATE ROUTE 168<br>NEW GALILEE PA 16141 |
| Creditor ID: 26-01<br>PAUL GOYETTE<br>106 HEADWATERS ROAD<br>CENTERVILLE MA 02632 | Creditor ID: 198-07<br>PAUL OCH<br>5248 FIELDCREST DRIVE<br>PITTSBURGH PA 15236 | Creditor ID: 24-01<br>PHILIP RAUGHT<br>640 SEBRING RD<br>BEAVER PA 15009 |
| Creditor ID: 93-05<br>PORTER FAMILY  LTD PARTNERSHIP<br>C/O DAVID PORTER<br>11217 MEADOW LANE<br>LEAWOOD KS 66211 | Creditor ID: 212-07<br>PORTER FAMILY LIMITED PARTNERSHIP<br>DAVID PORTER<br>11217 MEADOW LANE<br>LEAWOOD KS 66211 | Creditor ID: 240-07<br>RACHEL SCHMIDHOFER<br>6550 BEACON STREET<br>PITTSBURGH PA 15217 |
| Creditor ID: 255-07<br>RALPH & HOLLY SHAPIRA<br>4435 CROMWELL AVENUE<br>LOS ANGELES CA 90027 | Creditor ID: 95-05<br>RANDY HEISER<br>5620 KINGS SCHOOL ROAD<br>BETHEL PARK PA 15102 | Creditor ID: 123-07<br>RAY BONACCI<br>107 NORTHGATE DRIVE<br>WEST MIFFLIN PA 15122 |
| Creditor ID: 125-07<br>RAY BURGO<br>1131 BROOKSHIRE DRIVE<br>NEW CASTLE PA 16101 | Creditor ID: 35-02<br>RAYMOND C. KURZWEIL<br>KURZWEIL TECHNOLOGIES, INC.<br>16 WALNUT STREET<br>WELLESLEY HILLS MA 02481 | Creditor ID: 161-07<br>RAYMOND HUBER<br>236 RIZZI DRIVE<br>IRWIN PA 15642 |
| Creditor ID: 490-01<br>RAYMOND KURZWEIL<br>KURZWEIL TECHNOLOGIES, INC.<br>15 WALNUT STREET<br>WELLESLEY HILLS MA 02481 | Creditor ID: 5-01<br>RAYMOND KURZWEIL<br>KURZWEIL TECHNOLOGIES, INC.<br>16 WALNUT STREET<br>WELLESLEY HILLS MA 02481 | Creditor ID: 262-07<br>RAYMOND SMALTZ<br>106 CRYSTAL SPRINGS<br>CRANBERRY TWP. PA 16066 |

**EXHIBIT A SERVICE LIST**

**Disclosure Statement for Prepackaged Plan of Reorganization Solicitation**
**[Holders of Class 3 and Class 4 and Indirect Shareholders]**

**DEBTOR: SEEGRID CORPORATION**                                   **CASE NO: 14-12391 (BLS)**

| | | |
|---|---|---|
| Creditor ID: 140-07<br>REID FLEMING<br>117 MOHAWK TRAIL DRIVE<br>PITTSBURGH PA 15235 | Creditor ID: 279-07<br>REZA VALI<br>5879 DOUGLAS STREET<br>PITTSBURGH PA 15217 | Creditor ID: 132-07<br>RICHARD B. COHEN<br>7 CORPORATE DRIVE<br>KEENE NH 03431 |
| Creditor ID: 233-07<br>RICHARD ROSENBLOOM<br>323 S. MURTLAND STREET<br>PITTSBURGH PA 15208 | Creditor ID: 175-07<br>RICK LICHTENFELS<br>3233 MCALISTER FARM LANE<br>ALLISON PARK PA 15101 | Creditor ID: 317-24<br>RICK RUSSELL<br>6524 DALZELL PLACE<br>PITTSBURGH PA 15217 |
| Creditor ID: 112-07<br>ROBERT ALLISON<br>3076 RAVINEVIEW CIRCLE<br>STOW OH 44224 | Creditor ID: 143-07<br>ROBERT GARRITY<br>100 LEBANON HILLS DR.<br>PITTSBURGH PA 15228-2138 | Creditor ID: 148-07<br>ROBERT GOLDSTEIN<br>56-125 RIVIERA<br>LA QUINTA CA 92253 |
| Creditor ID: 154-07<br>ROBERT GORBY<br>208 HILLCREST ROAD<br>PITTSBURGH PA 15238 | Creditor ID: 156-07<br>ROBERT GUY<br>204 MEADOWBROOK DRIVE<br>CRANBERRY TWP. PA 16066 | Creditor ID: 298-07<br>ROBERT H NIMTZ REVOCABLE TR. 2/28/10<br>MARINA TOWER #1401<br>1233 N. GULFSTREAM AVENUE<br>SARASOTA FL 34236 |
| Creditor ID: 53-03<br>ROBERT P. ZINN<br>166 NORTH DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 242-07<br>ROBERT SCHRECK<br>118 VALLEY FORGE DR.<br>CRANBERRY TWP. PA 16066 | Creditor ID: 283-07<br>ROBERT WEINSTEIN<br>717 FILBERT STREET<br>PITTSBURGH PA 15217 |
| Creditor ID: 3-01<br>ROBERT ZINN<br>166 NORTH DRIVE<br>PITTSBURGH PA 15238 | Creditor ID: 122-07<br>RONALD BLAZOSKY<br>210 SHANGRI-LA LANE<br>PITTSBURGH PA 15239 | Creditor ID: 96-05<br>RUSSELL ROSS<br>104 PINEHURST DRIVE<br>CRANBERRY TWP PA 16066 |
| Creditor ID: 117-07<br>SALLY LYNN APTER<br>206 ROSEWOOD CT.<br>VENETIA PA 15367-2374 | Creditor ID: 6-01<br>SAMUEL & GAEA LEINHARDT, JTWROS<br>4341 SCHENLEY FARMS TERRACE<br>PITTSBURGH PA 15213 | Creditor ID: 74-04<br>SAMUEL LEINHARDT<br>4341 SCHENLEY FARMS TERRACE<br>PITTSBURGH PA 15213 |
| Creditor ID: 126-07<br>SANDY BURGO<br>1131 BROOKSHIRE DRIVE<br>NEW CASTLE PA 16101 | Creditor ID: 289-07<br>SARA WEIZENBAUM<br>200 WEST 58TH STREET,<br>11C<br>NEW YORK NY 10019 | Creditor ID: 257-07<br>SARAH BETH SCHMIDHOFER<br>EDITH SHAPIRA, CUSTODIAN<br>6550 BEACON STREET<br>PITTSBURGH PA 15217 |
| Creditor ID: 253-07<br>SAUL SHAPIRA<br>2026 HOBART BOULEVARD<br>LOS ANGELES CA 90027 | Creditor ID: 30-02<br>SCOTT AND KATHLEEN FRIEDMAN, JTWROS<br>1693 HATHAWAY LANE<br>PITTSBURGH PA 15241 | Creditor ID: 1-01<br>SCOTT FRIEDMAN<br>1693 HATHAWAY LANE<br>PITTSBURGH PA 15241 |

**EXHIBIT A SERVICE LIST**

Disclosure Statement for Prepackaged Plan of Reorganization Solicitation
[Holders of Class 3 and Class 4 and Indirect Shareholders]

**DEBTOR: SEEGRID CORPORATION**                         **CASE NO: 14-12391  (BLS)**

Creditor ID: 134-07
SERGE PAUL CUCURA
P.O. BOX 1552
212 PINECREST STREET
MAMOTH LAKES CA 93546

Creditor ID: 281-07
SHARON WEBSTER
3520 S. WAKEFIELD STREET
ARLINGTON VA 22206

Creditor ID: 62-98
SHAUN K. DONNELLAN
1250 W SOUTHWINDS BLVD, APT 118
VERO BEACH FL 32963

Creditor ID: 500-04
SHAUN K. DONNELLAN
800 E. HOPKINS #B5
ASPEN CO 81611

Creditor ID: 32-02
STANDARD VENTURES, INC.
702 SOUTH LYNN STREET
CHAMPAIGN IL 61820

Creditor ID: 295-07
STEPHEN WRIGHT
11 COMMONS DRIVE
BRADFORD WOODS PA 15015

Creditor ID: 275-07
STEVE TASSARO
1 HIGHLAND CT
ROSSLYN FARMS PA 15106

Creditor ID: 130-07
STEVEN CLITES
785 15TH STREET
OAKMONT PA 15139

Creditor ID: 38-02
SUSAN F. AND DAVID J. KALSON
1974 BEECHWOOD BOULEVARD
PITTSBURGH PA 15217

Creditor ID: 164-07
SUSAN JANE JANSEN
10 MISSION PALMS WEST
RANCHO MIRAGE CA 92270

Creditor ID: 254-07
SUSIE SHAPIRA
10 E MISSION AVENUE
SAN RAFAEL CA 94901-4209

Creditor ID: 315-98
SYLVAN HOLSER
545 MIRANDA DRIVE
PITTSBURGH PA 15241

Creditor ID: 141-07
TINA FLOWERS
3155 SUNDANCE COURT
ALLISON PARK PA 15101

Creditor ID: 167-07
TOM KARET
608 SQUAW RUN ROAD EAST
PITTSBURGH PA 15238

Creditor ID: 202-07
TOM POMETO
126 CRESCENT DRIVE
TARENTUM PA 15084

Creditor ID: 131-07
VICTORIA CLITES
785 15TH STREET
OAKMONT PA 15139

Creditor ID: 124-07
VIRGINIA BROWN
1 MOUNT ROYAL COURT
PITTSBURGH PA 15223

Creditor ID: 499-03
W INVESTMENTS
1226 MARLWOOD TER.
CHARLOTTE NC 28209-1426

Creditor ID: 41-02
W INVESTMENTS
3201 WINDSOR DRIVE
CHARLOTTE NC 28209

Creditor ID: 120-07
WALTER R. BASHAW II
273 VEELYNN DR.
PITTSBURGH PA 15222

Creditor ID: 118-07
WILLIAM ARTMAN
3042 BERKELEY PL.
STOW OH 44227

Creditor ID: 153-07
WILLIAM GOODMAN
9403 N. RIVER BEND
MILWAUKEE WI 53217

Creditor ID: 177-07
WILLIAM LOWERY
3140 SOUTH RACCOON ROAD
CANFIELD OH 44406

Creditor ID: 231-07
WILLIAM M. ROBINSON ESQ.
REED SMITH LLP
225 FIFTH AVE.
PITTSBURGH PA 15222

Creditor ID: 200-07
WILLIAM PARRY
122 SOUTHVIEW RD.
MCDONALD PA 15057

**Total:   268**

EXHIBIT B
DOCUMENTS

SEE_AA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SEEGRID CORPORATION, | Case No. 14-_____-_____ |
| Debtor. | |

**NOTIFICATION OF NON-VOTING STATUS FOR CLASSES 3 AND 4PURSUANT
TO THE PREPACKAGED PLAN OF REORGANIZATION OF
SEEGRID CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

       Seegrid Corporation (the "Debtor") is soliciting votes with regard to accept or reject the Prepackaged Plan of Reorganization of Seegrid Corporation Under Chapter 11 of the Bankruptcy Code (the "Plan").[1]

       UNDER THE TERMS OF THE PLAN, AND IN ACCORDANCE WITH SECTION 1126(f) OF THE BANKRUPTCY CODE, HOLDERS OF CLAIMS OR INTERESTS IN CLASS 3-PREFERRED SHARE INTERESTS AND CLASS 4 – COMMON STOCK INTERESTS ARE DEEMED TO HAVE ACCEPTED THE PLAN AND ARE NOT ENTITLED TO VOTE.

       You are believed to be a holder of a Class 3 or 4 Claim and accordingly, you have not been provided a ballot for voting to accept or reject the Plan.A copy of the Plan and Disclosure Statement have been enclosed for your convenience.

       The United States Bankruptcy Court for the District of Delaware will schedule a hearing on the confirmation of the Plan (the "Confirmation Hearing").  You will receive separate notice of the Confirmation Hearing and the deadline by which you may file any objection to the confirmation of the Plan.

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed in the Plan.

Dated: October 3, 2014
Wilmington, Delaware

**BUCHANAN INGERSOLL & ROONEY PC**

James D. Newell (PA ID No. 51337)
Zakarij O. Thomas (PA Id No. 87385)
301 Grant Street, 20th Floor
One Oxford Centre
Pittsburgh, PA  15219
Telephone: (412) 562-8413
Facsimile: (412) 562 1041

-and-

Mary F. Caloway
Kathleen A. Murphy
919 N. Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Attorneys for Debtor Seegrid Corporation*

CONFIDENTIAL

THIS IS A NOTICE OF AN OPPORTUNITY TO PARTICIPATE IN THE CURRENT PROPOSED EQUITY FINANCING OF A NEWLY FORMED ENTITY ("NEW SEEGRID CORPORATION") AS DESCRIBED BELOW AND IS NOT AN OFFER TO SELL SECURITIES IN ANY JURISDICTION WHERE THE OFFER OR SALE IS NOT PERMITTED. THERE IS NO GUARANTEE THAT THE BANKRUPTCY COURT WILL APPROVE THE PLAN (AS DEFINED HEREIN). YOU HAVE NO RIGHTS IN SUCH PROPOSED FINANCING, AND/OR IN ANY SECURITIES TO BE OFFERED OR SOLD, UNTIL THE PLAN IS APPROVED BY THE BANKRUPTCY COURT. UPON THE APPROVAL OF THE BANKRUPTCY COURT, THE ELECTION FORM IS A BINDING OBLIGATION ON YOUR PART TO ACQUIRE NEW SECURITIES IN NEW SEEGRID CORPORATION. IF THE BANKRUPTCY COURT DOES NOT APPROVE THE PLAN, THE OFFERING SHALL BE WITHDRAWN WITHOUT FURTHER LIABILITY OR OBLIGATION TO NEW SEEGRID CORPORATION. BY EXECUTING THE ELECTION FORM, YOU ARE REPRESENTING TO NEW SEEGRID CORPORATION THAT YOU ARE AN ACCREDITED INVESTOR AS SUCH TERM IS DEFINED IN THE SECURITIES ACT OF 1933, AS AMENDED. NEW SEEGRID CORPORATION RESERVES THE RIGHT TO REJECT ANY PARTICIPATION THAT DOES NOT CONFORM TO APPLICABLE LAWS OR REGULATIONS. NEW SEEGRID CORPORATION RESERVES THE SOLE AND ABSOLUTE RIGHT TO REJECT OR NOT ACCEPT ANY PARTICIPATION THAT DOES NOT CONFORM TO THE REQUIREMENTS OF THE REQUIRED DOCUMENTATION.

## NEW SEEGRID CORPORATION
## OFFER NOTICE
October 3, 2014

Seegrid Corporation ("Seegrid Holdings") is preparing to file a Prepackaged Plan of Reorganization of the Corporation pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan"). This Offer Notice is being sent to you in connection with the Plan and its accompanying materials, including a detailed disclosure statement (the "Disclosure Statement"). As part of the Plan, Seegrid Holdings' operating assets are being transferred to a newly formed wholly-owned subsidiary ("New Seegrid Corporation"). You, as a Seegrid Holdings debt holder or direct or indirect stockholder (each an "Investor" and collectively the "Investors"), are being offered the opportunity to participate in the offering of New Seegrid Corporation's Series A Preferred Stock as described herein (the "Offering"). This Offering is non-transferrable. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Disclosure Statement or the Plan.

New Seegrid Corporation is offering to sell shares of Series A Preferred Stock. The shares of Series A Preferred Stock proposed to be issued are referred to herein as the "New Securities." Additional terms and conditions of the proposed sale of New Securities are set forth in the Term Sheet attached hereto as **Annex A** (the "Term Sheet") and incorporated herein. Each Investor has the right to acquire New Securities as described below (the "Purchase Right").

**The Offering**

On or prior to the Effective Date, Seegrid Holdings shall form New Seegrid Corporation, a wholly-owned Delaware "C" corporation subsidiary to which Seegrid Holdings shall convey: (i) all of its operating assets, including without limitation, its intellectual property and the name

"Seegrid"; (ii) its post Commencement Date operating liabilities; and (iii) its employees. In exchange for its contribution to New Seegrid Corporation, Seegrid Holdings shall receive 11.25 million shares of New Seegrid Corporation common stock.

On the Effective Date, all indebtedness of Seegrid Holdings to Giant Eagle for borrowed money arising after June 11, 2014, including Giant Eagle's First Priority Secured Bridge Noteholder Claims and Third Priority Secured Bridge Noteholder Claims, and any indebtedness under the DIP Credit Agreement, shall be converted dollar for dollar into Series A Preferred Shares of New Seegrid Corporation. Such Series A Preferred Shares shall have the rights and preferences reflected in the Term Sheet. To the extent that the Giant Eagle debt converted hereunder is less than $10 million, for a period of one year after the Effective Date, Giant Eagle shall have the right to purchase such additional Series A Preferred Shares in New Seegrid Corporation to enable it to have a total of $10 million in Series A Preferred Shares of New Seegrid Corporation (the "Additional Securities"). To the extent that New Seegrid Corporation meets certain agreed-upon projections following confirmation of the Plan, Giant Eagle has agreed to purchase the Additional Securities to fund New Seegrid Corporation's post-reorganization operations. **Except to the extent described in the previous sentence, Giant Eagle is under no obligation to continue to provide funding to New Seegrid Corporation, if any such additional funding is required, and there can be no assurance that Giant Eagle will make any additional financing available to New Seegrid Corporation or, if it does, that New Seegrid Corporation and Giant Eagle will be able to negotiate acceptable terms for such financing.**

Additional Series A Shares in New Seegrid Corporation beyond the $10 million of Series A Shares available to Giant Eagle are being offered to the Investors in at least an amount that allows the Investors to maintain their direct and indirect pro rata share of New Seegrid Corporation on a fully diluted, as converted basis (the "Minimum Investment Amount"), or such larger amount as the Board of Seegrid Holdings may determine. Investors interested in participating in the Offering are encouraged to indicate the maximum amount they wish to invest on the accompanying Election Form.

Giant Eagle and each Investor who purchases Series A Preferred Shares in New Seegrid Corporation shall also receive a warrant to purchase additional Series A Preferred Shares in New Seegrid Corporation at $1.00 per share in an amount equal to the amount invested in Series A Preferred Shares of New Seegrid Corporation. Such warrant shall be exercisable up to and including the second anniversary of the Effective Date of the Plan.

**The sale, transfer or other disposition of the New Securities purchased pursuant to this Offering is restricted by applicable federal and state securities law. This Offering is made, and sales of the New Securities will be made, only to persons whom New Seegrid Corporation believes to be "Accredited Investors" (as such term is defined in Regulation D promulgated under the Securities Act of 1933, as amended). The New Securities offered hereby are highly speculative and involve a high degree of risk and should not be purchased by anyone who cannot afford the loss of his or her entire investment.**

If you elect to exercise your Purchase Right, closing on your purchase of New Securities will occur concurrently with, or promptly following, confirmation of the Chapter 11 Case. Closing documents, including a Subscription Agreement, a Shareholders Agreement, a Registration Rights Agreement, and such other documents as are reasonably required to complete your purchase of the New Securities and reflecting the terms set forth on **Annex A** hereto, will be provided to you in advance of closing (the "Investment Agreements").

In connection with your evaluation of a purchase of New Securities, in addition to the Disclosure Statement and the Plan, you should also carefully review the Term Sheet, the Risk Factors attached as **Annex B** and the pro forma balance sheet for New Seegrid Corporation attached as **Annex C.**

In the event the Plan is not approved by the Seegrid Holdings Board and confirmed by the Bankruptcy Court, this Offering shall terminate and your right to acquire the New Securities shall be null and void.

## NEW SEEGRID CORPORATION

### ELECTION FORM

If you wish to participate in the Offering, please complete this Election Form, sign where indicated, and fax or email a copy to Logan & Company, Inc. at (973) 509-1131, Attn: SEEGRID BALLOTING DEPARTMENT SEEGRID@LOGANANDCO.COM, no later than 5:00 P.M. (prevailing Eastern Time) on October 17, 2014. If you fail to adhere to this deadline, you will not be able to participate in the Offering.

## WAIVER

☐   No, I do not wish to exercise my Purchase Right (as described in the Offer Notice, the terms of which are incorporated herein by reference) over any of the New Securities, and by checking this box I am waiving such Purchase Right. I waive any right to further notice, and any additional time to consider participation in such transaction upon modifications to the terms of the New Securities or the Plan.

## ACCEPTANCE NOTICE

☐   Yes, I wish to exercise my Purchase Right over the New Securities, in the amount set forth below. I acknowledge and agree that this Election Form is a binding agreement to acquire the New Securities. I represent that I am an accredited investor as defined in the Securities Act of 1933, as amended. Upon the confirmation of the Plan by the Bankruptcy Court, I will be required to purchase the New Securities and execute and deliver the Investment Agreements.

The undersigned Investor hereby exercises his, her or its right to purchase the following amount of New Securities:

$\quad\quad\quad\quad$ \$_____

The undersigned acknowledges that, in the event he, she, or it has exercised the right to purchase more than his, her or its Minimum Investment Amount, Seegrid Holdings and New Seegrid Corporation reserve the right to reduce the amount of New Securities to be sold to the undersigned, but not below the undersigned's Minimum Investment Amount.

Acknowledgement.   The undersigned acknowledges that he, she or it has fully read the related Offer Notice, the attached Risk Factors, the Disclosure Statement and attachments to it, and understands the terms and conditions of the proposed offer and sale of New Securities and all other material terms and conditions thereof.

Investor Name: _____

Signature:_____

Date:_____

Name of authorized signatory (if different from Investor Name):_____

Title (if applicable):_____

ANNEX A

**Summary of the Series A Convertible Preferred Stock Rights and Preferences**
**of**
**New Seegrid Corporation**

**October 2, 2014**

| | |
|---|---|
| *Company:* | [New Seegrid Corporation], a to-be-formed Delaware corporation (the "Company"). It is anticipated that New Seegrid Corporation will be renamed "Seegrid Corporation" following consummation of the Plan. |
| *Price Per Share:* | $1.00 per share.  The price per share represents a Company pre-investment valuation of $15 million, on Fully-Diluted Basis (as defined below). |
| *Type of Security:* | Series A Preferred Stock, par value $0.001 per share ("Series A Preferred"), ranking senior to the common stock, par value $0.001 per share, of the Company ("Common Stock"). |
| *Initial Capitalization of New Seegrid Corporation (Common Stock, Equity Incentive Plan, and Giant Eagle Series A Preferred):* | Upon the consummation of the Plan:<br><br>• 11.25 million shares of Common Stock will be issued to existing Seegrid Corporation (for purposes of this summary, "Seegrid Holdings") representing 45% of the Company's Common Stock outstanding on a "Fully-Diluted Basis" (calculated as all shares of Common Stock outstanding, all shares of Common Stock issuable upon conversion of outstanding Series A Preferred Stock, and all outstanding options and warrants, on an as-exercised basis);<br><br>• 3.75 million shares of Common Stock will be reserved for issuance under an equity incentive plan to be adopted by the Company's Board of Directors (the "Equity Incentive Plan") representing 15% of the Company on a Fully-Diluted Basis; and<br><br>• 10 million shares of Series A Preferred will be made available to Giant Eagle, Inc. ("GE") representing 40% of the Company on a Fully-Diluted Basis when fully subscribed. |
| *Additional Shares of Series A Preferred; Warrants* | Additional shares of Series A Preferred Stock beyond the $10 million of Series A Preferred Stock made available to GE will be offered to Seegrid Holdings' other direct and indirect stockholders and debt holders ("Investors") in an amount that allows the Investors to maintain their direct and indirect pro rata share of the Company on a Fully-Diluted Basis or such larger amount as the Board of Seegrid Holdings may determine.  Any issuance of such additional shares of Series A Preferred Stock will dilute proportionally the percentage of capital stock held by Seegrid Holdings and GE and reserved for issuance under the Equity Incentive Plan.<br><br>GE and each Investor will receive a warrant to purchase additional shares of Series A Preferred Stock at an exercise price of $1.00 per share in an amount equal to the amount invested by GE or such |

Investor in Series A Preferred Stock. Such warrant shall be exercisable up to and including the second anniversary of the consummation of the Plan. Any exercise of such warrants will dilute proportionally the percentage of capital stock held by Seegrid Holdings, GE and the Investors and reserved for issuance under the Equity Incentive Plan.

*Certificate of Incorporation:*

The Company's Certificate of Incorporation (the "Certificate") will include the following provisions:

*Dividends:*

Holders of Series A Preferred Stock will be entitled to receive cumulative dividends at the rate of 8% of the Original Issue Price per annum, payable (a) prior to and in preference to any declaration or payment of dividends to holders of Common Stock, or (b) in the event of a liquidation, dissolution, or winding up of the Company, or a Mandatory Redemption Event (as defined below). In addition, prior to the consummation of a Qualified Public Offering (as defined below), holders of Series A Preferred Stock have a right to participate with the holders of the Common Stock on an as-converted basis as to any such dividends declared or paid to the holders of the Common Stock.

"Qualified Pubic Offering" means an underwritten public offering of shares of Common Stock, by a nationally recognized investment banking firm, where the shares are listed on a nationally recognized securities exchange, at a price per share of at least equal to three times the Original Purchase Price of Series A Preferred Stock, (as adjusted for stock splits, stock dividends, combinations, or recapitalizations) with gross proceeds to the Company of not less than $50 million.

*Liquidation Preference:*

Upon any liquidation, dissolution or winding up of the Company, each holder of Series A Preferred Stock will be entitled to receive prior and in preference to, any distribution with respect to the Common Stock, an amount in cash equal to the Original Issue Price (as adjusted for stock splits, stock dividends, combinations, or recapitalizations) plus all accrued and unpaid dividends (the "Liquidation Preference"). After payment of the Liquidation Preference to the holders of Series A Preferred Stock the remaining assets of the Company, if any, will be distributed ratably to the holders of Common Stock.

Unless the holders of a 66⅔% of the Series A Preferred Stock then outstanding, elect otherwise, a merger, consolidation, sale of assets or other transaction in which control of the Company is transferred will be deemed to be a liquidation, dissolution, or winding up for purposes of the Liquidation Preference.

*Voluntary Conversion:*

A holder of Series A Preferred Stock will have the right at any time after the date of issuance to convert the holder's Shares into shares of Common Stock (the "Conversion Shares"). Shares of Series A Preferred Stock initially are convertible into shares of Common Stock on a 1:1 basis, and thereafter are convertible at the then applicable conversion price (see "**Antidilution Protection**" below). Upon any voluntary conversion, any accrued and unpaid dividends will be canceled.

- 2 -

| | |
|---|---|
| *Automatic Conversion:* | The Series A Preferred Stock will be automatically converted into Common Stock, at the then applicable conversion price (see "**Antidilution Protection**" below), (a) in the event of a Qualified Public Offering, or (b) in the event that the holders of a majority of the outstanding Series A Preferred Stock consent to such conversion. Upon any automatic conversion, any accrued and unpaid dividends will be canceled. |
| *Antidilution Protection:* | The conversion price of the Series A Preferred Stock will be subject to adjustment (a) for stock splits, stock dividends, combinations, recapitalizations, or similar events, and (b) on a broad-based weighted average basis to reduce dilution in the event that the Company issues additional equity securities (subject to certain customary exceptions) at a purchase price per share less than the applicable conversion price of Series A Preferred Price immediately prior to such issuance. |
| *Voting Rights:* | The holders of Series A Preferred Stock will vote together with the holders of Common Stock, and not as a separate class, except with respect to the election of directors and as specifically provided in "**Protective Provisions**" below or as otherwise required by applicable law or the terms of the Series A Preferred Stock and Existing Preferred Stock. |
| *Protective Provisions Preferred:* | The affirmative vote or consent of the holders of a majority of the outstanding shares of Series A Preferred Stock will be required for any action which: (i) amends the Certificate in a manner requiring a class vote of the Series A Preferred Stock pursuant to Section 242 of the General Corporation Law; (ii) otherwise alters or changes the powers, preferences or special rights of the Series A Preferred Stock so as to affect them adversely (including by amendment to the Company's Bylaws); (iii) increases the authorized number of shares of Series A Preferred Stock; (iv) creates any class or series of stock which is senior to or has preference over the Series A Preferred Stock; (v) effects a merger of the Company with another corporation in which the Company is not the surviving corporation or effects the sale of the Company or substantially all of its assets; (vi) effects a reclassification or recapitalization of the outstanding capital stock of the Company into shares of capital stock senior to or having preference over the Series A Preferred Stock; (vii) effects the repurchase of Series A Preferred Stock on terms not available to all holders of Series A Preferred Stock (viii) effects a transaction with "affiliates" (as such term is defined in Rule 405 of the Securities Act); (ix) effects the payment of cash dividends by the Corporation, (x) increases the number of shares of capital stock available for issuance under the Equity Incentive Plan, creates any other equity or equity-based incentive plan for management, employees, consultants or directors, or otherwise effects the issuance of any equity, instruments convertible to equity, or equity-based incentives to management, employees, consultants or directors other than through the Equity Incentive Plan; (xi) effects the incurrence of debt for borrowed money, other than trade debt in the ordinary course of the Company's business; or (xii) effects the grant of any security interest in the Company's assets. |

- 3 -

*Series A Preferred Subscription Agreement:*

Purchasers of Series A Preferred Stock will enter into the Series A Preferred Stock Subscription Agreement, which will include fundamental representations and warranties and closing conditions, but otherwise will reference the Disclosure Statement.

*Registration Rights Agreement:*

In connection with the financing, purchasers of Series A Preferred Stock will enter into a Registration Rights Agreement (the "Registration Rights Agreement"), which will include the following provisions:

*Registration Rights:*

Demand Registration Rights:  Subject to the conditions described below, the holders of Registrable Securities will be entitled to two demand registrations at any time on or after the earlier of (a) _____ ___, 2019 [**the 5th anniversary of the initial issuance of Series A Preferred Stock**] or (b) 180 days after consummation of the Company's initial public offering pursuant to an effective registration statement ("IPO").  These demand registration rights may only be exercised if one or more holders of Series A Preferred Stock holding more than 66⅔% of the outstanding shares of Series A Preferred Stock on an as-converted basis (including for this purpose any shares of Common Stock issued in connection with the conversion of such shares of Series A Preferred Stock (the "Conversion Shares")) request that the Company file a registration statement under the Securities Act.  In the event of a request *after* an IPO, such demand registration must cover at least 40% of the then outstanding Registrable Securities (as defined below) held by the initiating holder(s) and having an aggregate offering price to the public of not less than $3,000,000.  After _____ ___, 2019 and *prior* to an IPO, a demand for registration may only be made if (a) the anticipated aggregate price to the public would equal or exceed $20 million, (b) the proposed public offering would be underwritten by a nationally recognized investment banking firm and cover at least a majority of the then outstanding Registrable Securities, and (c) the shares offered would be listed on a nationally recognized securities exchange.

"Registrable Securities" means (a) any Conversion Shares, (b) any shares of Common Stock owned by any holder of Series A Preferred Stock, and (c) any shares of Common Stock subsequently issued to such holders on conversion of other securities, or in a merger, reorganization, as a stock dividend, or similar events.

The Company will use its commercially reasonable efforts to cause such shares to be registered, subject to the right of the Company and its underwriters to reduce the number of shares proposed to be registered pro rata in view of market conditions with preference in such cut-backs to be given to holders of Conversion Shares.  The Company has the right to delay such registration under certain circumstances for a reasonable period in any 12 month period.  The Company will not be obligated to effect a registration during the 180 day period commencing with the effective date of any registration statement filed in connection with any public offering of Common Stock or if it delivers written notice to the holders of the Registrable Securities, within 30 days of any registration demand, of its intent to

file a registration statement with 120 days.

Other Registration Rights. The holders of Registrable Securities will be entitled to (a) unlimited piggyback registrations (as to offerings for the account of the Company or any other party), subject to the right of the Company and its underwriters to reduce the number of shares proposed to be registered in view of market conditions, with preference in such cut-backs being given to the Company and then to holders of Conversion Shares, and (b) unlimited S-3 registrations provided the aggregate price to the public would equal or exceed $1,000,000. The Company will bear registration expenses (exclusive of underwriting discounts and commissions) of all such demand, piggyback, and S-3 registrations. Piggyback registration rights will not apply to an IPO with gross aggregate proceeds to the Company, before deducting underwriting commissions, of more than $25,000,000.

Lock-Up Provision. Except as otherwise contemplated by the provisions of the Registration Rights Agreement, each holder of Registrable Securities will agree not to sell its shares for a specified period (but not to exceed 180 days) in connection with each registration statement.

***Stockholders' Agreement:*** In connection with the financing, Seegrid Holdings and the purchasers of Series A Preferred Stock will enter into a Stockholders Agreement (the "Stockholders' Agreement"), which will include the following provisions:

1. Right of First Refusal. If any stockholder who is party to the Stockholders' Agreement desires to sell, transfer, or hypothecate any or all of its shares to a third party (other than to a Permitted Transferee (as defined in the Stockholders' Agreement)), such holder must first offer such shares to the Company and then to each Major Holder.

"Major Holder" means Seegrid Holdings, for so long as Seegrid Holdings holds shares of Common Stock representing 5% or more of the issued and outstanding shares of Common Stock, and each holder of shares of Series A Preferred Stock (whenever purchased) representing 5% or more of the issued and outstanding shares of Series A Preferred Stock.

2. Participation Rights. The Major Holders will have the right to participate in any future sale of equity securities by the Company and will have the right to subscribe for and purchase such securities on a *pro rata* basis, subject to certain customary carve-outs. Seegrid Holdings will have the right, but not the obligation, to assign the Seegrid Holdings participation right to its stockholders and note holders on such basis as the board of directors of Seegrid Holdings may reasonably determine.

3. Right of Co-Sale. Major Holders will have a right to participate *pro rata* (on the basis of outstanding shares of Series A Preferred Stock and Common Stock) in transfers of Common Stock by any holder of Common Stock for value, subject to certain customary carve-outs.

- 5 -

4. <u>Bring-Along Right</u>. If holders of at least 66⅔% of all of the then outstanding shares of Series A Preferred Stock and at least a majority of the then outstanding shares of the Company's Common Stock, voting as separate classes, propose to sell all shares of Preferred Stock and Common Stock then held by them to a third party, then at the request of such holders, all of the parties to the Stockholders' Agreement (including the holders of Series A Preferred Stock) will be obligated to sell their shares in the proposed transaction on the same terms and conditions.

5. <u>Agreement to Vote Shares</u>. If, at any time prior to the commencement of trading of the Company's Common Stock in the over-the-counter market or on any national securities exchange, holders of at least 66⅔% of the Series A Preferred Stock and at least a majority of the Company's Common Stock, voting as separate classes, propose that the Company sell, convey, lease or exchange all or substantially all of its assets in an arm's length, <u>bona fide</u> transaction with a third party or engage in a merger, business combination or other transaction with substantially the same effect, then all of the parties to the Stockholders' Agreement (including the holders of Series A Preferred Stock) will be required to vote their shares in favor of the transaction. Each stockholder will also waive appraisal right available under Delaware law in connection with such a transaction to the extent permitted by law.

|  |  |
|---|---|
| ***Information Rights and Inspection Rights:*** | Major Holders will have the following information and inspection rights: |

<u>Information Rights</u>. The Company will deliver to each Major Holder copies of its annual financial plan for the upcoming fiscal year, in reasonable detail, and broken down on a monthly basis. Each Major Holder also will be entitled to receive (i) unaudited, and if requested by certain Major Holders, audited annual financial statements (audited by an accounting firm acceptable to the non-management directors) within 90 days after the end of each fiscal year, and (ii) unaudited quarterly financial statements within 45 days after the end of each fiscal quarter.

<u>Inspection Rights</u>. Each Major Holder will also be entitled to standard inspection and visitation rights.

***Board of Directors:***

The Company's Board of Directors shall consist of up to 7 directors. These directors must be designated as follows:

- Up to four (4) directors designated by GE;

- Up to two (2) directors designated by Seegrid Holdings one of whom will be Dr. Hans Moravec for so long as he is employed by the Company; and

- The Company's Chief Executive Officer.

After a Qualified Public Offering, director nomination rights will be held by majority vote of the Board.

***Termination of Stockholders Agreement:***

Unless sooner terminated in accordance with their terms, the provisions of the Stockholders' Agreement will terminate upon the earlier of (a) the consummation of a Qualified Public Offering or (b) the consummation of any other initial public offering if upon or prior thereto all shares of Series A Preferred Stock have been converted into Common Stock.

## ANNEX B
## RISK FACTORS

*The New Securities offered hereby are highly speculative and involve a high degree of risk. Each Investor should carefully consider the following risk factors before making an investment decision. Capitalized terms used herein have the meanings given them in the Offer Notice to which these risk factors are attached.*

*The following contains forward looking statements and information that is based on management's belief as well as assumptions made by and information currently available to management. When used herein, words such as "anticipate," "believe," "estimate," "expect" and depending on the context, "will," "intends" and similar expressions are intended to identify forward looking statements. Such statements reflect Seegrid Holdings' current assumptions with respect to future events and are subject to certain risks, uncertainties and further assumptions, including the specific risk factors described herein. If one or more of these risks or uncertainties materialize, or if underlying assumptions prove incorrect, actual results may vary materially from those anticipated, believed, estimated or expected.*

*Please note that, unless otherwise indicated or the context requires otherwise, when we use the terms "we," "our," or "us," we mean the historical operation of the Business (as defined below) by Seegrid Holdings as well as the anticipated continued operation of the Business by New Seegrid Corporation following the proposed reorganization. The statements made herein assume the transfer of the Assets and related operations to New Seegrid Corporation.*

As part of the Plan, Seegrid Holdings is transferring all of its operations and assets to New Seegrid Corporation (the "Business"). The Business, as operated by New Seegrid Corporation, may face many of the same operating issues that the Business, as operated by Seegrid Holdings, has faced in the past. In addition to reviewing the Disclosure Statement, the Plan and the Risk Factors included as part of the Disclosure Statement, potential Investors should also consider the risk factors below. The below risk factors include new risk factors that the Business may face, as well as the Business' continued risk factors.

**New Seegrid Corporation's ability to continue as a going concern may be dependent on its ability to raise capital.**

To the extent that New Seegrid Corporation meets certain agreed-upon projections following confirmation of the Plan, Giant Eagle has agreed to purchase the Additional Securities. It is anticipated that such post-reorganization financing, along with any additional funds raised in the Offering, will be sufficient to allow New Seegrid Corporation to continue operations without the need to raise additional capital. If, however, New Seegrid Corporation does not meet the agreed-upon projections or requires additional capital to continue operations beyond a certain point, there can be no assurances that New Seegrid Corporation will be able to raise such capital. Except to the extent described above, Giant Eagle is under no obligation to provide any additional funding to New Seegrid Corporation, and there can be no assurance that Giant Eagle will make any additional financing available to New Seegrid Corporation or, if it does, that New Seegrid Corporation and Giant Eagle will be able to negotiate acceptable terms for such financing.

If New Seegrid Corporation is unable to raise additional capital, it may be required to significantly curtail, or entirely cease, operations. If New Seegrid Corporation is successful in raising additional funding, any debt or equity securities issued in connection with such financing will likely provide for rights, preferences or privileges senior to those of holders of our common stock and existing preferred stock.

**Uncertainty of Impact of Seegrid Holdings Bankruptcy.**

The Business may be adversely impacted by the filing of the Plan, which could result in the loss of sales both during and after the bankruptcy process. We may not be able to recover from the loss of such sales, or the perceived damage to New Seegrid Corporation's reputation and viability as a going-concern. Similarly, trade vendors and other critical partners may cease to do business with New Seegrid Corporation, which would have an adverse impact on the Business. Other constituencies important to New Seegrid Corporation's success, such as employees and consultants, may also terminate or seek to modify their relationships with New Seegrid Corporation, which could have an adverse impact on our business.

**Gross margins may not be achievable or sustainable.**

To date, the Business has not been successful in maintaining gross margins at projected levels due to a number of factors, including the early stage of the Business's operations, the small scale of its purchases from suppliers, service and support costs that are not being passed through to customers, and pressures from quality control improvements. The current standard product margin based on our standard list price for our S-Kit of $40,000 is 59.5% and the standard product margins on our own brand robotic trucks is between 59.5% and 63.5%. There can be no assurance that the Business will be able to achieve or sustain standard product gross margins of between 59.5% and 63.5%. In that event, the Business's projected profitability could be significantly impacted.

**We may not achieve profitability, and our business model based on developing a scalable distribution model centered on selling our robotic components to material handling OEMs may not be successful.**

Because the Business has operated only since February 2003, it has a limited operating history on which you can base your evaluation of the business. Although the Business entered into agreements with two original equipment manufacturers (OEMs) in 2010, and an agreement with a third OEM in late 2013, development of our OEM strategy has progressed more slowly than we anticipated, and has resulted in greater than anticipated capital expenditures related to testing, qualification and similar matters. Despite these efforts, there can be no assurance that we will be able to successfully implement our OEM strategy or that our technology and products will achieve widespread commercial acceptance or that we will achieve profitability. We face a number of risks encountered by early stage companies in the industrial automation and material handling industries, including:

- issues relating to the development, improvement, manufacturing, and commercialization of new technology;
- challenges of introducing new technology to an old industry;
- limited sales and operating history;

2

- dependence on key developing strategic relationships, including those with the three OEMs that are expected to drive increased sales of the Seegrid S-Kit in 2015, suppliers, and distributors;
- unproven business model, including uncertainty as to customer and OEM demand, sales cycle, speed of product implementation, pricing, and distribution strategies;
- dependence on top officers and key technical personnel;
- need for continuous innovation;
- issues relating to product defects;
- current and future competition;
- New Seegrid Corporation's ability to manage its growth and expansion;
- the outcome of any future legal claims or proceedings;
- New Seegrid Corporation's ability to enforce or adequately protect or defend its intellectual property and proprietary rights; and
- general economic conditions.

Our business strategy may not be successful, and we may not successfully address these risks.

**There can be no assurance as to the timing or amount of further purchase orders, if any, from our OEM partners.**

Seegrid Holdings entered into agreements with Raymond Corporation, Linde Material Handling GmbH and NAACO Materials Handling Group, Inc. To date the Business has received a limited number of orders for the component kits which these OEMs are using to conduct tests and ready their production lines prior to full commercialization. The Business' projections assume that the Business will receive significant orders beginning in 2015 beyond the initial purchases from Raymond and successfully begin selling trucks in Europe, beyond our initial order, in early 2015. The Business' projections further assume that the scope of the Business' existing OEM relationships will be expanded. There can be no assurance that our OEM partners will purchase the volume of units that are included in the projections. Any orders by Raymond, Linde, NAACO and/or other OEMs will be subject in any event to the completion of successful marketing launches by the OEMs of their branded products, satisfactory testing of their manufacturing lines and acceptance of the branded products by their customers. Failure of the OEMs to obtain early reference customers for our products as a result of a failure to convert early trials into completed orders could materially adversely affect our ability to achieve our forecasts and implement our business plan in the timeframe we anticipate.

**We may encounter unanticipated difficulties**

Our trucks are new to the market and our OEM strategy is relatively untested. Our OEM business model requires our OEM partners to incorporate our component kits into their current equipment offerings which will require the OEMs to modify their existing product manufacturing processes or to allow us to sell Guided by Seegrid™ trucks carrying their brand through their dealer network. Unanticipated difficulties may be encountered that slow the implementation of the strategy or prevent development and sales altogether. Furthermore, our products may fail to perform as planned and customers may require our products to incorporate functionality that we are unable to develop in a timely manner or at all. Certain key characteristics of our products, including in particular its serviceability, cannot as a practical

matter be fully tested until they have been implemented by large numbers of customers.  In addition, we may be required to engage consultants and system integrators to help us gain traction with customers for our trucks and our strategy may need to evolve to being a part of a complete solution to a customer's warehousing needs.  This development could delay broader acceptance of our products.  In any event, there is a risk that our products will not be as successful as we hope them to be.

**Our industry is old and historically has been resistant to the introduction of new technology**

Material handling is a large established, stable and growing market, but there is no assurance that innovative automation solutions will gain acceptance.  Factors such as cost constraints and concerns about system reliability may cause businesses to delay using such automation tools.  Historically, the material handling market has been extremely resistant to the introduction of new technology and early forecasts of technology adoption have often proved to be over-optimistic.  If our OEM strategy is successful, we expect that the installed base of products incorporating our technology will grow rapidly.  However, there can be no assurance as to the timing or amount of additional purchase orders from these or any other potential OEM partner and we cannot predict the rate of adoption by the potential users of our products, or the price that they would be willing to pay for them.  If acceptance of innovative automation applications does not occur, our targeted OEM partners may not dedicate the resources required to support our efforts and other potential customers may not adopt our technology.  Even if accepted, the life cycle of our products is difficult to estimate.  We may not be able to develop and introduce new products, services and enhancements that respond to technological changes or evolving industry standards on a timely basis, in which case our business would suffer.  There can be no assurances that we will be able to avoid material changes to the model and plan described in our business plan, or that, if changes are required, we will be successful in making them.

**We have completed important installations of the GT10 and GP8 products, but there can be no assurance that such sales will result in further significant sales of the products**

It is common practice in the materials handling automation industry for customers to require trials of new products until an installed base is established.  Even after an installed base has been established, new customers often ask for trials, though the practice is generally ended over time.  Trials will require an expenditure of New Seegrid Corporation's time, resources and labor and are unprofitable.  However, our products are new to the market and we will continue to incur these expenses until we believe it is appropriate to discontinue the practice.

There is no guarantee as to the number of robots that any prospective customer will order after a trial is completed or that they will order any robots at all.  Robots could fail to perform to the customer's expectations as a result of technical problems, difficulties in the operating environment or other factors.  Even if trials are successful, changes in budgets and other factors beyond our control could result in the delay or cancellation of orders.

**Sales of our products depend on the capital spending patterns of our customers**

Our success will depend in large part upon the capital expenditure budgets of our customers, including the customers of our OEM partners. Accordingly, our future operations may be subject to substantial fluctuations as a consequence of economic conditions, industry patterns and other factors affecting capital spending. A downturn in any of our major markets and any resulting cutbacks in capital spending would have a direct, negative impact on our business.

**Our initial sales cycle is long and subject to factors outside of our control**

Our products perform critical functions in a customer's material handling operations. As a result potential customers commit significant resources to an evaluation of our products, and we expect that they will be subject to review at multiple levels of the potential customer's organization. Based on our current experience the initial sales cycle seems to be between three and nine months and the follow-on sales cycle between two and six months. Most of our sales in the short and medium terms will be initial sales which will be subject to many factors that may interfere with the sales cycle, including budgetary constraints, conditions in the customer's industry and business, actions by competitors and general economic conditions.

**Relationship with Giant Eagle**

Giant Eagle, Inc. and its affiliates will hold a significant portion of the equity of New Seegrid Corporation and have the right to appoint a majority of New Seegrid Corporation's Board of Directors. As a result of its investment and other contractual rights negotiated with New Seegrid Corporation, Giant Eagle could potentially exert significant influence over New Seegrid Corporation's management, policies and financing decisions.

**Dependence on our top officers**

Our success is highly dependent upon our senior management team, which plays a vital role in our development, promotion, and potential growth. The loss of any of them and their services or any other key employee could have a material adverse effect on our business, financial condition and results of operations. In order for New Seegrid Corporation to create meaningful equity incentives, New Seegrid Corporation intends to establish an equity incentive plan consisting of a pool equivalent to 15% of New Seegrid Corporation's Common Stock on a fully diluted, as converted basis. It may also be necessary for the Board to consider other performance-based awards such as cash bonuses upon certain events. Such awards will dilute the interests of investors. However, there can be no assurance that the awards will result in the long-term benefits to New Seegrid Corporation that we intend.

**We may not be able to hire or retain other qualified personnel**

Our success depends to a significant degree upon our ability to attract and retain additional qualified management, technical, marketing and sales personnel and upon the continued contributions of these people. Competition for qualified employees and personnel in the technology industry is intense. The process of locating personnel with the combination of skills

and attributes required to execute our business strategy may be difficult. New Seegrid Corporation's status as a reorganized operating entity following the Chapter 11 bankruptcy filing for Seegrid Holdings may also impact New Seegrid Corporation's ability to attract and retain key employees. We may not be able to attract qualified personnel in our current location, and may have to develop offices in other locations with a resulting increase in operating expenses. Furthermore, our employees may voluntarily terminate their employment with us at any time. Therefore, we cannot assure you that we will be successful in attracting and retaining qualified executives and other personnel. In order for New Seegrid Corporation to create meaningful equity incentives, New Seegrid Corporation intends to establish an equity incentive plan consisting of a pool equivalent to 15% of New Seegrid Corporation's Common Stock on a fully diluted, as converted basis. It may also be necessary for the Board to consider other performance-based awards such as cash bonuses upon certain events. Such awards will dilute the interests of investors. However, there can be no assurance that the awards will result in the long-term benefits to New Seegrid Corporation that we intend.

**Future growth will strain our resources**

To succeed in the implementation of our business strategy, we must rapidly execute our OEM and product strategies and further develop products and expand service capabilities, while managing expenses and the anticipated growth by hiring new personnel only as revenue can support them while implementing effective planning and operating processes. If we fail to manage our growth effectively, our business could suffer materially. To manage anticipated growth, we must:

- continue to implement and improve our operational, financial, and management information systems;
- hire, train, and retain additional qualified personnel;
- continue to expand and upgrade core technologies; and
- effectively manage multiple relationships with various OEM partners, third party logistics providers, and other third parties.

Our systems, procedures, and controls may not be adequate to support our operations, and our management may not be able to achieve the rapid execution necessary to exploit the market for our products and services.

**Our products may contain defects**

The products we develop, including our component kits for OEM partners, are complex and must meet the stringent technical requirements of our customers and partners. Products and services as complex as ours are likely to contain undetected errors or defects, especially when first introduced or when new versions are released. Despite our best efforts, our products may not be free from errors or defects after commercial shipments have begun, which could result in the rejection of our products and damage to our reputation, as well as lost revenues, diverted development resources, and increased service and warranty costs, any of which could harm our business.

Our robots have performed reliably in many different customer environments. However, from time to time our robots have performed unreliably in "low light" conditions and also when in need of standard maintenance. In addition, our products are new and we may not be able to anticipate all problems that could arise in different environments. Accordingly, there is a risk that future field performance will not match current field performance for reasons we do not currently anticipate.

**We may not be able to protect our intellectual property**

Our success depends significantly on our ability to protect our proprietary rights to the technologies used in our products. If we are not adequately protected, our competitors could use the intellectual property that we have developed to enhance their products and services, which could harm our business. We primarily rely on a combination of patent, copyright and trademark laws, trade secrets, confidentiality provisions and other contractual provisions, to protect our proprietary rights. We have or have been allowed 44 patents primarily in the US and western Europe on 11 matters, and we have over an additional 30 in process on over 6 matters and we are taking other steps towards patent protection for other algorithms and proprietary processes, with applications in respect of other patents at varying stages of preparation for filing. There can be no guarantee that any of these applications will be granted, or that our allowed patents will not be challenged. These foregoing legal means may afford only limited protection.

**We may be sued by third parties for infringement of their proprietary rights**

Automation and robotics technologies are characterized by the existence of a large number of patents and frequent litigation based on allegations of patent infringement or other violations of intellectual property rights. As the number of entrants into our market increases, the possibility of an intellectual property claim against us grows. Any intellectual property claims, with or without merit, could be time-consuming and expensive to litigate or settle and could divert management attention from administering our core business.

Because automation and robotics technologies are new and rapidly evolving, the law as it relates to these technologies is not well developed. In addition to other types of liability for infringement of third-party proprietary rights, our technology may expose us to claims such as copyright infringement, trademark infringement, unfair competition, breach of contract (whether actual or implied), and similar or related claims. While we believe that we may be able to take steps that might limit our exposure to such liability by, for example, complying with the "safe harbor" provisions of the Digital Millennium Copyright Act, putting procedures in place to respond appropriately to claims of infringement, and attempting to incorporate limitations on liability into our license agreements, we cannot guarantee that we will not be held liable under such claims or that we will not be required to indemnify a licensee held liable under such claims. If such claims are successfully enforced against us, our results of operations, financial position and ability to conduct our business could all be adversely affected.

**Our competition is well established in our industry**

The material handling automation market is extremely competitive. Our competitors offer a

7

variety of solutions addressed at various segments of the automation market. Businesses and activities in which these competitors engage include: providing automated guided vehicle systems; providing automatic storage and retrieval systems; and offering outsourced logistics management. Some of these competitors have longer operating histories, significantly greater financial, technical, marketing and other resources, and greater name recognition. There may also be unknown competitors who have better solutions available.

In addition, current and potential competitors may acquire or merge with other competitors or may establish cooperative relationships among themselves or with third parties to increase the ability of their products to address the needs of our prospective clients.

We intend to jointly market our products as a complement to certain of the systems referenced above. However, as we attempt to increase our market share and expand our product offerings, and as other vendors expand their own product offerings, our relationships with these vendors may become more competitive.

While we are aware of no direct competitor for our products that has successfully installed competing products at customer locations in the US, and our products are by their nature, "disruptive," it is likely that competition will emerge and will be intense.

**Scaling our sales of the Business' trucks may not be successful**

Although we have sold a total of 179 Seegrid -branded robotic trucks, we may not complete additional sales of the trucks in the future and any such sales may not occur in the volumes necessary for the Business to become profitable and sustain profitability on a long-term basis. Sales of the Business' trucks may be affected by the launch of branded products by our OEM partners if our distributors do not commit the necessary resources to promote sales.

**We may not be a disruptive technology**

While we believe that we have developed technology which, through its automatic nature and other features, disrupts the market and displaces alternative approaches, this may not be true. Customers purchasing services and products from our competitors may choose to continue to do so and others may choose to incur the costs and efforts required to deploy more traditional solutions.

## ANNEX C
## PRO-FORMA BALANCE SHEET

**See Attached**

# NEW SEEGRID CORPORATION
## OPENING BALANCE SHEET

| | Seegrid 08/31/14 | Giant Eagle Conversion | ADJ | Opening |
|---|---|---|---|---|
| **Current Assets** | | | | |
| Cash & Cash Equivalents | 121,929 | - | (71,929) | 50,000 |
| Restricted Cash Equivalent | 100,000 | - | - | 100,000 |
| Accounts Receivable | 458,776 | - | (408,776) | 50,000 |
| Stock Subscription Receivable | - | 5,418,000 | - | 5,418,000 (a) |
| **Inventory** | | | | |
| FIFO Inventories | 6,617,420 | - | (490,000) | 6,127,420 |
| GP8 Inventory-Chassis | - | - | (36,000) | (36,000) |
| PS0C Inventory-Chassis | - | - | - | - |
| S-Kit Inventory Build | - | - | - | - |
| Inventory Reserves | (2,306,135) | - | 1,556,135 | (750,000) |
| Prepaid Insurance | 17,352 | - | 112,648 | 130,000 |
| Prepaid Expenses | 117,218 | - | - | 117,218 |
| Total Current Assets | 5,126,560 | 5,418,000 | 662,078 | 11,206,638 |
| Plant, Equipment & Capital Leases | 2,615,591 | - | (2,123,127) | 492,464 |
| Accumulated Depreciation & Amortization | (2,078,372) | - | 2,078,372 | - |
| | 537,219 | - | (44,755) | 492,464 |
| **Other Assets** | | | | |
| Goodwill | - | - | - | - |
| Security Deposits | 20,981 | - | (20,981) | - |
| Total Other Assets | 20,981 | - | (20,981) | - |
| TOTAL ASSETS | 5,684,760 | 5,418,000 | 596,342 | 11,699,102 |
| **Current Liabilities** | | | | |
| Accounts Payable and Related | 2,383,258 | - | (2,383,258) | - |
| Accrued Expenses - Other | 284,743 | - | (284,743) | - |
| Accrued Expenses - Payroll | 340,249 | - | (160,249) | 180,000 |
| Accrued Expenses - PTO | 166,105 | - | (91,105) | 75,000 |
| Accrued Expenses - Interest | 7,715,729 | - | (7,715,729) | - |
| Deferred Revenue | 634,802 | - | (69,802) | 565,000 |
| Accrued Expenses - Warranty | 112,445 | - | - | 112,445 |
| Accrued Expenses - Other | 569 | - | 4,431 | 5,000 |
| Current Portion Promissory Notes | 44,560,253 | (4,582,000) | (39,328,253) | 650,000 (b) |
| Current Portion of Installment Loans & Capital Leases | 6,540 | - | (6,540) | - |
| Total Current Liabilities | 56,204,693 | (4,582,000) | (50,035,248) | 1,587,445 (b) |
| **Noncurrent Liabilities** | | | | |
| Installment Loans & Capital Leases | 111,657 | - | - | 111,657 |
| Deferred Service Contract Revenue | 569,913 | - | (569,913) | - |
| Deferred Rent | - | - | - | - |

| | | | | |
|---|---|---|---|---|
| Total Noncurrent Liabilities | 681,570 | - | (569,913) | 111,657 |
| | | | | |
| **Stockholders' Equity** | | | | |
| Common Stock | 10,885 | - | (10,885) | - |
| Preferred Stock | 22,673 | 10,000,000 | (22,673) | 10,000,000 |
| Stock Warrants | 5,697,302 | - | (5,697,302) | - |
| Additional Paid Capital | 16,842,551 | - | (16,842,551) | - |
| Deferred Compensation | (58,333) | - | 58,333 | - |
| Accumulated Deficit | (73,716,581) | - | 73,716,581 | - |
| Total Stockholders' Equity | (51,201,503) | 10,000,000 | 51,201,503 | 10,000,000 |
| TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY | 5,684,760 | 5,418,000 | 596,342 | 11,699,102 |

Giant Eagle Investment:

Bridge Funding through 08/29/14:

| | |
|---|---|
| GE 29 - Funding - 07/01/14 | 350,000 |
| GE 30 - Funding - 07/09/14 | 440,000 |
| GE 31 - Funding - 07/23/14 | 138,000 |
| GE 32 - Funding - 08/05/14 | 275,000 |
| GE 33 - Funding - 08/21/14 | 251,000 |
| GE 34 - Funding - 09/03/14 | 698,000 |
| | 2,152,000 |

DIP Funding:

| | |
|---|---|
| DIP Funding Proposed from Budget | 3,300,000 |
| Adjustment for Raymond Payment | (370,000) |
| Adjustment for Change in Vendor Payments from 75% to 50% | (500,000) |
| | 2,430,000 |

| | | |
|---|---|---|
| Subscription Receivable (a) | - | 5,418,000 |

(b) Estimated Payables Notes

| | |
|---|---|
| | 10,000,000 |
| Estimated Accounts Payable at closing | 2,400,000 |
| Estimated Unvouchered Payables | 100,000 |
| Estimated Other Payables | 100,000 |
| Total Unsecured Creditors to Settle | 2,600,000 |
| 50% of Creditors accepting 75% cash settlement | 975,000 |
| 50% of Creditors accepting 50% cash settlement/50% note | |
| Accepting 50% at closing (cash) | 650,000 |
| Accepting 50% in 1 year (note) | 650,000 |
| Total amount settled | 2,275,000 |
| Amount not paid | 325,000 |