## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SEEGRID CORPORATION,[1] | Case No. 14-12391 (BLS) |
| Debtor. | **Re: D.I. 10, 11,12, 26, 57, 58, 59, 81, 130, 131, 231, 232, 233, 235** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING THE DEBTOR'S (A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES AND (C) FORMS OF BALLOTS AND (II) CONFIRMING THE PREPACKAGED PLAN OF REORGANIZATION OF SEEGRID CORPORATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The debtor in possession in the above-captioned chapter 11 case (the "Debtor" or

"Seegrid"),[2] having proposed and filed (A) the *Prepackaged Plan of Reorganization of Seegrid*

*Corporation under Chapter 11 of the Bankruptcy Code*, dated October 3, 2014 and filed with the

United States Bankruptcy Court for the District of Delaware (the "Court") on October 21, 2014

(D.I. 10) (the "Original Plan" and together with the plan supplement, dated November 14, 2014

(D.I. 130) (the "Plan Supplement") and as amended by the *First Amendment to Prepackaged*

*Plan of Reorganization of Seegrid Corporation under Chapter 11 of the Bankruptcy Code*, dated

November 14, 2014 (D.I. 131) (the "First Amendment") and the *Second Amendment to*

*Prepackaged Plan of Reorganization of Seegrid Corporation under Chapter 11 of the*

*Bankruptcy Code*, dated January 9, 2014 (D.I. 295) (the "Second Amendment"), the "Plan"), and

---

[1]     The last four digits of the Debtor's tax payer identification number are: 1133. The Debtor's address is 216 Park West Drive, Pittsburgh, PA 15275.

[2]     Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Plan and Disclosure Statement. The rules of construction in section 102 of the Bankruptcy Code shall apply to this Confirmation Order.

(B)(i) *the Disclosure Statement for Prepackaged Plan of Seegrid Corporation under Chapter 11 of the Bankruptcy Code*, dated October 3, 2014 and filed with the Court on October 21, 2014 (D.I. 11) (the "Original Disclosure Statement" and, as supplemented by the Plan Supplement, the "Disclosure Statement"), and (ii) the Original Disclosure Statement, the Original Plan, a cover letter, election forms and appropriate ballots and instructions for voting on the Plan (the "Ballots", and with the Original Disclosure Statement, the Original Plan, the "Solicitation Package") as described in the *Declaration of Kathleen M. Logan Certifying Voting on, and Tabulation of, Ballots Accepting and Rejecting Plan of Reorganization for Seegrid Corporation* (D.I. 12) (the "Voting Report"), having been duly transmitted to holders of claims and interests in compliance with the procedures set forth in the Voting Report (the "Solicitation Procedures") and as further described in the *Affidavit of Service of Kathleen M. Logan related to Disclosure Statement for Plan of Reorganization [Classes 1-A, 1-B, 1-C, 1-D or 2-A]* (D.I. 231) (the "Noteholder Solicitation Certification"), the *Affidavit of Service of Kathleen M. Logan related to Disclosure Statement for Plan of Reorganization [Class 2-B - Other General Unsecured Claims]* (D.I. 232) (the "Trade Solicitation Certification"), and the *Affidavit of Service of Kathleen M. Logan related to Disclosure Statement for Plan of Reorganization [Holders of Class 3, Class 4 and Indirect Shareholders]* (D.I. 233) (the "Equity Solicitation Certification," and with the Noteholder Solicitation Certification and the Trade Solicitation Certification, the "Solicitation Certifications"); and the Court having entered *Order (A) Scheduling A Combined Hearing On Debtor's Disclosure Statement And Plan Confirmation, (B) Establishing An Objection Deadline And Procedures For Objecting To The Disclosure Statement, Plan And Assumption Of Executory Contracts And Unexpired Leases, (C) Approving Solicitation Procedures, (D) Approving The*

2

*Form And Notice Of The Combined Hearing, (E) Waiving The Requirement For A Meeting Of Creditors And (F) Granting Related Relief* (D.I. 26) (the "Scheduling Order"), which, among other things, and as subsequently modified, scheduled the hearing to approve the Disclosure Statement for January 12, 2015 (the "Disclosure Statement Hearing"), to be immediately followed by a hearing to consider confirmation of the Plan (the "Confirmation Hearing" and, together with the Disclosure Statement Hearing, the "Combined Hearing"); and due notice of the Combined Hearing having been given to holders of Claims against and Interests in the Debtor and other parties-in-interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Scheduling Order and the Solicitation Procedures, as established by the affidavits of service, mailing and/or publication filed with the Court (D.I. 57, 58, 59, 81) (the "Notice Affidavits"), and such notice being sufficient under the circumstances and no further notice being required; and such filing and notice thereof being sufficient under the circumstances and no further notice being required; and based upon and after full consideration of the entire record of the Combined Hearing, including (A) the Disclosure Statement, the Plan (including the Plan Supplement), the Voting Report, (B) the *Debtor's Memorandum Of Law In Support Of Its Request For An Order (I) Approving The (A) Disclosure Statement Pursuant To Sections 1125 And 1126(b) Of The Bankruptcy Code, (B) Solicitation Of Votes And Voting Procedures And (C) Forms Of Ballots And (II) Confirming The Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Filed by Seegrid Corporation* (D.I. 235), (C) the *Debtor's Reply to the Horbal Group's Objection to the Disclosure Statement for Prepackaged Plan of Reorganization of*

*Seegrid Corporation Pursuant To Chapter 11 of the United States Bankruptcy Code* (D.I. 287) (the "Disclosure Reply"), (D) the *Reply Brief in Support of Confirmation* (D.I. 288) (the "Plan Reply," and with the Disclosure Reply, the "Replies"), (E) the Notice Affidavits and (F) all objections filed to the Disclosure Statement, Solicitation Procedures or the Plan having been resolved or overruled; and the Court being familiar with the Disclosure Statement and the Plan and other relevant factors affecting the Debtor's chapter 11 case; and the Court being fully familiar with, and having taken judicial notice of, the entire record of the Debtor's chapter 11 case; and upon the arguments of counsel and the evidence proffered and adduced at the Combined Hearing; and the Court having found and determined that the Disclosure Statement should be approved and the Plan should be confirmed as reflected by the Court's rulings made herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor;

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.      Findings and Conclusions.  The findings and conclusions set forth herein and in the record of the Combined Hearing, including but not limited to the findings of the Court at the hearing on January 15, 2014, constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4

2.    Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334). The Court has jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b)(2) and this Court has jurisdiction to enter a final order with respect thereto. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

3.    Chapter 11 Petition. On October 21, 2014 (the "Petition Date"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Reorganization Case"). The Debtor is authorized to continue to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code. No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code.

4.    Judicial Notice. The Court takes judicial notice of the docket of the Reorganization Case maintained by the Clerk of the Court and/or its duly appointed agent, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Reorganization Case.

5.    Burden of Proof. The Debtor, as the Plan proponent, has the burden of proving the elements of sections 1129(a) of the Bankruptcy Code by a preponderance of the evidence. The Debtor has met such burden.

6.    Adequacy of Disclosure Statement. The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy law, including the Securities Act of 1933, as amended (the "Securities Act"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein and (c) is approved in all respects.

7.    Voting. Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Voting Report and the Solicitation Certifications, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and applicable nonbankruptcy law.

8.    Solicitation. Prior to the Petition Date, the Original Plan, the Disclosure Statement, and the Ballots, and, subsequent to the Petition Date, notice of the Combined Hearing, the Plan Supplement and the Plan Amendments were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rule 3018, the Local Rules and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of the Reorganization Case and were appropriate for holders of Class 1-B, Class 1-C, Class 1-D, and Class 2 – the Classes of Claims entitled under the Plan to vote to accept or reject the Plan. The period during which the Debtor solicited acceptances of the Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Plan. The Debtor was not required to solicit votes from creditors holding Claims in any of Class 1-A, Class 3 or Class 4, as the claims in each of these classes are unimpaired under the Plan. As described in and as

6

evidenced by the Voting Report, the Solicitation Certifications and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, the notice of the Combined Hearing, and publication of such notice of the Combined Hearing (all of the foregoing, the "Solicitation") was timely, adequate and sufficient under the circumstances. The Solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Reorganization Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws and regulations. The Debtor, the Balloting Agent and their respective officers, directors, employees and professionals retained by such persons of the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code.

9.      Notice. As is evidenced by the Voting Report, the Solicitation Certifications and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, the Plan Supplement and the Plan Amendments were adequate and sufficient under the circumstances, and all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable nonbankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

10.      Plan Modifications (11 U.S.C. §1127). Subsequent to solicitation, the Debtor made certain modifications to the Plan contained in the Plan Amendments that do not adversely change the treatment of the claim of any creditor or interest of any equity interest

7

holder except to the extent such affected party consented to such modification (the "Plan Modifications"). The filing and service of the Plan Amendments constitutes due and sufficient notice thereof.

11.    Deemed Acceptance of Plan as Modified. All Plan Modifications are warranted under the circumstances of the Reorganization Case, and are consistent with all of the provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1125 and 1127 and Bankruptcy Rule 3019, and all holders of Claims who voted to accept the Plan and who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications. No holder of a Claim or Equity Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

12.    Bankruptcy Rule 3016(a). The Plan reflects the date it was proposed and identifies the entity submitting it as Plan proponent, thereby satisfying Bankruptcy Rule 3016(a).

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

13.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(l)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(l)). In addition to Administrative Expense Claims, Priority Tax Claims and Non- Tax Priority Claims, which do not need to be classified under the facts and circumstances of this Reorganization Case, Article III of the Plan classifies twelve (12) Sub-Classes of Claims and Interests for the Debtor. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for

8

separately classifying the various Classes of Claims and Interests created under the Plan, and such classifications does not unfairly discriminate between holders of Claims and Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article IV of the Plan specifies that the four (4) Sub-Classes within Class 3 (Preferred Share Interests) and Class 4 (Common Stock Interests) are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III and IV of the Plan designate Class 1-A (First Priority Secured June 11 Noteholder Claims), Class 1-B (First Priority Secured Bridge Noteholder Claims), Class 1-C (Second Priority Secured Noteholder Claims), Class 1-D (Third Priority Secured Bridge Noteholder Claims), Class 2-A (Noteholder General Unsecured Claims) and Class 2-B (Other General Unsecured Claim) as impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Claims in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class, unless a holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents and agreements set forth in the Plan Supplement and described in the Plan provide adequate and proper means for the implementation of the Plan, thereby satisfying section

9

1123(a)(5) of the Bankruptcy Code, including, without limitation, (i) all corporate action as set forth more fully in Article 9 of the Plan, including the adoption and filing with the Secretary of State of the State of Delaware the amended Certificate of Incorporation; (ii) the creation of Seegrid Sub; (iii) the distribution of Seegrid Sub Series A Preferred Shares, Seegrid Sub Common Stock and the Warrants; (iv) the cancellation of certain existing indebtedness; (v) the transfer of assets to Seegrid Sub free and clear of any and all Liens, Claims, Encumbrances and other interests of any entity except as provided by the Plan; and (vi) the authorization of all corporate actions necessary to effectuate the Plan.

      (f)    Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6)). The amended Certificate of Incorporation of Seegrid Corporation and the Certificate of Incorporation of Seegrid Sub prohibits the issuance of non-voting equity securities and provides as to classes of securities an appropriate distribution of voting power among such classes, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

      (g)    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan Supplement contains provisions with respect to the manner of selection of directors and officers of Reorganized Seegrid and Seegrid Sub that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code. The identities of the officers and board members of Reorganized Seegrid and Seegrid Sub have been disclosed in the Disclosure Statement and Plan Supplement.

      (h)    Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)). Pursuant to Article 3 of the Plan (as amended), (a) Class 1-B (First Priority Secured Bridge Noteholder Claims), Class 1-C (Second Priority Secured Noteholder

10

Claims), Class 1-D (Third Priority Secured Bridge Noteholder Claims), Class 2-A (Noteholder

General Unsecured Claims) and Class 2-B (Other General Unsecured Claim) are impaired and

(b) Class 1-A (First Priority Secured June 11 Noteholder Claims), the four (4) Sub-Classes

within Class 3 (Preferred Share Interests) and Class 4 (Common Stock Interests) are unimpaired,

as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(i)     Assumption, Assignment and Rejection (11 U.S.C. § 1123(b)(2)). Article

7 of the Plan and this Order governs the assumption, assignment and rejection of executory

contracts and unexpired leases and meets the requirements of section 365(b) of the Bankruptcy

Code, thereby satisfying section 1123(b)(2) of the Bankruptcy Code. There have been no

objections to the Debtor's assumption and assignment of executory contracts pursuant to Article

7 of the Plan as set forth in Schedule A of the Plan Supplement.

(j)     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). The provisions of

the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(k)     Cure of Defaults (11 U.S.C. § 1123(d)). Section 7.2 of the Plan provides

for the satisfaction of default claims associated with each executory contract and unexpired lease

to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.

All cure amounts will be determined in accordance with the underlying agreements and

applicable bankruptcy and nonbankruptcy law. Thus, the Plan complies with section 1123(d) of

the Bankruptcy Code.

14.     The Debtor's Compliance with the Bankruptcy Code (11 U.S.C.

§ 1129(a)(2)). The Debtor, as the Plan proponent, has complied with the applicable provisions of

the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.
Specifically, *inter alia*:

> (a) The Debtor is an eligible debtor under section 109 of the Bankruptcy
Code;

> (b) The Debtor has complied with applicable provisions of the Bankruptcy
Code, except as otherwise provided or permitted by order of the Court; and

> (c) The Debtor has complied with the applicable provisions of the Bankruptcy
Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable
nonbankruptcy law, the Scheduling Order, and all other applicable law, in transmitting the
Solicitation Package and related documents and notices and in soliciting and tabulating the votes
on the Plan.

> 15. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The record
demonstrates that the Debtor and its board diligently searched for other sources of capital, hiring
multiple financial advisors over a period of years and directly approached numerous sources of
financing. No viable alternatives to the Plan were found; the Plan is the only viable option to
continue its business. The Plan is the product of good faith, arm's length negotiations between
the Debtor, by and through its directors, officers and advisors, and Giant Eagle, Inc. and Giant
Eagle of Delaware, Inc. (together, "Giant Eagle"). Following such negotiations, the Debtor, by
and through its directors, officers and advisors, proposed the Plan in good faith and not by any
means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The
Debtor's and its board's good faith in connection with the Plan is evident from the facts and
record of this Reorganization Case, the Disclosure Statement and the hearing thereon, and the

12

record of the Combined Hearing and other proceedings held in this Reorganization Case. The Plan was negotiated and proposed with the purpose of maximizing the value of the Debtor's Estate for the benefit of all stakeholders and effectuating a successful reorganization of the Debtor. Giant Eagle supports confirmation of the Plan. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(5), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and is each necessary for the Debtor's successful reorganization.

16.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's professionals in connection with the Debtor's Reorganization Case, or in connection with the Plan and incident to the Debtor's Reorganization Case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

17.    Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors and officers of Reorganized Seegrid and Seegrid Sub after confirmation of the Plan have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Interests in the Debtor and with public policy. The identity of any insider that will be employed or retained by Reorganized Seegrid and Seegrid Sub and the nature of such insider's compensation have also been fully disclosed.

18.     No Rate Changes (11 U.S.C. § 1129(a)(6)).  The Plan does not contain any

rate changes subject to the jurisdiction of any governmental regulatory commission and does not

require approval by any governmental regulator.  Therefore, the Plan satisfies section 1129(a)(6)

of the Bankruptcy Code.

19.     Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).  The Plan satisfies

section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis set forth in the Disclosure

Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are

persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that

each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain

under the Plan, on account of such Claim or Interest, property of a value, as of the Effective

Date, that is not less than the amount that such holder would receive or retain if the Debtor were

liquidated under chapter 7 of the Bankruptcy Code on such date.

20.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Class 1-A (First

Priority Secured June 11 Noteholder Claims), the four (4) Sub-Classes within Class 3 (Preferred

Share Interests), and Class 4 (Common Stock Interests) are Classes of unimpaired Interests that

are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the

Bankruptcy Code.  Class 1-B (First Priority Secured Bridge Noteholder Claims), Class 1-C

(Second Priority Secured Noteholder Claims), Class 1-D (Third Priority Secured Bridge

Noteholder Claims), Class 2-A (Noteholder General Unsecured Claims) and Class 2-B (Other

General Unsecured Claim) have voted to accept the Plan in accordance with sections 1126(b)

and (c) of the Bankruptcy Code.  No Classes voted against the Plan.  Therefore, the Plan satisfies

section 1129(a)(8) of the Bankruptcy Code.

14

21.    Treatment of Administrative Expense Claims, Priority Tax Claims and Non-Tax Priority Claims (11 U.S.C. § 1129(a)(9). The treatment of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Non-Tax Priority Claims pursuant to Article 2 of the Plan satisfy the requirements of section 1129(a)(9)(A),(B) and (C) of the Bankruptcy Code, respectively.

22.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10). Class 2-B (Other General Unsecured Claims) is an impaired class under the Plan, and Class 2-B voted to accept the Plan by the requisite majorities. As such, without including any acceptance of the Plan by any insider, there is at least one Class of Claims against the Debtor that is impaired under the Plan and has accepted the Plan. Thus, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

23.    Feasibility (11 U.S.C. § 1129(a)(11)). The evidence submitted regarding feasibility through the Disclosure Statement and the evidence proffered or adduced at or prior to the Confirmation Hearing establishes that the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Reorganized Seegrid or any successor of Reorganized Seegrid, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

24.    Payment of Fees (11 U.S.C. § 1129(a)(12)). As provided in Section 14.10 of the Plan, all fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court, have been paid or shall be paid on or before the Effective Date, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

25.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code. The Debtor does not provide any retiree benefits as such term is used in section 1114 of the Bankruptcy Code. Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in the Reorganization Case.

26.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(l4)). The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Reorganization Case.

27.     Debtor Is Not an Individual (11 U.S.C. § 1129(a)(15)). The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Reorganization Case.

28.     No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtor is a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Reorganization Case.

29.     Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in this case, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in this Reorganization Case.

30.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan, as evidenced by its terms, is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, but instead represents a legitimate and honest effort to maximize the value of the Debtor's Estate for all stakeholders, and no governmental

16

entity has objected to the confirmation of the Plan on any such grounds. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

31.    Satisfaction of Confirmation Requirements. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

32.    Implementation. All documents and agreements necessary to implement the Plan, including, without limitation, those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length and are in the best interests of the Debtor, Reorganized Seegrid, and Seegrid Sub and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal or state law.

33.    Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record before the Court in this Reorganization Case, including evidence presented at the Combined Hearing, the Debtor, the Balloting Agent, and their respective officers, directors, employees and their respective professionals retained by such persons (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not,

17

and on account of such offer, issuance and solicitation will not be, liable at any time for the

violation of any applicable law, rule or regulation governing the solicitation of acceptances or

rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to

the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent applicable,

the exculpation provision set forth in Section 11.3 of the Plan.

34.    Good Faith Settlement and Compromise Among the Debtor and Creditors.

Except as otherwise provided in the Plan and this Confirmation Order, the Plan is a settlement

among the Debtor and its creditors of all Claims and litigation against the Debtor, pending or

threatened, or that were or could have been commenced against the Debtor prior to the date of

entry of this Confirmation Order (other than Reorganized Seegrid's or Seegrid Sub's ability to

prosecute objections to Claims and other retained causes of action to the extent preserved under

the Plan.

35.    Allowance of Giant Eagle's Claims.  Giant Eagle is the Debtor's largest

shareholder and lender.  Giant Eagle owns approximately 31.5% of the Debtor's outstanding

shares and has loaned the Debtor approximately $34 million.  Substantially all of the loans made

to the Debtor by Giant Eagle were open to all investors, including HERC Management Services

("HERC"), LLC, Anthony Horbal, Michael Horbal, Apryle Anne Horbal, Donna Anderson

Horbal, Screaming Eagle Air, Inc. and Great American Health Plans, Inc. (collectively with

HERC, the "Horbal Group") on the same terms as available to Giant Eagle.  None of Giant

Eagle's claims against, or interests, in the Debtor are subject to any objection, recharacterization

or equitable subordination action.  Therefore, Giant Eagle's claims in Classes 1 and 2 are

Allowed Claims for all purposes under the Plan and this chapter 11 case in the following

18

amounts: (a) Class 1-A: $409,334.00; (b) Class 1-B: $944,072.00; (c) Class 1-C: $9,618,664.00; (d) Class 1-D: $1,232,209.00; (e) Class 2-A: $27,013,834.00; and (f) Class 2-B: $80,000.00. Additionally, Giant Eagle's interests in Classes 3 and 4 are Allowed Interests for all purposes under the Plan and this chapter 11 case.

36. Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases; Cure Amounts. The Debtor has exercised its reasonable business judgment prior to the Confirmation Hearing in determining to assume each of its executory contracts and unexpired leases as set forth in the Plan Supplement, this Confirmation Order or otherwise. Each assumption and assignment of an executory contract or unexpired lease pursuant to this Confirmation Order and in accordance with the Plan or otherwise shall be legal, valid and binding upon Reorganized Seegrid, Seegrid Sub, and all non-Debtor entities party to such executory contract or unexpired lease (subject to the rights of the non-debtor entities party to such agreements to object to such assumption and the rights of Reorganized Seegrid in response to any such objection); *provided, however*, that nothing herein shall be construed as an Order of this Court compelling performance under any assumed contract or lease.

37. Adequate Assurance. The Debtor has provided adequate assurance of future performance for each of the executory contracts and unexpired leases that are being assumed by the Debtor and assigned to Seegrid Sub pursuant to the Plan. The Debtor has cured or provided adequate assurance that Reorganized Seegrid or Seegrid Sub will cure defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtor pursuant to the Plan. The Plan and such assumptions, therefore, satisfy the requirements of section 365 of the Bankruptcy Code.

38.    <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Reorganization Case, including the matters set forth in Article 13 of the Plan and section 1142 of the Bankruptcy Code and set forth below.

39.    <u>Consequences of Not Confirming the Plan</u>.  The Debtor has made an uncontroverted showing of the very substantial cost, harm, risk and prejudice to the Estate and its creditors that would result if the Plan is not consummated.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

40.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

41.    <u>Notice of the Combined Hearing</u>.  Notice of the Combined Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Reorganization Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

42.    <u>Solicitation</u>.  The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Reorganization Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable nonbankruptcy law.  To the extent the

solicitation of votes on the Plan did not comply with the Solicitation Procedures, such noncompliance was harmless error.

43.    Ballots.  The forms of Ballots annexed to the Solicitation Certifications are in compliance with Bankruptcy Rule 3018(c), conform to Official Form Number 14, and are approved in all respects.

44.    The Disclosure Statement.  The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of applicable nonbankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in section 1125(a)(l) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan and the transactions contemplated therein, and (c) is approved in all respects.  To the extent that the Debtor's solicitation of acceptances of the Plan and/or offer of Seegrid Sub Series A Preferred Stock is deemed to constitute an offer of new securities, the Debtor is exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(2) of the Securities Act and Regulation D promulgated thereunder.  Section 4(2) exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering."  15 U.S.C. § 77d(2).  The Debtor has complied with the requirements of section 4(2) of the Securities Act, as the prepetition solicitation of acceptances and/or offer of Seegrid Sub Series A Preferred Stock would constitute a private placement of securities.  The solicitation was made only to those individuals who are "Accredited Investors" as defined in Regulation D under the Securities Act, as such individuals were required to certify on the relevant forms that they were accredited investors.

21

45.     Confirmation of the Plan.  The Plan and each of its provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement are authorized and approved.  The terms of the Plan, as amended by the Plan Amendments, are incorporated by reference into and are an integral part of this Confirmation Order.

46.     Objections.  All objections, responses to, and statements and comments, if any, in opposition to, the Plan and/or the Disclosure Statement, respectively, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Combined Hearing, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

47.     Plan Supplement.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto or contemplated thereby (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery and performance thereof by Reorganized Seegrid or Seegrid Sub, are authorized and approved as finalized, executed and delivered.  Without further order or authorization of this Court, the Debtor, Reorganized Seegrid, Seegrid Sub, and their successors are authorized and empowered to make any and all nonmaterial modifications to all documents included as part of the Plan Supplement or otherwise contemplated by the Plan that are consistent with the Plan.  Once finalized and executed, the documents comprising the Plan Supplement and all other documents contemplated by the Plan shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

22

48.    Provisions of Plan and Confirmation Order Non-severable and Mutually
Dependent. The provisions of the Plan and this Confirmation Order, including the findings of
fact and conclusions of law set forth herein, are each non-severable and mutually dependent.

49.    Preparation, Delivery and Execution of Additional Documents by Holders
of Claims. Each holder of a Claim receiving a distribution pursuant to the Plan and all other
parties-in-interest shall, from time to time, take any reasonable actions as may be necessary or
advisable to effectuate the provisions and intent of the Plan.

50.    Plan Classifications Controlling. The classification of Claims and
Interests for purposes of distributions made under the Plan shall be governed solely by the terms
of the Plan. The classifications set forth on the Ballots tendered to or returned by the Claims and
Interests holders entitled to vote under the Plan (a) were set forth on the Ballots solely for
purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event
shall be deemed to modify or otherwise affect, the actual classification of such Claims and
Interests under the Plan for distribution purposes and (c) shall not be binding on the Debtor or
Reorganized Seegrid.

51.    Treatment in Full Satisfaction. The treatment of Claims and Equity
Interests set forth in the Plan is in full and complete satisfaction of the legal, contractual and
equitable rights that each holder of a Claim or Interest may have against the Debtor, the Debtor's
Estate or their respective property, on account of such Claim or Interest.

52.    No Action. Pursuant to the appropriate provisions of the General
Corporation Law of the State of Delaware and section 1142(b) of the Bankruptcy Code, no
action of the respective directors or stockholders of the Debtor, Reorganized Seegrid or Seegrid

Sub shall be required to authorize the Debtor, Reorganized Seegrid or Seegrid Sub to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan.

53.     Vesting of Assets.  Except as otherwise provided in the Plan or in this Confirmation Order, from and after the Effective Date, all property comprising the Estate shall revest in the Debtor and, ultimately, in Reorganized Seegrid and/or Seegrid Sub, as appropriate, free and clear of all Liens, Claims and Equity Interests (other than as expressly provided herein or in the Plan).  Except as otherwise provided in the Plan, the Debtor, as Reorganized Seegrid, shall continue to exist on and after the Effective Date as a separate Person with all of the powers available to such Person under applicable law, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law.  On and after the Effective Date, Reorganized Seegrid and Seegrid Sub shall be authorized to operate their businesses, and to use, acquire or dispose of assets without supervision or approval by the Bankruptcy Court, and free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

54.     Binding Effect.  On or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

55.     Corporate Action.

24

(a)     On the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) selection of the directors and officers for Reorganized Seegrid and Seegrid Sub, (ii) the issuance and distribution of the Seegrid Sub Common Stock and Seegrid Sub Series A Preferred Stock, (iii) issuance of the Warrants, (iv) the adoption of the amended Certificate of Incorporation of Seegrid Corporation, (v) entry into the Stockholders' Agreement and Registration Rights Agreement, (vi) the creation of Seegrid Sub, and (vii) all other actions contemplated by the Plan (whether to occur before or on the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtor, Reorganized Seegrid or Seegrid Sub, and any corporate action required by the Debtor, Reorganized Seegrid or Seegrid Sub in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity security holders, directors or officers of the Debtor, Reorganized Seegrid or Seegrid Sub. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor, Reorganized Seegrid or Seegrid Sub, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of Reorganized Seegrid or Seegrid Sub, as applicable.

(b)     The amended Certificate of Incorporation of Reorganized Seegrid and the Certificate of Incorporation of Seegrid Sub are consistent with the provisions of the Plan, this Confirmation Order and the Bankruptcy Code. Any nonmaterial modification to the amended Certificate of Incorporation as originally filed may be filed after the Confirmation Date and may become effective on or prior to the Effective Date. After the Effective Date, Reorganized

Seegrid or Seegrid Sub may file an amended and restated certificate of incorporation (or other formation documents, if applicable) with the Secretary of State in any appropriate jurisdiction.

(c)     On the Effective Date, the operation of Reorganized Seegrid or Seegrid Sub shall become the general responsibility of its Board, subject to, and in accordance with, the amended Certificate of Incorporation and applicable law.

(d)     The individuals currently serving as the senior officers of the Debtor will continue to serve in the same capacities through and following the Effective Date subject to any changes disclosed in the Plan Supplement. After the Effective Date, the selection and removal of officers of Reorganized Seegrid or Seegrid Sub shall be as provided in the organizational documents of Reorganized Seegrid or Seegrid Sub.

56.     Effectuating Documents; Further Transactions. Pursuant to the Plan, on or after the occurrence of the Effective Date, the chief executive officer, the president, the chief financial officer or any other appropriate officer of the Debtor, of Reorganized Seegrid, or of Seegrid Sub, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary or assistant secretary of the Debtor, Reorganized Seegrid or Seegrid Sub, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

57.     Issuance of Seegrid Sub Stock. On the Effective Date, Seegrid Sub is authorized to (i) issue and distribute the Seegrid Sub Common Stock and Seegrid Sub Series A Preferred Stock in accordance with the terms of the Plan to Giant Eagle and any Investors.

58.    Issuance of Warrants.  On the Effective Date, the Debtor is authorized to issue and distribute the Warrants to Giant Eagle and any Investors in accordance with the terms of the Plan.

59.    New Stockholders' Agreement and Registration Rights Agreement.  By their acceptance of Seegrid Sub Common Stock, Seegrid Sub Series A Preferred Stock and/or Warrants under the Plan, all persons receiving Seegrid Sub Common Stock, Seegrid Sub Series A Preferred Stock and/or Warrants pursuant to the Plan shall be deemed to be parties to and bound by the Stockholders' Agreement and Registration Rights Agreement (including for this purpose any shares of Seegrid Sub Common Stock issued under any equity incentive plan).

60.    Compliance with Section 1123(a)(6) of the Bankruptcy Code.  The amended Certificate of Incorporation, the formation of Seegrid Sub and the terms governing the issuance of the Seegrid Sub Common Stock, Seegrid Sub Series A Preferred Stock and/or Warrants, comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are hereby approved.  The adoption and filing by Reorganized Seegrid of the amended Certificate of Incorporation is hereby authorized, ratified and approved.

61.    Exemption from Securities Law.  The issuance of the Seegrid Sub Common Stock, Seegrid Sub Series A Preferred Stock and/or Warrants, and any other securities issued pursuant to the Plan, and any subsequent sales, resales or transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws registration requirements, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code.

62.     Cancellation of the Certain Secured Indebtedness.  On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, certificates and other documents evidencing the Claims of Giant Eagle in Class 1-B and any other Claims being converted to equity in Seegrid Sub (such as Administrative Expense Claims of Giant Eagle arising under the DIP Credit Agreement) shall be canceled upon the distribution to Giant Eagle of the Seegrid Sub Series A Preferred Shares in accordance with Article 9 of the Plan, and the obligations of the Debtor thereunder and in any way related to such Claims, including any liens related thereto, shall be fully satisfied, released and discharged; *provided, however*, that such cancellation shall not itself alter the obligations or rights of any third parties under such notes, instruments, certificates or other documents, including, but not limited to any applicable rights to indemnification or to seek contribution from any parties other than the Debtor with respect to such notes, instruments, certificates or other documents.  Also on the Effective Date, except to the extent otherwise provided herein, all notes, instruments, certificates and other documents evidencing the Class 1-A Claims of a holder receiving a distribution of cash on account of its Class 1-A Claims under the Plan shall be canceled upon the distribution under the Plan to the Class 1-A Claim of HERC, and the obligations of the Debtor thereunder and in any way related to such Claims, including any liens related thereto, shall be fully satisfied, released and discharged; *provided, however*, that such cancellation shall not itself alter the obligations or rights of any third parties under such notes, instruments, certificates or other documents, including, but not limited to any applicable rights to indemnification or to seek contribution from any parties other than the Debtor with respect to such notes, instruments, certificates or other documents.

28

63.     Subordination.  Except as otherwise expressly provided in the Plan or any

other contractual right of subordination possessed by the Horbal Group or Giant Eagle, this

Confirmation Order or a separate order of this Court, the classification and manner of satisfying

all Claims and Interests under the Plan takes into consideration all subordination rights, whether

arising by contract or under general principles of equitable subordination, section 510(b) or

510(c) of the Bankruptcy Code, or otherwise.  Except as otherwise expressly provided in the

Plan or any other contractual right of subordination possessed by the Horbal Group or Giant

Eagle, all subordination rights that a holder of a Claim or Interest may have with respect to any

distribution to be made under the Plan shall be discharged and terminated, including but not

limited to any alleged subordination of any Claims of Giant Eagle on any grounds, and all

actions related to the enforcement of such subordination rights shall be enjoined permanently

except to the extent reinstated or otherwise preserved in accordance with the Plan.  Accordingly,

except as provided herein, distributions under the Plan to holders of Allowed Claims will not be

subject to payment of a beneficiary of such terminated subordination rights, or to levy,

garnishment, attachment or other legal process by a beneficiary of such terminated subordination

rights.

64.     Preservation of Certain Existing Liens.  Except as otherwise provided in

the Plan or this Confirmation Order, including but not limited to Paragraph 62 hereof, upon the

occurrence of the Effective Date, any Lien securing any Secured Claim shall continue in effect

notwithstanding the occurrence of the Effective Date.  For the avoidance of doubt, the liens

securing Allowed Claims in Classes 1-A (but only to the extent a holder of such Claim is not

29

receiving a distribution of cash on account of its Claim under the Plan), 1-C, and 1-D shall receive the treatment set forth in Article VI of the Plan.

65.    Assumption and Assignment or Rejection of Contracts and Leases; Cure Amounts.  Pursuant to Article 7 of the Plan, except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, the Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party and assigned each such executory contract and unexpired lease to Seegrid Sub, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such contract or lease (i) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (ii) is the subject of a motion to assume or reject filed by the Debtor on or before the Confirmation Date or (iii) is listed as rejected in the Plan Supplement.  Such contract and lease assumptions and assignments or rejections are hereby approved as of the Effective Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code and all objections, if any, are overruled.

66.    As provided in the Plan, within thirty (30) days after the Effective Date, the Debtor will file and serve a pleading with the Bankruptcy Court listing the amount of the proposed Cure for each such Executory Contract the Debtor intends to assume. The non-Debtor party or parties to each such Executory Contract shall have fifteen (15) days from service of the Cure Notice to object to the proposed Cure with respect to that Executory Contract.  Within thirty (30) days after service of any objection to the proposed Cure for an Executory Contract, the Debtor shall:  (a) resolve such objection, which resolution shall not require approval of the Bankruptcy Court; (b) schedule a hearing before the Bankruptcy Court to determine the proper

30

Cure for the Executory Contract; or (c) determine to reject the Executory Contract, and provide notice thereof to the applicable non-Debtor party or parties.

67.    In the event that the rejection of an Executory Contract by the Debtor pursuant to the Plan results in damages to the non-Debtor party or parties to such Executory Contract, a claim for such damages shall be forever barred and shall not be enforceable against the Debtor, Reorganized Seegrid, Seegrid Sub, or their respective properties or interests in property, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before (a) if such Executory Contract is rejected pursuant to Sections 7.1 and 7.2 of the Plan, the later of: (i) thirty (30) days after entry of the Confirmation Order; and (ii) thirty (30) days after the non-Debtor party receives notice of the rejection of such Executory Contract pursuant to Section 7.2 of the Plan; and (b) if such Executory Contract is rejected pursuant to a Final Order of the Bankruptcy Court granting a motion filed by the Debtor to reject that Executory Contract, thirty (30) days after entry of such order.

68.    Objections to the proposed assumption of Executory Contracts and Unexpired Leases and the associated proposed Cure, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan or the Disclosure Statement, as applicable, and with respect to objections to the proposed Cure, the requested Cure; and (e) be filed with the Court with proof of service thereof and served upon: attorneys for the Debtor, Morris, Nichols, Arsht and Tunnell

31

LLP, 1201 North Market Street, Wilmington, Delaware 19899-1347, Facsimile (302) 658-3989, Attn: Robert J. Dehney & Curtis S. Miller; the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Tiiara N. A. Patton; and attorneys to the postpetition lender, Reed Smith LLP, 225 Fifth Avenue, Pittsburgh PA 15222, Attn: Paul M. Singer & Luke A. Sizemore.

69.    Exercise of Election as to Treatment in Class 2-B (Other General Unsecured Claims). The Debtor shall identify within 14 days after the entry of this order (the "Identification Date") any creditors that shall be permitted to make an election in connection with the Solicitation Procedures to enable such creditors to receive 75% of their Allowed Other General Unsecured Claim on the Effective Date (the "75% Election") or 50% of their Allowed Other General Unsecured Claim on the Effective Date and non-interest bearing promissory note issued by Seegrid Sub in the principal amount of the remaining balance of its Allowed Other General Unsecured Claim (the "50% Election"). Absent such election within 30 days after the Identification Date, such creditors shall be treated under the Plan as if they had made the 50% Election on their Ballot.

70.    Exercise of Election to Participate in the Issuance of Seegrid Sub Series A Preferred Shares. The Debtor shall identify by the Identification Date any Investors that shall be permitted to submit a late Election Form to participate in the offering of Seegrid Sub Series A Preferred Shares under the Plan as set forth in the Offer Notice. Any Investors who submit an Election Form within 30 days after the Identification Date shall be treated as if they had submitted their Election Form during the solicitation period.

32

71.    Conditions to Effective Date. The Plan shall not become effective unless and until the conditions set forth in Section 12.1 of the Plan have been satisfied or waived pursuant to Section 12.3 of the Plan.

72.    Professional Compensation. Except as provided in Article 2 of the Plan, all Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is sixty (60) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred (a "Final Fee Application") and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or Allowing any such Administrative Expense Claim. Notice of a hearing (the "Final Fee Hearing") on the Final Fee Applications shall be provided in accordance with the Bankruptcy Rules and Local Rules. Reorganized Seegrid is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

73.    Objections to Final Fee Applications. All objections to any Final Fee Applications shall be filed with the Court, together with proof of service thereof, and served upon the applicant and (i) attorneys for the Debtor, Morris, Nichols, Arsht and Tunnell LLP, 1201 North Market Street, Wilmington, Delaware 19899-1347, Facsimile (302) 658-3989, Attn: Robert J. Dehney & Curtis S. Miller; (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Tiiara N.

33

A. Patton; (iii) attorneys to the postpetition lender, Reed Smith LLP, 225 Fifth Avenue, Pittsburgh PA 15222, Attn: Paul M. Singer & Luke A. Sizemore; (iv) those parties listed on the list of creditors holding the twenty (20) largest unsecured claims against the Debtor, as identified in its chapter 11 petition; and (v) any persons who have filed a request for notice in this chapter 11 case pursuant to Bankruptcy Rule 2002 (the "Notice Parties"), so as to be received not later than 4:00 p.m. prevailing Eastern Time on the date that is five (5) Business Days prior to the Final Fee Hearing.

74.     Administrative Expenses.  Expenses incurred by the Debtor or Reorganized Seegrid after the Effective Date, for professionals' fees and expenses, shall not be subject to application and may be paid by the Debtor or Reorganized Seegrid, as the case may be, in the ordinary course of business and without further Bankruptcy Court approval.

75.     Discharge of the Debtor.  As of the Effective Date, pursuant to Section 11.1 of the Plan and except as otherwise provided herein or in the Plan, confirmation of the Plan shall discharge Seegrid and Reorganized Seegrid from any and all Claims of any nature whatsoever, including, without limitation, all Claims, demands, and liabilities that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not: (a) a Proof of Claim based on such Claim or demand was filed under section 501 of the Bankruptcy Code, or such Claim was listed on any Schedules of Seegrid; (b) such Claim is or was allowed under section 502 of the Bankruptcy Code; or (c) the holder of such Claim has voted on or accepted the Plan. Except as specifically provided for in Article IV of the Plan, as of the Effective Date the rights provided in the Plan shall be in

exchange for and in complete satisfaction, settlement and discharge of all Claims against Seegrid

Reorganized Seegrid, Seegrid Sub, or any of their respective assets and properties.

76.    Exculpation.  None of the Debtor or Giant Eagle or their respective

officers, directors, employees and agents and their respective professionals retained by such

persons shall have or incur any liability to any holder of a Claim or Equity Interest, for any act or

omission in connection with, related to, or arising out of: (a) the Chapter 11 Case; (b) pursuit of

confirmation of the Plan; (c) consummation of the Plan, or administration of the Plan or the

property to be distributed under the Plan; (d) the Plan; (e) the negotiation, formulation and

preparation of the Plan and related documents; or (f) any of the terms and/or settlements and

compromises reflected in the Plan and related documents; except for willful misconduct or gross

negligence as determined by a Final Order.

77.    Releases by the Debtor and its Estate.  Upon the Effective Date, Seegrid

shall release all Avoidance Actions.

78.    Settlements, Releases and Discharges.  The settlements, releases and

discharges of Claims and Causes of Action set forth in the Plan are hereby approved.

79.    Term of Injunctions or Stays.  Pursuant to Section 11.2 of the Plan, this

Confirmation Order shall, except as otherwise expressly provided in the Plan, and except with

respect to enforcement of the Plan, constitute an injunction from and after the Effective Date,

permanently enjoining all Persons or entities who have held, hold or may hold Claims against, or

Equity Interests in, the Debtor from (a) commencing or continuing in any manner any action or

other proceeding of any kind against Reorganized Seegrid or Seegrid Sub with respect to such

Claim; (b) enforcing, attaching, collecting, or recovering by any manner or means of any

35

judgment, award, decree, or order against Reorganized Seegrid or Seegrid Sub with respect to such Claim; (c) creating, perfecting, or enforcing any Encumbrance of any kind against Reorganized Seegrid or Seegrid Sub or against the property or interests in property of Reorganized Seegrid or Seegrid Sub with respect to such Claim; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to Reorganized Seegrid or Seegrid Sub or against the property or interests in property of Reorganized Seegrid or Seegrid Sub with respect to such Claim; and (e) pursuing any Claim released pursuant to Article 11 of the Plan.

80.    Indemnification Obligations.  Pursuant to Section 11.4 of the Plan, subject to the occurrence of the Effective Date, the obligations of Seegrid to indemnify and reimburse persons who are or were directors, officers, or employees of Seegrid on the Commencement Date or at any time thereafter against and for any obligations as provided in Seegrid's certificate of incorporation, applicable state law, or other agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Commencement Date.

81.    Preservation of Claims.  Except as otherwise provided in the Plan, as of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, claim and demand whatsoever, whether known or unknown, at law, in equity or otherwise (collectively, "Causes of Action") accruing to the Debtor shall become assets of Seegrid Sub, and Seegrid Sub

36

shall have the authority to commence and prosecute such Causes of Action for the benefit of the Estate of the Debtor. After the Effective Date, Seegrid Sub shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Causes of Action without approval of the Bankruptcy Court. Notwithstanding the preceding language, the Horbal Group's right of setoff, right of recoupment or affirmative defenses against the Debtor, if any, shall not be impaired by the transfer of the Causes of Action from the Debtor or Reorganized Seegrid to Seegrid Sub and all of the Horbal Group's right of setoff, right of recoupment or affirmative defenses, if any, are hereby preserved; provided, however, that such right of setoff, right of recoupment, or affirmative defenses shall be subject to the Debtor's, Reorganized Seegrid's, or Seegrid Sub's defenses, challenges, or objections to such right of setoff, right of recoupment, or affirmative defenses.

82.     Payment of Statutory Fees. All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Combined Hearing, shall be paid on or before the Effective Date.

83.     Amendment or Modification of the Plan. Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Plan or Plan Supplement may be proposed at any time prior to the Effective Date. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder unless such holder consents; provided, however, that any holders of Claims who were deemed to accept the Plan because such Claims were unimpaired shall continue to be

37

deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims continue to be unimpaired or such holders consent to such amendment or modification.

84.    Compliance with Tax Requirements.  All instruments issued in connection with the Plan and distributed thereunder, and any party issuing any instruments or making any distribution under the Plan, shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  Any party issuing any instruments or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

85.    Determination of Tax Filings and Taxes.  Reorganized Seegrid shall have the right to request an expedited determination of its tax liability, if any, under section 505(b) of the Bankruptcy Code with respect to any tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

86.    Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities (including issuance of warrants) under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making

38

or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

87.     <u>Documents, Mortgages, and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

88.     <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Reorganization Case and the Plan to the fullest extent that is legally permissible, and for, among other things, the following purposes: (a) hear and determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims or Equity Interests that have been or properly should have been brought in the Bankruptcy Court; (b) hear and determine any and all adversary proceedings, applications, motions, and contested or litigated matters that were filed prior to the Effective Date or that, pursuant to the Plan or otherwise to recover assets for the benefit of the Estate; (c) hear and determine such other matters that may be set forth in or arise in connection with the Plan, the Confirmation Order, or any injunctions issued pursuant thereto; (d) enter such orders as are necessary to implement and enforce the injunctions described

39

herein; (e) hear and determine any and all applications pursuant to section 330 or 503 of the

Bankruptcy Code for allowance of any compensation for Professional services rendered and

reimbursement of expenses incurred in connection therewith any other fees and expenses

authorized to be paid or reimbursed under the Bankruptcy Code or the Plan; (f) hear and

determine any applications pending on the Effective Date for the assumption, assumption and

assignment, or rejection, as the case may be, of Executory Contracts to which Seegrid is a party,

and to hear and determine and, if necessary, liquidate any and all Claims arising therefrom; (g)

hear and determine any and all applications, Claims, causes of action, adversary proceedings,

and contested or litigated matters that may be pending on the Effective Date or commenced by

Reorganized Seegrid, Seegrid Sub or any other party in interest subsequent to the Effective Date;

(h) consider any technical modifications of the Plan, and remedy any defect or omission or

reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation

Order, to the extent authorized by the Bankruptcy Code; (i) issue orders in aid of confirmation,

consummation and execution of the Plan to the extent authorized by section 1142 of the

Bankruptcy Code, including but not limited to compelling the conveyance of property and other

performance contemplated under the Plan and documents executed in connection herewith; (j)

hear and determine any proposed compromise and settlement of any Claim against or cause of

action by or against the Debtor, Reorganized Seegrid or Seegrid Sub that has been or properly

should have been brought in the Bankruptcy Court; (k) hear and determine any timely objections

to Administrative Expense Claims or Administrative Expense Claims of Professionals asserted,

or to Proofs of Claim filed, both before and after the Confirmation Date, including any

objections to the classification of any Claim, and to determine whether any Disputed Claim shall

be Allowed or Disallowed, in whole or in part; (l) hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; (m) hear and determine such other matters as may be set forth in the Confirmation Order or other orders of the Bankruptcy Court, or which may arise in connection with the Plan, the Confirmation Order, or the Effective Date, as may be authorized under the provisions of the Bankruptcy Code or any other applicable law; (n) hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Entity's obligations hereunder, including, but not limited to, the performance of any duties or obligations under the Plan; (o) enforce remedies upon any default under the Plan; (p) hear and determine any other matter not inconsistent with the Bankruptcy Code; (q) hear and determine any claim that in any way challenges or is related to any provision in the Confirmation Order; and (r) enter a final decree closing the Chapter 11 Case.

89.    Governing Law. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplements provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

90.    Applicable Nonbankruptcy Law. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and all Plan-related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

41

91.    Effectiveness of All Actions.  All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after, the Effective Date pursuant to this Confirmation Order, without further application to, or order of, the Court, or further action by the respective officers, directors, members or stockholders of Reorganized Seegrid or Seegrid Sub and with the effect that such actions had been taken by unanimous action of such officers, directors, members or stockholders.

92.    Approval of Consents.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments or agreements, and any amendments or modifications thereto.

93.    Notice of Confirmation Order and Effective Date.  Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), Reorganized Seegrid shall file and serve a notice of entry of this Confirmation Order and Effective on all holders of Claims and Interests, the United States Trustee, and other parties-in-interest by causing such notice to be sent to such parties by first-class mail, postage prepaid, within fourteen (14) days after the Effective Date.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.

94.    Waiver of Stay.  The stay of this Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), shall remain in effect until and through

January 22, 2015, at which time the Plan shall become effective unless such stay is extended by a court of competent jurisdiction.

95.     References to Plan Provisions.  The failure to include or specifically describe or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety.

96.     Findings of Fact.  The determinations, findings, judgments, decrees and orders set forth and incorporated herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

97.     Conflicts Between Confirmation Order and the Plan.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

43

98.   <u>Professional Fee Applications</u>.  Final applications for Administrative Expense Claims of Professionals, as set forth in Section 2.2 of the Plan, are due on or before the date that is four-five (45) days after the Effective Date.

99.   <u>Final Order</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: January 20, 2015
      Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

8816253.2

44